APPEAL,TYPE–L

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:22–cv–00688–CKK</u>
### *Internal Use Only*

NAVY SEAL 1 et al v. AUSTIN et al
Assigned to: Judge Colleen Kollar–Kotelly
 Cases:  1:21–cv–02815–CKK
       1:22–cv–00981–CKK
Cause: 42:1981 Civil Rights

Date Filed: 03/11/2022
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

<u>**Plaintiff**</u>

**NAVY SEAL 1**  represented by  **David Eliezer Yerushalmi**
LAW OFFICES OF DAVID
YERUSHALMI, P.C.
2020 Pennsylvania Avenue, NW
Suite 189
Washington, DC 20006
(646) 262–0500
Fax: (801) 760–3901
Email: dyerushalmi@aflc.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Joseph Muise**
AMERICAN FREEDOM LAW CENTER
P.O. Box 131098
3000 Green Road
Ann Arbor, MI 48113
(734) 635–3756
Fax: (801) 760–3901
Email: rmuise@americanfreedomlawcenter.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**NAVY SEAL 2**  represented by  **David Eliezer Yerushalmi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Joseph Muise**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**NAVY SEAL 3**  represented by

**David Eliezer Yerushalmi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Joseph Muise**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

NAVY SEAL 4                  represented by  **David Eliezer Yerushalmi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Joseph Muise**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**LLOYD AUSTIN**              represented by  **Andrew Evan Carmichael**
*in his official capacity as Secretary of*        U.S. DEPARTMENT OF JUSTICE
*the United States Department of Defense*       Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 514–3346
Fax: (202) 616–8460
Email: andrew.e.carmichael@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Johnny Hillary Walker , III**
DOJ–CIV
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 514–3183
Fax: (202) 616–8460
Email: johnny.h.walker@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassie Snyder**
DOJ–CIV
Department of Justice
1100 L Street NW
Washington, DC 20005

2

202–451–7729
Email: cassandra.m.snyder@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
U.S. DEPARTMENT OF JUSTICE
1100 L Street NW
Washington, DC 20005
(202) 353–0693
Fax: (202) 616–8460
Email: michael.p.clendenen@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **CARLOS DEL TORO**<br>*in his official capacity as Secretary of the United States Navy* | represented by | **Andrew Evan Carmichael**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Johnny Hillary Walker , III**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Cassie Snyder**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael Patrick Clendenen**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **MICHAEL M. GILDAY**<br>*Admiral, individually and in his official capacity as Chief of Naval Operations* | represented by | **Andrew Evan Carmichael**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Johnny Hillary Walker , III**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Cassie Snyder**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael Patrick Clendenen**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/11/2022 | 1 | | MOTION to Proceed Under Pseudonym by NAVY SEAL 1, NAVY SEAL 2, NAVY SEAL 3, NAVY SEAL 4. (Attachments: # 1 Text of Proposed Order)(znmw) (Entered: 03/14/2022) |
| 03/11/2022 | 2 | | MEMORANDUM AND ORDER granting 1 Motion for Leave to Proceed Under Pseudonym. Signed by Chief Judge Beryl A. Howell on 3/11/2022. (znmw) (Entered: 03/14/2022) |
| 03/11/2022 | 3 | | COMPLAINT against LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY ( Filing fee $ 402, receipt number TBD) filed by NAVY SEAL 4, NAVY SEAL 1, NAVY SEAL 3, NAVY SEAL 2. (Attachments: # 1 Civil Cover Sheet)(znmw) (Entered: 03/14/2022) |
| 03/11/2022 | 4 | | NOTICE OF RELATED CASE by NAVY SEAL 1, NAVY SEAL 2, NAVY SEAL 3, NAVY SEAL 4. Case related to Case No. 21−2815. (znmw) (Entered: 03/14/2022) |
| 03/14/2022 | 5 | | SUMMONS (3) Issued Electronically as to LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY. (Attachments: # 1 Notice and Consent)(znmw) (Entered: 03/14/2022) |
| 03/14/2022 | | | Payment for 3 Complaint. ($402; Receipt number ADCDC−9102843). (Muise, Robert) (Entered: 03/14/2022) |
| 03/15/2022 | 6 | | ORDER ESTABLISHING PROCEDURES FOR CASES ASSIGNED TO JUDGE COLLEEN KOLLAR−KOTELLY. Signed by Judge Colleen Kollar−Kotelly on 3/15/2022. (DM) (Entered: 03/15/2022) |
| 03/17/2022 | 7 | | SEALED DOCUMENT filed by NAVY SEAL 1, NAVY SEAL 2, NAVY SEAL 3, NAVY SEAL 4 re 2 Order on Motion for Leave to Proceed Under Pseudonym (This document is SEALED and only available to authorized persons.)(Muise, Robert) (Entered: 03/17/2022) |
| 03/18/2022 | 8 | | NOTICE of Appearance by Johnny Hillary Walker, III on behalf of All Defendants (Walker, Johnny) (Entered: 03/18/2022) |
| 03/18/2022 | 9 | | NOTICE of Appearance by Michael Patrick Clendenen on behalf of LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY (Clendenen, Michael) (Entered: 03/18/2022) |
| 03/18/2022 | 10 | | NOTICE of Appearance by Cassie Snyder on behalf of All Defendants (Snyder, Cassie) (Entered: 03/18/2022) |
| 03/18/2022 | 11 | | NOTICE of Appearance by Andrew Evan Carmichael on behalf of All Defendants (Carmichael, Andrew) (Entered: 03/18/2022) |
| 03/18/2022 | 12 | | Joint MOTION for Protective Order by NAVY SEAL 1, NAVY SEAL 2, NAVY SEAL 3, NAVY SEAL 4. (Attachments: # 1 Text of Proposed Order (Protective Order))(Muise, Robert) (Entered: 03/18/2022) |
| 03/18/2022 | 13 | | ORDER granting 12 Motion for Protective Order. Signed by Judge Colleen Kollar−Kotelly on March 18, 2022. (lcckk1) (Entered: 03/18/2022) |
| 03/25/2022 | 14 | | MOTION for Preliminary Injunction by NAVY SEAL 4. (Attachments: # 1 Memorandum in Support, # 2 Exhibit −1 Declaration of Navy Seal 4 [place |

| | | |
|---|---|---|
| | | holder – to be filed under seal], # 3 Exhibit – 2 Declaration of Dr. Peter A. McCullough, # 4 Text of Proposed Order)(Muise, Robert) (Entered: 03/25/2022) |
| 03/25/2022 | 15 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by NAVY SEAL 4 (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit –1 Declaration of Navy SEAL 4 with Exhibits A through F, # 2 Text of Proposed Order)(Muise, Robert) (Entered: 03/25/2022) |
| 03/25/2022 | 16 | Joint MOTION for Briefing Schedule *for Plaintiff Navy Seal 4's Motion for Preliminary Injunction* by NAVY SEAL 4. (Attachments: # 1 Text of Proposed Order)(Muise, Robert) (Entered: 03/25/2022) |
| 03/25/2022 | 17 | ORDER granting 16 Motion for Briefing Schedule. Opposition due April 8, 2022 and reply due April 15, 2022. Signed by Judge Colleen Kollar–Kotelly on March 25, 2022. (lcckk1) (Entered: 03/25/2022) |
| 03/25/2022 | | Set/Reset Deadlines: Opposition to 14 due by 4/8/2022. Reply to 14 due by 4/15/2022. (dot) (Entered: 03/25/2022) |
| 03/29/2022 | | MINUTE ORDER: Pending before the Court is Plaintiff Navy Seal 4's sealed 15 Motion to File Document Under Seal. Plaintiff seeks leave to file exhibits identifying him under seal per the Court's 2 Order allowing him to proceed pseudonymously. Plaintiff argues that "redacting each and every reference would be cumbersome, and it would likely make the documents difficult to read and fully comprehend." Mot. at 2. The Government has indicated it does not oppose this 15 Motion. Given, however, the "strong presumption in favor of public access to judicial proceedings" and the weighty issues of public concern in this case, *see EEOC v. Natl Childrens Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996), the parties shall, on or before March 31, 2022, indicate their position on placing on the docket (1) a sealed, unredacted version of the exhibits at issue and (2) a public, redacted version of the exhibits at issue. Signed by Judge Colleen Kollar–Kotelly on March 29, 2022. (lcckk1) (Entered: 03/29/2022) |
| 03/30/2022 | 18 | Joint RESPONSE TO COURT ORDER by NAVY SEAL 1, NAVY SEAL 2, NAVY SEAL 3, NAVY SEAL 4 re Order. (Muise, Robert) Modified on 3/31/2022 (znmw). (Entered: 03/30/2022) |
| 03/30/2022 | | MINUTE ORDER: The Court is in receipt of the parties' 18 Joint Response to Court Order, in which they "concur with placing on the docket a sealed, unredacted version of the exhibits at issue and a public, redacted version of the exhibits at issue." Accordingly, it is hereby **ORDERED** that Plaintiff Navy Seal 4's 15 Motion is **GRANTED**. It is further **ORDERED** that Plaintiff shall file on the docket, on or before April 8, 2022, a redacted version of the exhibits appended to his 15 Motion. Signed by Judge Colleen Kollar–Kotelly on March 30, 2022. (lcckk1) (Entered: 03/30/2022) |
| 03/30/2022 | 20 | SEALED DOCUMENT (Declaration with Exhibits A–F) filed by NAVY SEAL 4. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 04/05/2022) |
| 03/31/2022 | 19 | NOTICE OF FILING REDACTED DOCUMENT to 14 MOTION for Preliminary Injunction *Exhibit 1 – Declaration of Navy SEAL 4 with Exhibits A – F* by NAVY SEAL 4 (Attachments: # 1 Exhibit 1 – Declaration of Navy SEAL 4 with Exhibits A – F)(Muise, Robert) (Entered: 03/31/2022) |

| | | |
|---|---|---|
| 04/06/2022 | | MINUTE ORDER: On March 25, 2022, the Court entered a <u>17</u> Order granting the parties' <u>16</u> Joint Motion to Set Briefing Schedule for Plaintiff Navy SEAL 4's Motion for Preliminary Injunction. In doing so, the Court adopted the parties proposed briefing dates: Defendants' opposition on or before April 8, 2022, and Plaintiff's reply on or before April 15, 2022. Pursuant to LCvR 65.1(d), "a hearing on an application for preliminary injunction shall be set by the Court no later than 21 days after its filing, unless the Court earlier decides the motion on the papers or makes a finding that a later hearing date will not prejudice the parties." The Court calculates the 21−day deadline as April 15, 2022, when Plaintiff Navy SEAL 4's reply brief is presently due. In adopting the parties proposed briefing, the Court assumed that the parties agreed that an expeditious resolution of Plaintiff Navy SEAL 4's <u>14</u> Motion for Preliminary Injunction would "not prejudice the parties" and implicitly so found.<br><br>If, in fact, either of the parties intends the 21−day deadline set forth in LCvR 65.1(d) to apply in this matter, they shall file such a notice on the docket on or before 4:00 PM ET April 7, 2022 indicating that either or both parties *would* be prejudiced by an expeditious ruling on the <u>14</u> Motion after a reply filed on or before April 15, 2022. If either or both parties files such a notice, then Defendants' opposition shall be due on or before noon April 8, 2022, and Plaintiff Navy SEAL 4's reply due on or before noon April 11, 2022. If the parties do not believe they will be prejudiced by expeditious resolution after a reply filed on or before April 15, 2022, then they need not file such a notice, and the Court will expeditiously rule on the <u>14</u> Motion after Plaintiff Navy SEAL 4's reply is filed on or before April 15, 2022.<br><br>Signed by Judge Colleen Kollar−Kotelly on April 6, 2022. (lcckk1) (Entered: 04/06/2022) |
| 04/08/2022 | <u>21</u> | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Exhibit 13 − SEAL 4 Command Decl., # <u>2</u> Text of Proposed Order)(Snyder, Cassie) (Entered: 04/08/2022) |
| 04/08/2022 | <u>22</u> | RESPONSE re <u>14</u> MOTION for Preliminary Injunction filed by LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY. (Attachments: # <u>1</u> Exhibit Table, # <u>2</u> Exhibit 1 − Sec. Def. Message, # <u>3</u> Exhibit 2 − Sec. Def. Memo, # <u>4</u> Exhibit 3 − ALNAV, # <u>5</u> Exhibit 4 − NAVADMIN, # <u>6</u> Exhibit 5 − RA Policy, # <u>7</u> Exhibit 6 − Merz Decl., # <u>8</u> Exhibit 7 − Littlejohn Decl., # <u>9</u> Exhibit 8 − Stanley Decl., # <u>10</u> Exhibit 9 − Rans Decl., # <u>11</u> Exhibit 10 − Yun Decl., # <u>12</u> Exhibit 11 − Shaffer Decl., # <u>13</u> Exhibit 12 − Lescher Decl., # <u>14</u> Exhibit 13 (under seal), # <u>15</u> Exhibit 14 − Short Order, # <u>16</u> Exhibit 15 − Dunn Order, # <u>17</u> Exhibit 16 − Malanoski Decl.)(Snyder, Cassie) (Entered: 04/08/2022) |
| 04/09/2022 | | MINUTE ORDER: Before the Court is Defendants' sealed and unopposed <u>21</u> Sealed Motion for Leave to File Exhibit Under Seal. Defendants seek leave to file under seal Exhibit 13, a declaration by a Navy Captain holding a leadership position within the Naval Special Warfare Development Group on the grounds that revealing his identity and role "may compromise past and future training and augmentations, resulting in potential harm to U.S. national security." In light of that representation and Plaintiffs' lack of opposition, Defendants' <u>21</u> Motion is |

| | | |
|---|---|---|
| | | **GRANTED**. However, given "the strong presumption in favor of public access to judicial proceedings" and the weighty issues of public concern in this case, *see EEOC v. Nat'l Childrens' Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996), it is further **ORDERED** that Defendants shall, on or before April 15, 2022, file a redacted copy of Exhibit 13 on the public docket. Signed by Judge Colleen Kollar–Kotelly on April 9, 2022. (lcckk1) (Entered: 04/09/2022) |
| 04/09/2022 | 23 | SEALED DOCUMENT (Exhibit 13) filed by LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY re 22 Response to motion filed by MICHAEL M. GILDAY, CARLOS DEL TORO, LLOYD AUSTIN. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 04/11/2022) |
| 04/13/2022 | 24 | NOTICE OF FILING REDACTED DOCUMENT to 22 Response to motion,, by LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY (Attachments: # 1 Exhibit 13)(Carmichael, Andrew) (Entered: 04/13/2022) |
| 04/14/2022 | 25 | REPLY to opposition to motion re 14 MOTION for Preliminary Injunction filed by NAVY SEAL 4. (Muise, Robert) (Entered: 04/14/2022) |
| 04/19/2022 | 26 | NOTICE OF SUPPLEMENTAL AUTHORITY by LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY (Attachments: # 1 Exhibit 1)(Carmichael, Andrew) (Entered: 04/19/2022) |
| 04/25/2022 | 27 | NOTICE OF SUPPLEMENTAL AUTHORITY by LLOYD AUSTIN, CARLOS DEL TORO, MICHAEL M. GILDAY (Attachments: # 1 Exhibit)(Carmichael, Andrew) (Entered: 04/25/2022) |
| 04/27/2022 | 28 | RESPONSE re 26 and 27 NOTICE of Supplemental Authority *Response to Defendants' Notices of Supplemental Authority* by NAVY SEAL 4 (Muise, Robert) Modified event title and link on 4/27/2022 (znmw). (Entered: 04/27/2022) |
| 04/29/2022 | 29 | ORDER denying 14 Motion for Preliminary Injunction. Signed by Judge Colleen Kollar–Kotelly on April 29, 2022. (lcckk1) (Entered: 04/29/2022) |
| 04/29/2022 | 30 | MEMORANDUM OPINION re 29 Order. Signed by Judge Colleen Kollar–Kotelly on April 29, 2022. (lcckk1) (Entered: 04/29/2022) |
| 05/01/2022 | 31 | NOTICE OF INTERLOCUTORY APPEAL as to 30 Memorandum & Opinion, 29 Order on Motion for Preliminary Injunction by NAVY SEAL 4. Filing fee $ 505, receipt number ADCDC–9206249. Fee Status: Fee Paid. Parties have been notified. (Muise, Robert) (Entered: 05/01/2022) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAVY SEAL 1, NAVY SEAL 2, NAVY
SEAL 3, and NAVY SEAL 4,

      Plaintiffs,

      v.

LLOYD AUSTIN, in his official capacity as
Secretary of the United States Department of
Defense; CARLOS DEL TORO, in his
official capacity as Secretary of the United
States Navy; and ADMIRAL MICHAEL M.
GILDAY, individually and in his official
capacity as Chief of Naval Operations,

      Defendants.

Case No. 1:22-cv-00688 (CKK)

Hon. Colleen Kollar-Kotelly

Notice is hereby given this 1st day of May 2022, that Plaintiff Navy SEAL 4 hereby appeals

to the United States Court of Appeals for the District of Columbia Circuit from the Order (Doc.

No. 29) and associated Memorandum Opinion (Doc. No. 30) entered in this action on April 29,

2022, denying Plaintiff Navy SEAL 4's motion for preliminary injunction.

      Respectfully submitted,

      AMERICAN FREEDOM LAW CENTER

      */s/ Robert J. Muise*
      Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
      P.O. Box 131098
      Ann Arbor, Michigan 48113
      Tel: (734) 635-3756
      rmuise@americanfreedomlawcenter.org

      */s/ David Yerushalmi*
      David Yerushalmi, Esq. (DC Bar No. 978179)
      2020 Pennsylvania Avenue NW, Suite 189
      Washington, D.C. 20001
      Tel: (646) 262-0500
      dyerushalmi@americanfreedomlawcenter.org

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: none.

AMERICAN FREEDOM LAW CENTER

*/s/ Robert J. Muise*
Robert J. Muise, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| NAVY SEAL 1, *et al.*, |
| Plaintiffs |
| v. |
| LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*, |
| Defendants. |

Civil Action No. 22-0688 (CKK)

**ORDER**
(April 29, 2022)

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED**, that Plaintiff Navy SEAL 4's [14] Motion for Preliminary Injunction is **DENIED**.  It is further

**ORDERED**, that the parties shall, on or before May 13, 2022, file a joint status report indicating how they wish to proceed in this matter.

**SO ORDERED**.

Dated: April 29, 2022

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| NAVY SEAL 1, *et al.*,<br><br>        Plaintiffs<br><br>    v.<br><br>LLOYD AUSTIN, in his official capacity as<br>Secretary of the United States Department of<br>Defense, *et al.*,<br><br>        Defendants. |

Civil Action No. 22-0688 (CKK)

**MEMORANDUM OPINION**
(April 29, 2022)

Plaintiff Navy SEAL 4 is a Navy servicemember and religious objector to one of nine

vaccines mandated by the Navy.  Before the Court is his [14] Motion for Preliminary Injunction

("Motion"), which seeks an order barring (1) the Navy from discharging him for his failure to

comply with Navy medical requirements and (2) the Navy from taking any other adverse action

against him (including, for example, reassignment).  The Motion raises particularly difficult

questions that implicate a storm of colliding constitutional interests of exceptional public import.

On the one hand, Plaintiff alleges a violation of a fundamental right guaranteed by the

Constitution's Free Exercise Clause.  On the other hand, the Commander-in-Chief Clause

provides the military broadly unfettered authority to ensure military readiness and the health of

the Armed Forces.  The tension between these two competing interests is even further

complicated by a relative dearth of precedent and everchanging, novel science on which the

vaccine in question rests.  With these challenges in mind, and after careful review of the

1

pleadings,[1] the relevant legal and historical authorities, and the entire record, Court shall **DENY** Plaintiff's [14] Motion for Preliminary Injunction.

## I.    BACKGROUND

### A.  General Background

Vaccination mandates within the Armed Forces have a long history in this country. "[E]xecutive immunization requirements predate the birth of this country, with George Washington famously requiring members of the Continental Army to be inoculated against smallpox." *Feds for Med. Freedom v. Biden*, 25 F.4th 354, 357 n.6 (5th Cir. 2022) (Higginson, J., dissenting).  Until August 2021, the Navy mandated all servicemembers receive influenza, tetanus, diphtheria, and pertussis vaccines.  *See* ECF 22-6.  The Navy also mandated other vaccines depending on the nature and location of a servicemember's mission, including vaccination against anthrax, Japanese encephalitis, yellow fever, typhoid fever, and smallpox, among others.  ECF 22-6 at 4.  On August 24, 2021, the Secretary of Defense directed the Navy to add another vaccine to the list—vaccination combatting COVID-19.  ECF 22-3 at 1.  The Secretary of Defense explained that, "[t]o defend this Nation, we need a healthy and ready force."  *Id.*  Accordingly, "[a]fter careful consultation with medical experts and military leadership, and with the support of the President [of the United States], [the Secretary of

---

[1]  This Memorandum Opinion focuses on the following documents:
- Plaintiffs' Complaint, ECF No. 3;
- Plaintiff's Memorandum in Support of Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 14-1 ("Motion" or "Mot.");
- Defendants' Response in Opposition to Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 22 ("Opp.");
- Plaintiff's Reply in Support of Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 25 ("Repl.").

In an exercise of its discretion, the Court finds that holding oral argument would not be of material assistance in rendering a decision.

Defense] determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people." *Id.*

Consistent with that order, the Secretary of the Navy, on the same day, directed all active duty servicemembers to be fully vaccinated against COVID-19 by November 19, 2022.  ECF 22-4 at 1; *see Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215 at *4 (D.D.C. Nov. 8, 2021). At the same time, the Deputy Chief of Naval Operations for Operations, Plans, and Strategy announced that the Navy would grant medical, religious, and administrative exemptions as necessary.  ECF 22-4 at 2.  These three exemptions were largely repetitive of prior orders applicable to all vaccines.  *See* ECF 22-7 at 4, 7-8.

Pursuant to the Navy Military Personnel Manual and standing military orders applicable to all requests for religious exemptions, an active-duty servicemember seeking a religious exemption first submits a written request to their commanding officer and provides an assessment by a Navy chaplain regarding the nature and sincerity of the servicemember's religious belief as applied to a particular order or requirement.  ECF 22-7 at 8.  The servicemember's commander then recommends approval or denial to the Deputy Chief of Naval Operations.  *Id.*  The recommendation must include:  "(1) the negative effect (if any) of the requested accommodation on the unit's military readiness, health, or safety; (2) the number of servicemembers in the command that have been granted a similar exemption; and (3) if recommending denial, a determination that the denial furthers a compelling government interest and there is no less restrictive means of accommodating the request." *Id.*

If the Deputy Chief of Naval Operations denies the request, and the servicemember continues to refuse to comply with the order, separation proceedings may begin. *Id.* at 10.  As to religious exemption requests from vaccination, the Government has represented in other cases

3

that, between 2015 and 2021, the Navy only adjudicated 83 such requests.  *E.g.*, Brief for

Appellants at *8, *U.S. Navy Seals 1-26 v. Biden*, 2022 WL 987768, at *8 (Mar. 28, 2022) (No.

22-10077).  Between the summer of 2021 and February 2022, the Navy received more than 4000

exemption requests from the COVID-19 vaccine alone.  *Id.*  Administrative separation, i.e.,

discharge under honorable conditions, is currently suspended in light of a nationwide injunction

issued by the United States District Court for the Northern District of Texas.  *See U.S. Navy

Seals 1-26 v. Austin*, --- F. Supp. 3d ---, 2022 WL 1025144, at *1 (N.D. Tex. Mar. 28, 2022).

### B.  Background Specific to Plaintiff

Plaintiff is a Special Warfare Operator Chief stationed in Virginia Beach, Virginia.  Ex

13 at 2.  As part of the Naval Special Warfare ("NSW") community, he conducts especially

sensitive, clandestine missions around the world.  *Id.*  As his commander explains, NSW

personnel "conduct insertions and extractions by sea, air, or land; they capture high-value enemy

personnel and terrorists around the world, carry out small-unit direction action missions against

military targets; and perform underwater reconnaissance and strategic sabotage."  *Id.*  They are,

in sum, the elite of the elite of this country's special operations forces.  *See id.*

Because NSW teams are quite small, "[t]he loss of even one member can degrade the[ir]

effectiveness . . . and may compromise a mission."  *Id.*  Plaintiff's commander concludes that "it

is vital that each member of the NSW community be medically fit to train or deploy on short

notice.  Medical conditions that a service member has or could be afflicted with create additional

risks, both medical and operational, not only for the service member afflicted, but also for other

members of the unit and other units."  *Id.*

Notwithstanding these medical concerns, Plaintiff submitted a request for a religious

exemption from COVID-19 vaccination (and no other medical requirement) on October 15,

2021.  ECF 15-1 at 23.  The religious basis for Plaintiff's request is, in his words, as follows:

> I have searched for as much information as I can find on the [SARS-CoV-2] virus and the [COVID-19] vaccine[s] and I have talked to as many people I can including those with different beliefs from my own and I am continually led to uncertainty and doubt.  The vaccine is not a sin and I understand that.  My personal convictions are inspired by my study and understanding of the Bible, and personally directed by the true and living God.  I am personally convicted [sic] that I should not receive any of the three [COVID]-19 [vaccines then available].  To go against one's convictions is where the issue lies. (James 4:17)[.]  If I fail to submit to the personal convictions that the Holy Spirit and Scripture has impressed upon me I will be sinning against God.  I have personally searched the Scripture and sough[t] guidance from the Holy Spirit to come to my decision.

*Id.* at 24.  Based on this representation, the Navy chaplain concluded that Plaintiff's "religious beliefs seemed honestly and sincerely held."  *Id.* at 26-27.  With a full record before him, Plaintiff's commander "recommended disapproval" concluding that "due to the viral nature of COVID-19 and the lack of alternative means of prevention, mandatory full vaccination is the least restrictive means available to protect the compelling government interest over the individual request."  *Id.* at 22.  In the ultimate denial of Plaintiff's request, the Deputy Chief of Naval Operations concluded by stating, "[w]hile every Sailor is welcome to express a religion of choice or none at all, our greater mission sometimes requires reasonable restrictions."  *Id.* at 19.  After Plaintiff continued to object to the course of vaccination required, the Navy began separation proceedings on March 17, 2022, six days after Plaintiffs' complaint was filed.  *See id.* at 42.

Accordingly, on March 25, 2022, Plaintiff filed the instant Motion for Preliminary Injunction, seeking an order halting the separation proceedings and any other adverse action the Navy might take short of separation.  More specifically, Plaintiff seeks an injunction of the military-wide COVID-19 vaccine mandate, ECF No. 22-3, and an injunction against the Navy-

specific COVID 19 vaccine mandate (NAVADMIN 256/21), ECF No. 22-4, as applied to him.[2]
ECF No. 14-4.  Just as all separation proceedings for religious objection to COVID-19
vaccination are stayed nationwide, so too are the separation proceedings specific to Plaintiff.  *See*
ECF No. 21-1 at 8.  In his sworn declaration, Plaintiff's commander states that, as of April 8,
2022, "Plaintiff has not been subject to any form of discipline or disparate treatment, nor any
form of maltreatment, either as a result of his reluctance to take the vaccine or as a result of this
lawsuit."  *Id.*  In his reply, Plaintiff does not appear to contest this account, which the Court
presumes to mean that Plaintiff continues to serve exactly as he did prior to this action's
inception.

## II.    LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon
a clear showing that the plaintiff is entitled to such relief."  *Sherley v. Sebelius*, 644 F.3d 388,
392 (D.C. Cir. 2011) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see
also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  A plaintiff seeking
preliminary injunctive relief "must establish [1] that he is likely to succeed on the merits, [2] that
he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of
the equities tips in his favor, and [4] that an injunction is in the public interest."  *Aamer v.
Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).  When seeking such relief, "the movant has the
burden to show that all four factors, taken together, weigh in favor of the injunction."  *Abdullah
v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014).  "The four factors have typically been evaluated
on a 'sliding scale,'" whereby if "the movant makes an unusually strong showing on one of the
factors, then [he] does not necessarily have to make as strong a showing on another factor."

---

[2] Although Plaintiff's briefing sometimes speaks in terms of a facial challenge, by virtue of the
relief sought, Plaintiff's challenge appears to be as-applied.

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).

It is unclear whether the United States Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") sliding-scale approach to assessing the four preliminary injunction factors has survived the Supreme Court's decision in *Winter*. *See Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the D.C. Circuit have "read *Winter* to suggest if not to hold that 'a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring)). However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See id.* In light of this ambiguity, the Court shall consider each of these factors and shall only evaluate the proper weight to accord to the likelihood of success if the Court finds that its relative weight would affect the outcome. *Accord Church*, 2021 WL 5179215, at *7.

### III.    DISCUSSION

On the whole, the Court concludes that Plaintiff has not carried his burden to show that he is "clearly warranted" preliminary relief. Before turning to the plethora of issues with Plaintiff's claims as presently pled, it is helpful first to distinguish between the two classes of actions Plaintiff asks the Court to enjoin: (1) separation from the Navy for religious objection to the Vaccination Order and (2) any other "adverse action." As to the first, Plaintiff is not facing irreparable harm because another District Court has entered a preliminary injunction as to an entire class of Navy servicemembers (and a sub-class of Navy SEALs) barring their separation for refusing the COVID-19 vaccine on religious grounds. The Court further concludes that, even if there were not an injunction already applicable to Plaintiff, discharge would likely not be *irreparable* harm because Plaintiff would be entitled to reinstatement and backpay should he

ultimately succeed on the merits.

As to everything else, a majority of the Supreme Court has already held (in a nonbinding, shadow docket decision), that the Government is likely to succeed on the merits on the same claims brought by Navy SEALs like Plaintiff. *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022) Although this decision is nonbinding, it is the most persuasive authority on which a District Court may rely.  As such, and for the reasons that follow, the Court shall **DENY** Plaintiff's request for a preliminary injunction.

## A. Discharge

As to discharge, Plaintiff does not face irreparable harm that is "certainly impending." Another District Court has issued a preliminary injunction against the enforcement of NAVADMIN 256/21, the policy on which Plaintiff's separation would be based.  *U.S. Navy Seals 1-26*, 2022 WL 1025144, at *3-4. That preliminary injunction applies to an entire class of all Navy servicemembers, of which Plaintiff is a member.  *See id.* at *13.  As a general rule, an injunction against governmental action means that a plaintiff suffers no irreparable injury that might arise therefrom.  Order at 2, *Pars Equality Center v. Trump*, 17-cv-0255 (TSC) (D.D.C. Mar. 11, 2017) (slip op.).[3]  Because the alleged injury is "'dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all,'" i.e., the dissolution of the injunction, the Court may not enter a redundant preliminary injunction addressing such a speculative injury.  *See Church*, 2021 WL 5179215, at *8 (quoting *Trump v. New York*, 141 S. Ct. 530, 535 (2020)).

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff raises the specter of "stigmati[zation]," "remov[al] from his hard-earned position as a Navy SEAL," and "a host of

---

[3]  *See also Faust v. Vilsack*, 2021 WL 2806204, at *3 (E.D. Wis. July 6, 2021); *Nat'l Urban League v. DeJoy*, 2020 WL 6363959, at *11 (D. Md. Oct. 29, 2020).

other punitive measures." Mot . at 20. All of these alleged injuries are *short of* separation and thus fall within the ambit of the portion of Plaintiff's proposed injunction covering "any other adverse action." Second, Plaintiff fears "criminal prosecution under the Uniform Code of Military Justice." *Id.* This is also an adverse action that is not separation and is addressed in subpart (B)(c) below. Third, Plaintiff argues that he is due an injunction in this case because the Government has appealed the nationwide injunction. Mot. at 20. *Pars* squarely rejected such an argument, and the Court does so here. Order at 1, *Pars*, 17-cv-0255. Whether the Government will ultimately succeed on appeal is entirely speculative. Finally, Plaintiff notes that the Supreme Court's shadow docket decision is nonbinding. This observation is beside the point as there is nevertheless a nationwide injunction covering Plaintiff—on whose merits the Supreme Court has not yet passed judgment. Accordingly, because there is a nationwide injunction already ensuring the Government cannot, at this time, discharge Plaintiff for objection to vaccination, the Court holds that Plaintiff is not due a preliminary injunction *in this case* barring his discharge from the Navy.

### B. Any Other Adverse Action

As currently pled, there are a plethora of weaknesses in Plaintiff's claims that counsel against preliminary relief. First, there appears to be a serious question as to whether Plaintiff's claims are justiciable, because they require the Court both to evaluate the merits of military expertise and to weigh technical issues of public health and immunology based on novel science that remains unfixed as the current COVID-19 pandemic turns endemic. Second, the Court is concerned that the record as it currently stands does not properly resolve whether mandatory vaccination is the least restrictive means as to Plaintiff to accomplish the Government's interest in force readiness and national security more broadly. That fault permeates Plaintiff's RFRA

claim, Free Exercise claim, and Equal Protection claim.  Taken together, the Court concludes

these issues militate against preliminary relief at this early stage of the case.

     *a.  Justiciability*

It is a longstanding principle of constitutional law that "[q]uestions, in their nature

political or which are, by the constitution and laws, submitted to the executive, can never be

made in this court."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803).  In *Baker v. Carr*,

the Supreme Court identified several circumstances in which a question should be held

nonjusticiable:

> a textually demonstrable constitutional commitment of the issue to a coordinate political
> department; or a lack of judicially discoverable and manageable standards for resolving
> it; or the impossibility of deciding without an initial policy determination of a kind
> clearly for nonjudicial discretion; or the impossibility of a court's independent resolution
> without expressing lack of the respect due coordinate branches of government; or an
> unusual need for unquestioning adherence to a political decision already made; or the
> potentiality of embarrassment from multifarious pronouncements by various departments
> on one question.

369 U.S. 186, 217 (1962).  Put differently, "[c]laims are nonjusticiable where: (1) their

resolution requires decisions which are not matters of judicial expertise but are matters of

management, public policy or technical expertise; (2) the relief requested usurps the functions of

a coordinate branch of government; or (3) the relief requested is not justicially manageable."

*Nat'l Coal Ass'n v. Marshall*, 510 F. Supp. 803, 805 (D.D.C. 1981) (citing *Baker*, 369 U.S. at

217).  Here, there are serious questions as to whether a judicial challenge to a military medical

requirement (1) "usurps the functions" of powers committed to the Executive through the

Commander-in-Chief Clause and (2) involves scientific determinations that "are not matters of

judicial expertise but are matters of . . . technical expertise."

     i.  Military Judgment

"Judges are not given the task of running the Army," the Navy, or any other branch of the

military.  *See Orloff v. Willoughby*, 345 U.S. 83, 93 (1953).  That task is textually committed to

the Executive, while it is Congress' role to "make Rules for the Government and regulation" of

the military.  U.S. Const. Arts. I § 8, II § 2; *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C.

1998). "It is this power of oversight and control of military force by elected representatives and

officials which underlies our entire constitutional system."  *Gilligan v. Morgan*, 413 U.S. 1, 10

(1973).  "The complex, subtle, and professional decisions as to the composition, training,

equipping, and control of a military force are essentially professional military judgments"

beyond the ken or competence of the courts.  *Id.*

That is not to say that *all* military judgments are nonjusticiable.  Some involve far more

expertise than others.  For example, deference is particularly due "when the military, pursuant to

its own regulations, effects personnel changes through the promotion or discharge process."

*Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987); *see also, e.g.*, *Kries v. Secretary of

Air Force*, 866 F.2d 1508, 1512 (D.C. Cir. 1989) ("This court is not competent to compare

appellant with officers competing for [] a promotion."); *Charette*, 996 F. Supp. at 50 (holding a

former military officer's "request for reinstatement . . . not justiciable"); *Harkness v. Secretary of

Navy*, 858 F.3d 437, 444-45 (6th Cir. 2017) ("Duty assignments lie at the heart of military

expertise and discretion, and we are wary of intruding upon that sphere of military decision-

making." (internal quotation marks omitted)).  Sometimes, however, fitness for duty is

justiciable, generally where resolution of the issue does not require evaluation of the merits of

military discretion.  *See, e.g.*, *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (justiciable

where review was limited to whether decision by civilian administrative board was arbitrary or

capricious); *Doe 2 v. Shanahan*, 755 F. App'x 19, 23 (D.C. Cir. 2019) (suggesting that a "blanket

ban" prohibiting indefinitely the accession of transgender individuals into the military would be

11

justiciable).  The key question, then, is whether Plaintiff's challenge implicates professional

military expertise well beyond the Court's ken.

There are a number of reasons to think that in all likelihood it does.  Reviewing military

judgments here would require the Court to assess the Navy's conclusion that this particular

medical requirement was necessary to ensure Navy SEALs' effectiveness in their military duties.

Even more problematically, as Plaintiff takes pains to note, evaluating Plaintiff's RFRA claim

would require the Court to determine whether vaccination against COVID-19 is the narrowest

means to accomplish the Navy's interest in ensuring the success of *this* Plaintiff's deployments.

That would further require the Court to review the missions to which Plaintiff has been assigned

in the recent past, the tactical particulars of those missions, and whether those tactical particulars

are reflective of future special-operations missions to which Plaintiff would be assigned in the

future.  The tactical necessities of a particular mission are perhaps the epitome of "complex,

subtle, and professional decisions" otherwise left to the Commander-in-Chief and their

subordinates.  *See Short v. Berger*, 2022 WL 105182, at *5 (C.D. Cal. Mar. 3, 2022); Trans. at

42, ECF No. 22, *Dunn v. Austin*, No. 2:22-cv-00288-JAM-KJN (E.D. Cal. Feb. 28, 2022)

*application for injunction pending appeal denied* No. 21A599, Doc. 7 (U.S. Apr. 15, 2022).  As

such, the Court remains concerned that this challenge to military policies as applied to this

plaintiff may be nonjusticiable.

ii.  Immunology and Epidemiology

Not only do judges not make good generals, *Orloff*, 345 U.S. at 95, they also do not make

good immunologists or epidemiologists.  On top of the military justiciability issues here, this

case raises exceptionally fraught questions of medical science that the judiciary "lacks the

background, competence, and expertise to assess."  *See S. Bay United Pentecostal Church v.*

*Newsom*, 140 S. Ct. 1613, 1614(2020) (Roberts, C.J., concurring); *see also Bimber's Delwood, Inc. v. James*, 496 F. Supp. 2d 760, 773 (W.D.N.Y. 2020) (finding state public health measures taken to combat COVID-19 pandemic nonjusticiable).  For questions of public health related to greenhouse gas emissions, for example, "[f]ederal judges lack the scientific, economic, and technological resources an agency can utilize in coping with issues of [such complexity]."  *Am. Elec. Power Co v. Connecticut*, 564 U.S. 410, 428 (2011).  Here, a governmental agency textually committed to resolving these scientific debates brought its considerable scientific, economic, and technological resources to bear in determining that vaccination against COVID-19 is necessary to accomplish military goals generally and as applied to Plaintiff.

In fact, the heart of Plaintiff's challenge is contesting the very scientific conclusions that the military has come to.  For example, Plaintiff would have the Court find, among other things, that none of the available COVID-19 vaccines are effective, all of the available COVID-19 vaccines are "largely experimental," natural immunity is superior to vaccination, "herd immunity" is superior to vaccination, the available vaccines only "target a largely extinct COVID-19 variant," and that Plaintiff is so healthy that vaccination would cause him more medical harm than good.  Repl. at 8, 9-10.  There is simply little to no daylight between the parties' respective scientific positions, and the Court is deeply concerned that it lacks the technical wherewithal to properly resolve the parties' disagreements.[4]

Contrast this case, for example, with *Roe v. Dep't of Defense*, 947 F.3d 207 (4th Cir. 2020).  There, two Air Force servicemembers were discharged for testing positive for human immunodeficiency virus (HIV), the virus that causes acquired immunodeficiency syndrome

---

[4] The Court joins a number of others who denied motions for preliminary injunctions on these grounds (and others).  *See, e.g.*, *Short v. Berger*, 2022 WL 1203876, at *8 (D. Ariz. Apr. 22, 2022); Trans. at 42, *Dunn v. Austin*, No. 2:22-cv-00288-JAM-KJN (E.D. Cal. Feb. 28, 2022); *Short v. Berger*, 2022 WL 105182, at *14.

(AIDS).  *Id.* at 212.  In evaluating whether the plaintiffs' equal protection claim was justiciable, the Court noted that antiretroviral therapy, developed in the 1990s, so reduces an HIV-positive individual's viral load so as to mitigate any harmful effects to the disease and prevent transmissibility.  *Id.* at 213.  The court did not have to engage in any scientific factfinding to come to that conclusion, in part because the science had been long settled, and also because the parties agreed on the science in their joint appendix.  *See id.* at 213, 229.

The opposite is the case here.  As Plaintiff notes, the main variant of SARS-CoV-2 circulating at the time of the military orders at issue, Delta, has almost been entirely displaced by another, Omicron, and its subvariants (Omicron BA.2 and, now, BA.3 and BA.4).  *See* Centers for Disease Control and Prevention ("CDC"), *Monitoring Variant Proportions* (Apr. 26, 2022) *available at* https://covid.cdc.gov/covid-data-tracker/#variant-proportions (last accessed Apr. 26, 2022 1:59 PM ET).  As new variants arise, there is necessarily a lag-time in peer reviewed, statistically-significant scientific studies conclusively demonstrating efficacy of any given vaccination.  *See, e.g.*, CDC, "Notes from the Field: SARS-CoV-2 Omicron Variant Infection in 10 Persons Within 90 Days of Previous SARS-CoV-2 Delta Variant Infection—Four States, October 2021-January 2022," (Apr. 8, 2022) *available at* https://www.cdc.gov/mmwr/volumes/71/wr/pdfs/mm7114a2-H.pdf (last accessed Apr. 26, 2022 2:02 PM ET) (concluding, based on statistically insignificant anecdotal survey, "limits of infection-induced immunity against novel variants" and "additional protection" provided by vaccination against novel Omicron subvariants).  The everchanging nature of SARS-CoV-2's variants and subvariants even further complicates any attempt to assess the relative weight of the scientific authority upon which Department of Defense experts have relied.  Doing so would be the polar opposite of the inquiry in *Roe*, involving certain science upon which both parties

14

agreed.  *See* 947 F.3d at 229.  The Court is not a virologist, epidemiologist, immunologist, or even a medical doctor, and binding precedent from the Supreme Court and the D.C. Circuit suggests that the Court should not try its untrained hand at resolving these disputes as they are presently pled.

    *b.   Merits*

        i.  RFRA

The Religious Freedom Restoration Act provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb-1(a).  To prevail on a RFRA claim, a plaintiff must first show a "religious exercise" that has been burdened.  *Wilson v. James*, 139 F. Supp. 3d 410, 424 (D.D.C. 2014) (APM); *United States v. Sterling*, 75 M.J. 407, 415 (CAAF 2016).  A "religious exercise" "involves 'not only belief and profession but the performance of (or abstention from) physical acts' that are 'engaged in for religious reasons.'"  *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2770 (2014) (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990)).  If confronted with a "religious exercise," the government may impose a substantial burden on that religious exercise "only if it demonstrates that the application of the burden to the person—(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest."  *Id.* § 20000bb-1(b).

Through RFRA, Congress abrogated the Supreme Court's holding in *Smith* that laws of generally applicable that only incidentally burden religious exercise are due rational basis review under the First Amendment's Free Exercise Clause.  It added even more protection than that which was afforded prior to *Smith* by focusing the inquiry even more on the particular claimant's

circumstances.  In other words, pursuant to RFRA, a court must "scrutinize[e] the asserted harm of granting specific exemptions to particular religious claims and . . . look to the marginal interest in enforcing the challenged government action in that particular context."  *Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015).

Whether and to what extent military judgments are nevertheless due some degree of deference under RFRA is a matter of some debate.  The D.C. Circuit has yet to decide the issue, and only one court of this jurisdiction has addressed it.  *See Singh v. McHugh*, 109 F. Supp. 3d 72, 86 (D.D.C. 2015) (ABJ) *amended and superseded in irrelevant part* 185 F. Supp. 3d 201 (D.D.C. 2016).  In its legislative history, "Congress specifically acknowledged the importance of maintaining order and discipline within the military ranks, and it noted its expectations would adhere to the tradition of judicial deference in matters involving both prisons and the armed forces," the two areas to which First Amendment jurisprudence has historically been much more permissive of burdens on free exercise.  *See id.* at 89.  The Senate Report explained that "[t]he committee intends and expects that [military] deference continue under this bill." S. Rep. No. 103-111, at 12.  The House Report explained that "religious liberty claims in the context of prisons and the military present far different problems for the operation of those institutions than they do in civilian settings."  H.R. Rep. No. 103-88.  Nevertheless, the Report continued, military and prison "[o]fficials must show that the relevant regulations are the least restrictive means of protecting a compelling government interest."  *Id.*  On this legislative history, the *Singh* court concluded that it must apply strict scrutiny to the RFRA claim while "credit[ing] the [military's] assertions and giv[ing] due respect to its articulation of important military interests." *Id.* at 93.

This approach strikes the Court as the appropriate balance between the statutory

language, Congressional intent, and judicial competency.  Still, the Court stresses that context is important.  As one law review article has argued, unlike grooming standards, vaccinations require a higher degree of deference because they "improve the readiness of the force," the military generally has not granted religious exemptions from immunizations in the past, and the military relies on complex scientific data to promulgate immunization and medical requirements.  *See* Lt. Col. Christopher J. Baker, *Over Your Dead Body: An Analysis on Requests for Religious Accommodations for Immunizations and Vaccinations in the United States*, 81 A.F. L. Rev. 1, 45 (2020).  As such, and to put a slightly finer point on *Singh*, it strikes the Court as more correct to say that the degree of deference to the military's tailoring depends on the degree of military and scientific expertise necessary to make that judgment.  With the standards of review on a military RFRA claim in mind, the Court turns to the claim at issue.

As Defendants do not appear to contest at the moment whether Plaintiff holds a sincere religious belief within the meaning of RFRA, the Court need address the issue for present purposes.[5]  As to the compelling interest question, however, it does not appear that Plaintiff has shown that Defendants lack a compelling interest for their vaccination orders, either generally or as applied to Plaintiff.  Plaintiff maintains that the Navy does not have a "compelling interest in maintaining a healthy and worldwide deployable force" because it is "2022 and not 2020."  Repl.

---

[5]  The issue of sincerity, however, may bear brief mention.  In recent briefing before the Supreme Court, the Government represented that "[b]etween 2015 and the summer of 2021, the Navy adjudicated 83 religious accommodation requests from *any* required vaccination."  Brief for Appellants at *8, *U.S. Navy Seals 1-26 v. Biden*, 2022 WL 987768, at *8 (Mar. 28, 2022) (No. 22-10077).  From October 2021 to February 2022, the Navy had received more than *four thousand* accommodation requests from COVID-19 vaccination alone.  *Id*.  If true, it strikes the Court as statistically unlikely that all 4,000 requests are sincerely held.  Particularly so here where Plaintiff's alleged religious belief is only newly held and sparsely stated.  *Cf. Ramirez v. Collier*, 142 S. Ct. 1264, 1278 (2022) (holding that evolving or newly held religious beliefs during the pendency of litigation is probative of sincerity).  Nevertheless, any court should be loath to play the part of inquisitor, and this Court shall not do so at such an early stage of the case.

17

at 7.  Plaintiff continues that it is "not 1918 when the Spanish flu was causing havoc, and it is not [] 2020, when the pandemic was at its peak," further arguing that the military has no *rational basis* for its vaccination orders, much less a compelling interest in enforcing them  *Id.* at 7-8, 8 n.2.  The Court understands Plaintiff to thereby maintain that the military does not have a compelling government interest in any immunization program, or at least in mandating the flu vaccine (to which Plaintiff does not object).  On the Court's review, no court has ever held that the military does not have a compelling interest in the health of its troops, and no court has suggested that vaccination against harmful diseases does not serve a compelling government interest.  Indeed, Plaintiff cites no authority to this effect, beyond the Northern District of Texas' unsupported conclusion that vaccination of 99.4% of Navy servicemembers sufficiently protects the other 0.6%.  *U.S. Navy Seals 1-26 v. Biden*, --- F. Supp. 3d --- 2022 WL 34443, at *10 (N.D. Tex. Jan. 3, 2022).  It is also difficult for the Court to parse that decision's legal reasoning, as that decision cites neither law nor science to support such a proposition.

On the other hand, even the dissent in the Supreme Court's grant of a partial stay in *U.S. Navy Seals* agreed that "the Navy has a compelling interest in preventing COVID-19 from impairing its ability to carry out its vital responsibilities, as well as a compelling interest in minimizing any serious health risk to Navy personnel."  *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1305 (2022) (Alito, J., dissenting).  So have other district courts that have granted preliminary relief in similar circumstances.  *E.g.*, *Air Force Officer v. Austin*, --- F. Supp. 3d ---, 2022 WL 468799, at *9 (M.D. Ga. Feb. 16, 2022) ("It would be a waste of time and wrong to state that '[s]temming the spread of COVID-19' isn't a compelling interest—the Supreme Court has already decided it is.").  As a practical matter, it strikes the Court that the *sine qua non* of military interests is keeping an individual servicemember fit enough to accomplish their tasks in

18

furtherance of national security.  *See Doe v. Garrett*, 903 F.2d 1455, 1463 (11th Cir. 1990); *Short*, 2022 WL 1203876, at \*12.  *Cf. Nat'l Federation of Fed. Emps. v. Cheney*, 884 F.2d 603, 610 (D.C. Cir. 1989) ("It is readily apparent that the Army has a compelling safety interest in ensuring that . . . civilians who fly and service its airplanes and helicopters are not impaired by drugs.").

Relying on the Supreme Court's decision in *Hobby Lobby*, Plaintiff correctly notes the Court must further ask whether the military has a compelling interest as to Plaintiff.  Plaintiff seems to suggest that the military's general compelling interest in ensuring the health of its servicemembers does not distill to a compelling interest in ensuring that Plaintiff remains healthy enough to accomplish his duties.  Logically, it must, although the Court agrees that it must look to Plaintiff's role in the military when assessing Defendants' interest in enforcing its medical requirements as to Plaintiff.

Plaintiff is, of course, a Navy SEAL.  He is the elite of the elite, trained to respond to the most difficult of military tasks at a moment's notice.  As the Court noted above, "Navy SEALs conduct clandestine missions infiltrating their objective areas by fixed- and rotary-wing aircraft, Navy surface ships, combatant craft, submarines, and ground mobility vehicles."  ECF 21-1 at 2.  Their tasks include "crisis response, support to forward presence operations, support to conventional Naval forces at sea, air, or land; they capture high-value enemy personnel and terrorists around the world, carry out small-unit direct action missions against military targets, and perform underwater reconnaissance and strategic sabotage."  *Id.*  Plaintiff is not a clerk, a nurse, or a chaplain.  His role is not administrative.  Lethality is his job.

Plaintiff is also indispensable in any given mission.  "The loss of even one member can degrade the effectiveness of small NSW units and may compromise a mission.  Injured or sick

19

members of a SEAL team are not easily replaced; there are often no alternative members available." *Id.*  Plaintiff does not contest Defendants' proffered job description, but suggests, for example, that "there is a far greater risk of spraining or breaking his ankle" than falling ill from COVID-19.  Mot. at 26.  Assuming so for the moment, that does not make the military's efforts to mitigate those risks any less compelling.  *Short*, 2022 WL 1203866, at *13.  The military provides Plaintiff with boots to prevent him from spraining his ankle and gives him a helmet to eliminate concussions.  Similarly, Plaintiff suggests that vaccination does not serve a compelling interest because he has thus far accomplished his duties without falling seriously ill from COVID.  *Id.*  Even so, it seems illogical to think that because a soldier has accomplished his tasks without, say, food or water that the military does not serve a compelling interest by providing rations.  Simply put, of all the servicemembers in which the military has a great interest in keeping healthy, Navy SEALs are likely at the very top.

Finally, the Court must address the extent to which vaccination against COVID-19 is the least restrictive means available to further Defendants' interest in Plaintiff's health specifically and force readiness broadly.  As the Court addressed above, there is very little daylight between the parties' scientific positions.  Plaintiff thinks all available vaccines entirely "ineffective" while Defendants consider anything short of vaccination insufficient to manage the additional risk of morbidity absent vaccination.  For present purposes, the Court will examine the scientific and medical contentions only to the extent necessary to resolve the instant request for preliminary relief and will give the military's medical expertise due regard in its review.

As a general matter, the overwhelming weight of scientific authority supports the proposition that COVID-19 vaccination reduces the severity and duration of disease.  CDC, "SARS-CoV-2 Variant Classifications and Definitions" (Apr. 26, 2022) *available at*

20

https://www.cdc.gov/coronavirus/2019-ncov/variants/variant-classifications.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fvariants%2Fvariant-info.html (last accessed April 28, 2022 12:47 PM ET); National Institutes of Health COVID-19 Research, "Understanding COVID-19 Vaccines" (Jan. 31, 2022) *available at* https://covid19.nih.gov/covid-19-topics/covid-19-vaccines (last accessed April 28, 2022 12:44 PM ET); CDC, *Science Brief:  COVID-19 Vaccines and Vaccination* (Sept. 15, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html?msclkid=012484c4c71211ec870921b02b97bab7 (last accessed April 28, 2022 12:42 PM ET).  Early studies on vaccination and Omicron subvariants also support that conclusion.  CDC, "Notes from the Field: SARS-CoV-2 Omicron Variant Infection in 10 Persons Within 90 Days of Previous SARS-CoV-2 Delta Variant Infection—Four States, October 2021-January 2022," (Apr. 8, 2022) *available at* https://www.cdc.gov/mmwr/volumes/71/wr/pdfs/mm7114a2-H.pdf (last accessed Apr. 26, 2022 2:02 PM ET); CDC, "Effectiveness of MRNA Vaccination in Preventing COVID-19-Associated Invasive Mechanical Ventilation and Death—United States, March 2021-January 2022" (Mar. 18, 2022) *available at* https://www.cdc.gov/mmwr/volumes/71/wr/mm7112e1.htm (last accessed Apr. 28, 2022 3:07 PM ET); CDC, "SARS-CoV-2 B.1.1.529 (Omicron) Variant Transmission Within Households — Four U.S. Jurisdictions, November 2021-February 2022" (Mar. 4, 2022) *available at* https://www.cdc.gov/mmwr/volumes/71/wr/mm7109e1.htm#:~:text=In%20a%20study%20of%20household,of%20transmission%20to%20household%20contacts (last accessed Apr. 28, 2022 3:08 PM ET).

To contravene the hundreds of scientists, immunologists, virologists, and epidemiologists

that support Defendants' position, Plaintiff points to his proffered expert, Dr. Peter A. McCullough ("Dr. McCullough").  ECF 14-3 at 2.  Dr. McCullough has a master's degree in public health (with a focus on epidemiology), but his practice was almost entirely internal medicine and clinical cardiology until he began publishing on COVID-19 in the early days of the pandemic.  ECF 14-3 at 3-4.  He believes that all COVID-19 vaccines are ineffective against all subvariants but Alpha (now extinct) because Alpha is, in fact, now extinct.  *Id.* at 8.

For that proposition, he cites mainly to one study:  Public Health England's "SARS-CoV-2 variants of concern and variants under investigation in England: Technical Briefing 17" (June 25, 2021) *available at*

https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/1001354/Variants_of_Concern_VOC_Technical_Briefing_17.pdf?msclkid=12d9598cc71411ec9a6cb0e48c457e31.  This study stands for the unremarkable proposition that, of breakthrough infections caused by the *Delta* variant among the fully vaccinated shortly after the initial vaccination rollout in Britain, a higher *proportion* of those fully vaccinated with breakthrough infections died than in a set of unvaccinated Britons who tested positive for the Delta variant of SARS-CoV-2.  As Public Health England (a British government agency) later underlined, responding to this study specifically, vaccines are "highly effective at preventing hospitalization, so it is vital to get both doses to gain maximum protection against all existing and emerging variants."  Reuters, "Fact Check–Claim that vaccinated people are six times more likely to die from the Delta variant than those who are unvaccinated is misleading," (July 1, 2021 1:48 PM ET) *available at* https://www.reuters.com/article/factcheck-delta-vaccinated-idUSL2N2OD2CJ?msclkid=12d98817c71411ecbb330064666765ad (last accessed April 28, 2022).

He also claims that "the US FDA and CDC have offered no interpretation of overall safety of the COVID-19 vaccines according to the manufacturer or as a group, nor have they offered methods of risk mitigation for these serious adverse effects," ECF 14-3 at 8, and that "[t]here has been no valid study demonstrating clinical benefit with COVID-19 vaccination in those who have well documented or even suspected prior COVID-19 illness," ECF 14-3 at 8. *Contra* National Institutes of Health COVID-19 Research, "Understanding COVID-19 Vaccines" (Jan. 31, 2022) *available at* https://covid19.nih.gov/covid-19-topics/covid-19-vaccines (last accessed April 28, 2022 12:44 PM ET).

Dr. McCullough's Declaration is perhaps better understood in context. As he explains in his Declaration, he has regularly testified at government hearings on COVID-19 in which he offers "a second opinion," in other words, an opinion outside the scientific mainstream. ECF 14-3 at 2 (capitalization altered). More problematically, one court has entered a preliminary injunction against him for false statements (there, for continuing to claim affiliation with Baylor University after having been fired for spreading medical, COVID-related misinformation). *See* Order at 2, *Baylor Scott & White Health v. McCullough*, No. DC-21-09699 (Tex. 191st Dist. July 29, 2021). In any event, a battery of medical authorities contest Dr. McCullough's positions.[6]

---

[6] *E.g.*, U.S. Food & Drug Administration, "Antibody (Serology) Test for COVID-19: Information for Patients and Consumers" (Feb. 22, 2022) *available at* https://www.fda.gov/medical-devices/coronavirus-covid-19-and-medical-devices/antibody-serology-testing-covid-19-information-patients-and-consumers?msclkid=5d865f05c73911ecb7806866c8a07d65 (last accessed April 28, 2022) (natural immunity); Anthony S. Fauci *et al.*, "The Concept of Herd Immunity May Not Apply to COVID-19," *Journal of Infectious Diseases* (Mar. 21, 2022) *available at* https://academic.oup.com/jid/advance-article/doi/10.1093/infdis/jiac109/6561438?searchresult=1&login=false (herd immunity); ECF 22-10 Ex. A (data showing COVID-19 does not spare "extraordinarily fit" servicemembers); Ian Kracalik PhD MPH, CDC, "Myocarditis Outcomes Following mRNA COVID-19 Vaccination" (Feb. 4, 2022) *available at* https://www.cdc.gov/vaccines/acip/meetings/downloads/slides-2022-02-04/04-COVID-Kracalic-508.pdf?msclkid=4dbf327ec73b11ecb99ebe5101df2ae1 (incidence of myocarditis).

23

As such, the Court is not inclined to conclude at this early stage of the case that the military's scientific and medical conclusions, which rest on the great weight of scientific authority, should be rejected.

Finally, Plaintiff proposes a few inductive reasons why the vaccine mandate should fail for insufficiently narrow tailoring.  For example, relying on the Fifth Circuit's opinion in *Navy Seals*, the fact that the Navy has granted many medical exemptions but no religious exemptions should, in Plaintiff's view, render the vaccination orders suspect.  *See Navy Seals*, 2022 WL 5944375, *12.  That reasoning misses the point that the Navy grants medical exemptions only on a showing of a contraindication, i.e., upon a showing that vaccination would cause more medical harm than it would good.  In those circumstances, therefore, lack of vaccination in fact serves the military's interest in maintaining the health of individual servicemembers and force readiness broadly.  *See Short*, 2022 WL 105182, at *8.  Plaintiff again suggests that because he has been able to serve without incident, he need not be vaccinated.  As the *Short* court explained, however, "merely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them." *Id.* at *9.

As such, and on the whole, there remain a number of questions as to whether Plaintiff can carry his burden to show that he is likely to succeed on his RFRA claim.

ii.  Free Exercise

The Free Exercise Clause permits the government to enact laws that incidentally burden religious exercise so long as the laws are neutral and generally applicable. *See, e.g.*, *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021); *Emp. Div., Dep't of Hum. Res. of Oregon v.*

24

*Smith*, 494 U.S. 872, 879 (1990).  More specifically, such laws are subject to rational basis review rather than strict scrutiny.  *Fulton*, 141 S. Ct. at 1876.

The parties dedicate most of their Free Exercise arguments to answering the initial inquiry of whether the vaccine mandate is both (1) neutral and (2) generally applicable.  Plaintiff contends that because the mandate is neither neutral nor generally applicable, this Court must apply strict scrutiny to the mandate.  Arguing to the contrary, the government holds that only rational basis review is appropriate here because the mandate is both neutral and generally applicable.

In a normal, non-military context the Court would be required to apply the familiar *Smith* framework to determine whether a law is subject to either strict scrutiny or rational basis review. This case is different.  This case asks the Court to wade into the murky waters where fundamental constitutional rights mix with the prerogatives and necessities of our nation's military.  While neither the government here, nor prior caselaw, commands complete deference to the military by the Judiciary, the Court is mindful of its role adjudicating intra-military disputes and accordingly will analyze the Free Exercise portion of this case in a manner consonant with controlling Supreme Court caselaw regarding the deference owed to the military.

The foundational case for present purposes is *Goldman v. Weinberger*, 475 U.S. 503 (1986), involving the Air Force's refusal to allow an Orthodox Jewish servicemember, Goldman, to wear a yarmulke while on duty in accordance with his faith.  *Id.* at 504.  There, the Court upheld the policy of the Air Force to forbid the wearing of headgear while indoors, finding that the religious rights of Goldman were outweighed by the Air Force's legitimate need to enforce uniform dress regulations to further the Force's overall mission.  *Id.* at 509–10.  Notably, the Court rejected the application of the Free Exercise standard enunciated in *Sherbert v. Verner*,

374 U.S. 398, 406 (1963), which requires applying strict scrutiny to government laws and policies that substantially burden religious beliefs. *Goldman*, 475 U.S. at 506 ("[W]e have repeatedly held that 'the military is, by necessity, a specialized society separate from civilian society.'" (quoting *Parker v. Levy*, 417 U.S. 733, 743 (1974)).

The Court emphasized that because "great deference" is owed to the "professional judgment of military authorities concerning the relative importance of a particular military interest," courts must be cautious before intruding into the domain of the military. *Id.* at 507 ("[Courts are] ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have[.]" (quoting *Chappell v. Wallace*, 462 U.S. 296, 305 (1983)). Further, the Court explained:

> Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society. The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps.

*Id.*

To be sure, the Court did not hold that the demands of the military "render essentially nugatory" the "guarantees of the First Amendment." *Id.*   After all, in *Goldman*, the Court affirmed the D.C. Circuit's opinion which applied a level of scrutiny that was "neither strict scrutiny nor rational basis." *Id.* at 506.   As Justice John Paul Stevens explained in his concurring opinion, deference to the military is appropriate where the challenged policy or rule is based on a "neutral, completely objective standard," suggesting that in some contexts a different level of scrutiny would apply. *Id.* at 513 (Stevens, J., concurring).

Further, nothing in *Smith* suggests that the "great deference" owed to the military in cases involving Free Exercise claims was either changed or eliminated. In his majority opinion, Justice Antonin Scalia, citing *Goldman*, notes with approval that the Court had previously refused to apply the *Sherbert* strict scrutiny analysis in the military context. *Smith*, 494 U.S. at 884. Further, in her opinion concurring in the judgment, Justice Sandra Day O'Connor explains that there are two contexts in which the Court has "not traditionally required the government to justify a burden on religious conduct by articulating a compelling interest": the military and prisons. See *id*. at 900–01 (O'Connor, J., concurring in the judgment). That is, neither the military nor prisons need to satisfy strict scrutiny when a policy or rule is challenged on Free Exercise grounds.

More recently, in *Fulton v. City of Philadelphia*, Justice Samuel Alito, in his opinion concurring in the judgment, echoed Justice O'Connor's *Smith* opinion in recognizing that the normal strict scrutiny analysis demanded by *Sherbert* is inapplicable in the military context, because, in that area, the "government exercise[s] broader authority over assertions of individual rights." *Fulton*, 141 S. Ct. at 1891 (Alito, J., concurring in the judgment).

At a minimum, these cases suggest when a member of the military challenges a regulation or policy of the military on Free Exercise grounds, courts should normally apply a level of scrutiny below that of strict scrutiny and evidently comparable to rational basis review.[7] Accordingly, the present debate over whether the mandate is both neutral and generally

---

[7] The Court recognizes that there may be certain scenarios where a military regulation is explicitly and facially hostile to religion or a certain religious practice such that it would obviously fail judicial review. In the present case, however, the Court need not determine the exact contours of such a scenario because there are no facts alleged to support an inference that the vaccine mandate has as its object an animus toward religion or is facially discriminatory toward religion.

applicable is largely academic because *Smith*'s exemption analysis is inapplicable to the military context.

As other Courts have noted, *Goldman* has been superseded by statute insofar as RFRA applies to the military. The question for Plaintiff's Free Exercise claim is not whether his RFRA claim succeeds, however, but rather whether Plaintiff's Free Exercise claim is likely to succeed under controlling Supreme Court precedent. Even the most negative treatment of *Goldman* in cases confronting the mandates at issue here have not suggested that *Goldman* is not good law as to a *Free Exercise* claim. *See U.S. Navy Seals 1-26*, 27 F.4th at 348 n.14 ("The Navy's willingness to grant hundreds of medical exemptions undermines its reliance on decisions like *Goldman . . . .*"). Evaluating Plaintiff's Free Exercise claim under *Goldman*, the question is whether Defendants have articulated a reasoned basis for the immunological and medical requirement at issue. Per the Court's RFRA discussion, Plaintiff has not shown so far a strong likelihood that the Government's immunological basis for COVID vaccination is not on reasoned ground.

### iii. Equal Protection

The Equal Protection Clause, like the Fifth Amendment's implied guarantee of equal protection under the law, "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985); *see also Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) ("This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fifth Amendment.").[8] While the "general rule is that legislation is presumed to

---

[8] Although the Fifth Amendment's guarantee of equal protection is longstanding, at least one Justice of the Supreme Court has concluded that there is no such guarantee therein. *See United States v. Vaello Madero*, 596 U.S. ___ (2022) (Thomas, J., concurring).

28

be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest," that "general rule gives way, however, when a statute" distinguishes among certain suspect classifications or burdens the exercise of a fundamental Constitutional right. *Cleburne*, 473 U.S. at 440. When a law or governmental action falls into the latter category, such "laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *Id.*

In the context of alleged religious discrimination, a plaintiff can make out an Equal Protection claim either by showing that a law violates the Free Exercise Clause and treats him less favorably than other similarly situated individuals or that the law involves a religious classification,[9] i.e. singles out religion for unequal treatment.[10] An individual is similarly-situated to others "if they are alike in 'all relevant respects'—not all respects." *Ashaheed v. Currington*, 7 F.4th 1236, 1251 (10th Cir. 2021) (citations omitted); *accord Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) ("In determining whether individuals are 'similarly situated,' a court should not demand exact correlation, but should instead seek relevant similarity.") (internal quotation marks omitted); *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners.").

---

[9] Religion is a suspect classification. *See United States v. Batchelder,* 442 U.S. 114, 125 n. 9 (1979) ("The Equal Protection Clause prohibits selective enforcement based on an unjustifiable standard such as race, religion, or other arbitrary classification." (quotation omitted)); *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976) (per curiam) (listing religion as an example of an "inherently suspect distinction [ ]").

[10] In the latter case of a law involving a suspect classification based on religion, such a law always or nearly always necessarily fails to be neutral and generally applicable, thereby running afoul of the Free Exercise Clause of the First Amendment unless the government can satisfy the exacting strict scrutiny test. Accordingly, because either route to establishing an Equal Protection Claim based on religious discrimination requires a demonstration of a Free Exercise violation, it follows that failure to prove such a violation necessarily forecloses an Equal Protection Claim.

29

Plaintiff's Equal Protection claim is essentially a rephrasing of his Free Exercise and RFRA claims.  The deficiencies in Plaintiff's RFRA claim, discussed above in subsection b(i), leave the Court concerned that Plaintiff has not satisfied his burden to show likelihood of success on his Equal Protection Claim either. *See Prince v. Massachusetts*, 321 U.S. 158, (1944) ("In so ruling we dispose also of appellant's argument founded upon denial of equal protection. It falls with that based on denial of religious freedom, since in this instance the one is but another phrasing of the other."); *see also Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014) ("[Appellant] asserts an equal-protection claim premised on the violation of his fundamental right to the free exercise of religion. In the district court and on appeal, however, he has not distinguished this claim from his free-exercise claim, never devoting more than a page to the claim in any pleading.").

Moreover, serious questions remain as to whether the Navy's vaccine requirements treat Plaintiff worse than those similarly situated to him.  Servicemembers granted a medical or administrative exemption are not similar in "all relevant respects" to those seeking religious exemptions.  Although it is true that all three groups—religious, medical, and administrative exemption requesters—share the common fact that they all either requested or are eligible for an exemption, that commonality alone does not prove that they are similarly situated.  Unlike Plaintiff, those with medical exemptions have certain medical conditions such that receiving the COVID-19 vaccine would cause them physical harm not worth the benefits the vaccine provides, thereby creating deleterious effects on the integrity and combat effectiveness of the military and undermining the very rationale for the mandate in the first place. Similarly, those with administrative exemptions are readily distinguishable from religious objectors considering that administrative exemptions are granted to servicemembers who are dead, imprisoned, prisoners of

30

war, exiting military service, or somehow in a position where vaccination is, in all practical respects, impossible. As such, Plaintiff does not appear to have carried his burden on his Equal Protection claim.

### c. *Irreparable Harm*

The Court next considers whether Plaintiff has demonstrated "irreparable harm." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). To constitute "irreparable harm," the injury alleged must be both "certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up). A mere "possibility of irreparable harm" is not enough; a plaintiff must demonstrate that the alleged injury is "*likely* in the absence of a injunction." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (cleaned up).

The Court is concerned that Plaintiff has not carried his burden to show that the injuries he fears are either not irreparable or not likely to occur absent preliminary relief. Take Plaintiff's most concerning worry—the prospect of court martial. *See* Repl. at 18. It appears from the present record that court martial is insufficiently likely to qualify as irreparable harm for the purposes of the proposed preliminary injunction. The first Navy order mandating vaccination against COVID-19, NAVADMIN 190/21, "withheld" authority for initiating "courts-martial" "until further notice." ECF 22-5 at 2. The second, NAVADMIN 225/21, empowers only the Deputy Chief of Naval Operations in his discretion to commence a court-martial for refusing COVID-19 vaccination. Plaintiff is correct that the ultimate denial of Plaintiff's request warns that continued refusal "is punishable under the Uniform Code of Military Justice," i.e., subject to

court martial, but there is no other indication in the record that the Deputy Chief of Naval

Operations will elect sometime in the future to commence a court martial against Plaintiff.

Plaintiff's other concerns are likely more reparable than separation or court martial.  For

example, Plaintiff fears "loss of pay and benefits."  As this Court held in *Church*, loss of pay and

benefits is not, as a matter of law, irreparable harm.  2021 WL 5179215 at *15 (citing *Sampson

v. Murray*, 415 U.S. 61, 92 n.68 (1974) (loss of employment is not irreparable harm except in a

"genuinely extraordinary situation")); *accord Short*, 2022 WL 1051852, at *9.  Plaintiffs other

alleged harms are purely reputational:  "an adverse fitness report, initiation of adverse separation

proceedings, [and] removal from the Navy SEALs."  All three are definitionally reparable.  An

adverse fitness report may be purged from Plaintiff's files, adverse separation proceedings may

be dissolved, and Plaintiff may be reassigned to the Navy SEALs.  *Short*, 2022 WL 1051852, at

*9 (citing *Hartikka v. United States*, 754 1516, 1518 (9th Cir. 1985) ("loss of income, loss of

retirement and relocation pay, and damage to [the plaintiff's] reputation resulting from the

stigma attaching to less than honorable discharge" are not irreparable injuries)).[11]  Indeed,

*re*assignment is definitionally reparable.  *See Church*, 2021 WL 5179215, at *15; *Fraternal

Order of Pol. Library of Congress Labor Cmte. v. Library of Congress*, 639 F. Supp. 2d 20, 24

(D.D.C. 2009).

---

[11]  For the proposition that reputational harm is irreparable injury as a matter of law, Plaintiff
cites this Court's holding in *Doe v. Trump*, 275 F. Supp. 3d 167 (D.D.C. 2017) *rev'd on
irrelevant grounds sub nom. Doe v. Shanahan*, 755 F. App'x 19 (D.C. Cir. 2019).  In that case,
the Court concluded that two transgender servicemembers were likely to succeed on the merits of
their claim that their discharge from the military because of their gender identity violated the
Fifth Amendment's guarantee of equal protection under the law.  *Id.* at 215.  The Court
concluded that the reputational harm concomitant with *discharge* qualified as irreparable harm
because, in part, discharge was based on "'a criterion which has no ability on [their] ability to do
[their] job[s].'"  *Id.* at 216 (quoting *Elzie v. Aspin*, 841 F. Supp. 439, 443 (D.D.C. 1993)).  Here,
on the other hand, Plaintiff faces no risk of discharge (on this record, at least), and Defendants
seek to discharge Plaintiff on the grounds that he is medically unfit to do his job.

That leaves the Court with Plaintiff's final alleged harm:  momentary deprivation of a constitutional right.  "It has long been established that the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitute irreparable injury.'"  *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Accordingly, to demonstrate that particular irreparable harm, Plaintiff must "show a likelihood of success on the merits."  *See Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018).  A likelihood of success on Plaintiff's RFRA claim will not do, however, as RFRA provides only a statutory right.  *See id.* (holding "the deprivation of *constitutional* rights constitutes irreparably injury only to the extent *such* deprivation is shown to be likely" (emphasis added)).  As the Court explained in subsection B(b)(ii) above, the present record suggests why Plaintiff might not have shown that it is likely the Free Exercise Clause provides Plaintiff a right to forgo COVID-19 vaccination.  Even assuming so *arguendo*, Plaintiff must nevertheless demonstrate that any adverse action for his refusal strips him of such a right.

It is not at all clear that is so.  Consider, for example, the Supreme Court's recent decision in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021).  There, the Supreme Court held that closure of places of worship, when treated differently from secular businesses, is necessarily irreparable injury because individuals cannot worship.  *See id.* at 1297.  That holding echoed at least five Justices' conclusion in *S. Bay* that the state of "California's prohibition on singing and chanting during indoor services" to stem the spread of COVID-19 constitutes irreparable harm to the extent it treats church services differently from a "Hollywood studio."  141 S. Ct. 716, 717 (Barrett, J., concurring).  In both these cases, government action actually prevented an individual's religious exercise.  Here, however, no government actor is preventing Plaintiff from exercising his alleged religious conviction against COVID-19 vaccination.  Plaintiff remains free

to depart the military, and if Plaintiff attends religious services, he remains free to do so.

The Ninth Circuit reached a very similar result in *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173 (2021).  In that case, a student challenged a public school's vaccination requirement on religious grounds.  *Id.* at 1180.  Contrasting that challenge with *Tandon*, the court explained that "in those [church closure] cases, the plaintiffs were literally prevented from exercising their religion in group settings.  Here, in contrast, [the plaintiff] may exercise her religion by declining to receive the vaccination."  *Id.* at 1181 (citation omitted).  The Court went on to explain that the record did not establish that the "burden" on her religious exercise would be irreparable.  *Id.*  For similar reasons, the record does not appear to establish that the alleged burden here would be irreparable.  *See also Short*, 2022 WL 1051852, at *8 ("Because Major Short may continue to 'exercise his religion by declining to receive the vaccination,' [applying *Doe*], he has not suffered an irreparable injury under Ninth Circuit law." (citation omitted)).

> ### d.  Public Interest

"The final two factors the Court must consider when deciding whether to grant a preliminary injunction are the balance of harms and the public interest."  *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013).  Where, as here, the government is a party to the litigation, these two factors merge and are "one and the same, because the government's interest is the public's interest."  *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).  "Although allowing challenged conduct to persist certainly may be harmful to a plaintiff and the public, harm can also flow from enjoining an activity, and the public may benefit most from permitting it to continue."  *Sierra Club*, 990 F. Supp. 2d at 41. Therefore, when "balanc[ing] the competing claims of injury," the Court must "consider the effect on each party of the granting or withholding of the requested relief."  *Winter v. Nat'l Res.*

*Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  On the present record, and like in *Church*, the public's interest in military readiness and the military's interest in Plaintiff's health outweigh Plaintiff's religious liberty interest.

That is not to say Plaintiff's religious liberty interest is not weighty.  Free exercise is always weighty.  "For centuries now, people have come to this country from every corner of the world to share in the blessing of religious freedom.  Our Constitution promises that they may worship in their own way, without fear of penalty or danger, and that in itself is a momentous offering."  *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 615 (2014) (Kagan, J., dissenting).  Religious liberty is woven into the constitutional fabric of our country.  It forms the bedrock for the principles of toleration and mutual respect that are at the heart of American liberalism.  Nevertheless, consistent with history, text, and tradition, religious liberty begins to fade at the edge of Naval waters where a citizen has answered this country's most august call of duty.  When an American exchanges suit and tie for fatigues, it is not just the ultimate sacrifice he faces.  He willingly gives much else to ensure the freedoms we mere civilians hold too dear to join him.  Happily rare is the case that shows the severity of service.  Yet, on the present record, this case is one.

## IV.    CONCLUSION

An appropriate order accompanies this memorandum opinion.

Dated: April 29, 2022

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
