IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAVY SEAL 1, *et al.*,

    Plaintiffs,

v.

LLOYD AUSTIN,
Secretary of Defense, *et al.*,

    Defendants.

Case No. 1:22-cv-00688 (CKK)

# MEMORANDUM OF POINTS AND AUTHORITIES
# IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

August 23, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

ANDREW E. CARMICHAEL
Senior Trial Counsel
MICHAEL P. CLENDENEN
CASSANDRA M. SNYDER
JOHNNY H. WALKER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-3346
Fax: (202) 616-8470
Email: Andrew.e.carmichael@usdoj.gov

*Counsel for Official-Capacity Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

    A.    The COVID-19 Pandemic ..................................................................................... 2

    B.    The Military's Vaccination Directives .................................................................. 2

    C.    Administrative Procedures for Religious Exemption Claims ................................ 4

    D.    This Lawsuit ........................................................................................................... 6

LEGAL STANDARDS .................................................................................................................. 7

ARGUMENT .................................................................................................................................. 8

I.    PLAINIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES. ........................ 8

II.    PLAINTIFFS' CLAIMS ARE NOT RIPE. ....................................................................... 10

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Am. Farm Bureau v. U.S. Env't Prot. Agency*,
   121 F. Supp. 2d 84 (D.D.C. 2000) ................................................................................... 7

*Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012) ................................................................................. 11, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................... 8

*Ass'n of Flight Attendants-CWA v. Chao*,
   493 F.3d 155 (D.C. Cir. 2007) ......................................................................................... 8

*Atl. States Legal Found. v. EPA*,
   325 F.3d 281 (D.C. Cir. 2003) ....................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................... 8

*Bois v. Marsh*,
   801 F.2d 462 (D.C. Cir. 1986) ..................................................................................... 1, 9

*Bowen v. City of N.Y.*,
   476 U.S. 467 (1986) .......................................................................................................... 9

*Cargill v. Marsh*,
   902 F.2d 1006 (D.C. Cir. 1990) ....................................................................................... 9

*Cent. Hudson Gas & Elec. Corp. v. EPA*,
   587 F.2d 549 (2d Cir. 1978) .......................................................................................... 13

*Church v. Biden*,
   573 F. Supp. 3d 118 (D.D.C. 2021) ..................................................................... 9, 10, 11

*Diraffael v. Ca. Mil. Dep't*,
   No. 10-cv-7240, 2011 WL 13274364 (C.D. Cal. Mar. 21, 2011) ................................ 12

*Dowds v. Bush*,
   792 F. Supp. 1289 (D.D.C. 1992) ................................................................................. 10

*Gilligan v. Morgan*,
   413 U.S. 1 (1973) .............................................................................................................. 9

*Heidman v. United States*,
   414 F. Supp. 47 (N.D. Ohio 1976) .................................................................................. 9

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*,
  402 F.3d 1249 (D.C. Cir. 2005) ........................................................................................... 7

*Mark Short v. Berger*,
  No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022) ........................................ 10

*Marshall v. Honeywell Tech. Sols., Inc.*,
  536 F. Supp. 2d 59 (D.D.C. 2008) ..................................................................................... 8

*Matthew A. Goldstein, PLLC v. U.S. Dep't of State*,
  153 F. Supp. 3d 319 (D.D.C. 2016) ................................................................................... 7

*Miller v. Austin*,
  No. 22-cv-118 (D. Wyo. Aug. 22, 2022) ......................................................................... 11

*Myers v. Bethlehem Shipbuilding Corp.*,
  303 U.S. 41 (1938) ............................................................................................................. 8

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ......................................................................................................... 13

*Navy SEAL 1 v. Austin*,
  --- F. Supp. 3d ---, 2022 WL 1294486 (D.D.C. Apr. 29, 2022) .................................... 6, 7

*Parisi v. Davidson*,
  405 U.S. 34 (1972) ......................................................................................................... 8, 9

*Parker v. Levy*,
  417 U.S. 733 (1974) ........................................................................................................... 9

*Robb v. Vilsack*,
  No. 2021 WL 3036796 ....................................................................................................... 8

*Roberts v. Roth*,
  --- F. Supp. 3d ---, 2022 WL 834148 (D.D.C. Mar. 21, 2022) ............................... 9, 11, 14

*Roth v. Austin*,
  No. 22-cv-3038 (D. Neb. Aug. 5, 2022) (slip op.) .......................................................... 11

*Schlesinger v. Councilman*,
  420 U.S. 738 (1975) ........................................................................................................... 9

*Smith v. Harvey*,
  541 F. Supp. 2d 8 (D.D.C. 2008) ..................................................................................... 14

*Standage v. Braithwaite*,
  526 F. Supp. 3d 56 (D. Md. 2021) ................................................................................... 12

*Texaco, Inc. v. Dep't of Energy*,
  490 F. Supp. 874 (D. Del. 1980) ...................................................................................... 13

*Thomas v. Union Carbide Agric. Prods. Co.*,
 473 U.S. 568 (1985) ................................................................................................................. 13

*Toilet Goods Association v. Gardner*,
 387 U.S. 158 (1967) ................................................................................................................. 13

*Trump v. New York*,
 141 S. Ct. 530 (2020) ............................................................................................................... 12

*U.S. Navy SEALs 1–26 v. Austin*,
 --- F. Supp. 3d ---, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022) ............................................ 5

*Vance v. Wormuth*,
 No. 3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022) ....................................... 11, 14

*Venetian Casino Resort, LLC v. EEOC*,
 409 F.3d 359 (D.C. Cir. 2005) ................................................................................................... 7

## OTHER AUTHORITIES

Bureau of Medicine Instruction ("BUMEDINST") 6230.15B,
 https://perma.cc/82YE-EA3U ..................................................................................................... 3

DoDI 6025.19,
 https://perma.cc/TR75-JRVD ..................................................................................................... 3

DoDI 6205.02,
 https://perma.cc/8HLA-AXQB ............................................................................................. 3, 4

Sec'y of Def. Mem. (Aug. 9, 2021),
 https://perma.cc/S4R3-2VZW .................................................................................................... 4

Sec'y of Def. Mem. (Aug. 24, 2021),
 https://perma.cc/N759-S758 ....................................................................................................... 4

**INTRODUCTION**

In warfare, disease has historically accounted for more service member deaths than battlefield injuries. Prior to the COVID-19 pandemic, the Department of Defense immunization program, which has been in place for decades, required that all service members obtain nine immunizations, and an additional eight were required depending on circumstances like deployment. In the midst of the deadly COVID-19 pandemic that has killed over one million Americans, and seeking to protect the health and readiness of the military by reducing the risk of hospitalizations and deaths among service members, the Department of Defense added vaccination against COVID-19 to the long list of immunizations already required for service members. The four Plaintiffs in this case challenge this latest vaccination requirement on grounds of religious liberty, invoking the Religious Freedom Restoration Act ("RFRA") and the First and Fifth Amendments.

Plaintiffs' request for judicial review is premature, however, because they have yet to exhaust intraservice remedies and their claims are unripe. The D.C. Circuit has long held that "an aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court," *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986), and here the remedies still available to Plaintiffs include appeals from the denials of their requests for religious exemptions, administrative separation boards (if their appeals are denied), and (if they are ultimately separated) resort to the Board for Correction of Naval Records, to which Plaintiffs may—and should be required to—present their arguments about the Navy's vaccine orders before resorting to this Court.

For all these reasons, Plaintiffs' claims should be dismissed in their entirety.

**BACKGROUND**

A. **The COVID-19 Pandemic**

The virus SARS-CoV-2 causes a respiratory disease known as COVID-19 that can result in severe symptoms and death. Centers for Disease Control and Prevention ("CDC"), *COVID-19*, https://perma.cc/A9D5-AUHV. COVID-19 spreads when an infected person breathes out droplets and very small particles that contain the virus. CDC, *How COVID-19 Spreads* (updated July 14, 2021), https://perma.cc/4ZBC-8WYQ. It has caused a global pandemic and spread rapidly throughout the United States. In July 2021, the country began to experience "a rapid and alarming rise in . . . COVID-19 case[s] and hospitalization rates," driven by the Delta variant. *See* CDC, *Delta Variant: What We Know About the Science* (updated Aug. 26, 2021), https://perma.cc/4RW6-7SGB. More recently, the highly transmissible Omicron variant caused a steep rise in cases and a surge in hospitalizations. This was followed by an additional increase in cases as a result of the Omicron BA.2, BA.4, and BA.5 subvariants. *See* CDC, *Omicron Variant: What You Need to Know* (updated July 29, 2022), https://perma.cc/89AV-5RNE.

To date, more than 93,000,000 Americans have been infected with and over one million Americans have died from COVID-19. *See* CDC, *COVID Data Tracker* (updated August 17, 2022), https://perma.cc/SC6X-RQF6. In the Department of Defense alone, as of April 1, 2022, there were over 394,000 cases of COVID-19 among service members, which have led to 95 deaths. Stanley Decl. ¶ 3, ECF No. 22-9. Of those 95 deaths, only two service members were fully vaccinated and two were partially vaccinated. *Id.*

B. **The Military's Vaccination Directives**

Vaccines have played a long and important role in America's military readiness. Disease can have a detrimental impact on the effectiveness of the armed forces. Military deaths due to infectious diseases outnumbered those due to direct combat injuries until World War II, when

2

vaccines became widespread. Stanley Lemon, et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the U.S. Military* at 3, National Academies Press, 2002, https://perma.cc/E545-TQ9G. Even relatively recently, disease accounted for nearly 70% of U.S. Army hospital admissions during the Persian Gulf War. *Id*. at 10, Fig. 1-1. Military-mandated vaccines mitigate this threat and reduce infectious disease morbidity and mortality among military personnel. *Id.* at 10–11 (highlighting the historical use of vaccines in armed conflict). The U.S. military instituted its first immunization program in 1777 when General George Washington directed the inoculation of the Continental Army for smallpox. *Id.* at 12, Table 1-1. And for the past several decades, the military has implemented a variety of enduring or situational inoculation measures to maintain the readiness of its force. Cong. Rsch. Serv., *Defense Health Primer: Military Vaccinations* (updated Aug. 6, 2021), https://crsreports.congress.gov/product/pdf/IF/IF11816/2.

The Department of Defense's current immunization program is governed by Department of Defense Instruction ("DoDI") 6205.02, https://perma.cc/8HLA-AXQB. Under the program, nine vaccines are required for all service members, including the annual influenza vaccine, while eight others are required when certain elevated risk factors are present, such as deployment to particular parts of the world. *See* Bureau of Medicine Instruction ("BUMEDINST") 6230.15B, Table D-1, https://perma.cc/82YE-EA3U. These vaccinations are part of the Department of Defense's overarching requirement that each service member be medically ready for service and mobilization, called Individual Medical Readiness ("IMR"). *See* DoDI 6025.19, https://perma.cc/TR75-JRVD. The Department of Defense generally aligns its immunization requirements and eligibility determinations for service members with recommendations from the

3

CDC's Advisory Committee on Immunization Practices. DoDI 6205.02 at 3, https://perma.cc/8HLA-AXQB.

On August 9, 2021, the Secretary of Defense, noting the impact of COVID-19 on military readiness and concluding that vaccination "will ensure we remain the most lethal and ready force in the world," announced that he would add the COVID-19 vaccine to the list of other vaccines required for service members by the earlier of mid-September or upon approval by the Food and Drug Administration ("FDA"). *See* Sec'y of Def. Mem. (Aug. 9, 2021), https://perma.cc/S4R3-2VZW. On August 24, 2021, after FDA announced the approval of the Pfizer vaccine, the Secretary directed the Secretaries of the Military Departments to immediately vaccinate all members of the armed forces who were not already fully vaccinated. *See* Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. The Navy issued guidance implementing the Secretary's COVID-19 vaccination directive on August 31, 2021. Ex. 1, Decl. of William Merz ¶ 4.[1]

### C. Administrative Procedures for Religious Exemption Claims

The Navy has a process for service members to request a religious exemption from vaccination. Merz Decl. ¶ 12. An active-duty service member seeking such an exemption must submit a written request through her or his commander and interview with a Navy chaplain who assesses whether the requester's beliefs appear sincere. *Id.* ¶ 12.a. The commander must provide a recommendation with the request that includes (1) any negative impact the requested accommodation will have on military readiness, health, and safety; (2) the number of other service members in the command who have been granted a similar exemption; and (3) if recommending a denial, a determination that the denial furthers a compelling governmental interest and that there

---

[1] The Merz declaration was also submitted in support of Defendants' opposition to Navy SEAL 4's motion for a preliminary injunction and is separately docketed at ECF No. 22-7.

4

is no less restrictive means of furthering that interest. *Id.* ¶ 12.b. Requests are routed through the commander to the Deputy Chief of Naval Operations for Manpower, Personnel, Training and Education, who evaluates them on a case-by-case basis. *Id.* ¶ 12.b–c. Members may appeal an adverse decision to the Chief of Naval Operations. *Id.* ¶ 12.b. While a request for a religious exemption is pending, no disciplinary action will be initiated. *Id.* ¶ 12.b n.8.

Absent an exemption, a Navy service member who refuses to comply with an order to be vaccinated against COVID-19 will be processed for administrative separation. Merz Decl. ¶ 13.a.[2] Separation, however, is not the guaranteed outcome of this process. *Id.* ¶ 15. Members with more than six years of service—like each of the Plaintiffs in this case—may elect an administrative board procedure, where they are entitled to representation by counsel at no expense to themselves. *Id.* ¶ 15.a–c; Ex. 2, Decl. of Mery-Angela Katson ¶ 4. The service member (through counsel) may proffer evidence, call witnesses, and present arguments to the board as to why he or she should not be separated. Merz Decl. ¶ 15.d. The board will consider the evidence and determine whether each basis for the proposed separation is supported by a preponderance of evidence. *Id.* The board then makes a recommendation to separate or retain the service member. *Id.*

The board's recommendation, a record of its proceedings, and any additional statement by the service member are routed to the separation authority. Merz Decl. ¶ 15.g. The package is reviewed by the separation authority and, if the service member identifies specific legal issues, by a judge advocate. *Id.* If separation is approved, the package is then transmitted by formal letter to another separation authority who effectuates the separation. *Id.* ¶ 15.h.

---

[2]   Administrative separations for all Navy service members who have submitted a religious accommodation request are currently suspended pursuant to a class-wide preliminary injunction entered in *U.S. Navy SEALs 1–26 v. Austin*, --- F. Supp. 3d. ---, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022). Merz Decl. ¶ 13.c.

A discharged service member may seek further review through a Discharge Review Board or the Board for Correction of Naval Records. Merz Decl. ¶ 18. The Discharge Review Board may alter the terms of a discharge on grounds of equity or propriety. *Id.* And the Board for Correction of Naval Records has extensive authority, including the authority to void discharges and take action resulting in a service member being reinstated in the Navy. *Id.*

### D.     This Lawsuit

Three of the four Plaintiffs are currently serving on active duty with the United States Navy where they are members of the Navy Sea, Air, and Land Teams ("SEALs"). Am. Compl. ¶¶ 9–10, ECF No. 43. Plaintiffs filed this action on March 11, 2022, alleging that their sincerely held religious beliefs prevent them from receiving any of the available COVID-19 vaccines and that the Navy's requirement that they do so violates their rights under RFRA and the First and Fifth Amendments to the United States Constitution. *Id.* ¶¶ 16, 147–73. They seek an injunction prohibiting the Navy from discharging them or imposing any other adverse consequences on them as a result of their refusal to receive the COVID-19 vaccine. *Id.* at 41.[3]

On March 25, 2022, Navy SEAL 4 moved for a preliminary injunction on all three claims after the Navy initiated separation proceedings for him. ECF. No. 14-1. The Court denied the motion, concluding that "there appears to be a serious question as to whether [the] claims are justiciable" and, separately, that "the record as it currently stands does not properly resolve whether mandatory vaccination is the least restrictive means as to Plaintiff to accomplish the Government's interest in force readiness and national security more broadly." *Navy SEAL 1 v. Austin*, --- F. Supp. 3d ---, 2022 WL 1294486, at *5 (D.D.C. Apr. 29, 2022). The Court also concluded that Navy

---

[3] Plaintiffs also seek money damages against Admiral Michael Gilday, the Chief of Naval Operations, in his individual capacity. Am. Compl. at 41. Undersigned counsel represent Admiral Gilday in his official capacity only; he is separately represented in his individual capacity.

SEAL 4 did not face irreparable harm and that "the public's interest in military readiness and the military's interest in Plaintiff's health outweigh Plaintiff's religious liberty interest." *Id.* at *4, 15–17.

On June 13, 2022, the official-capacity defendants and Admiral Gilday in his personal capacity separately moved to dismiss Plaintiffs' complaint. ECF Nos. 41, 42. On June 24, 2022, Plaintiffs filed an amended complaint. ECF No. 43. The Court therefore denied the pending motions to dismiss without prejudice as moot and ordered Defendants to answer or otherwise respond to the amended complaint on or before August 23, 2022. Min. Order (June 24, 2022). Because the amended complaint suffers the same flaws as the initial complaint as to the official-capacity claims, the official-capacity defendants renew their motion to dismiss on the same grounds as before.

## **LEGAL STANDARDS**

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction. "[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). It is a plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. U.S. Env't Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "[M]otions to dismiss on the grounds of ripeness . . . have consistently been brought under Rule 12(b)(1), because those justiciability concerns typically implicate the court's subject-matter jurisdiction." *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F. Supp. 3d 319, 330 (D.D.C. 2016) (citing *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 363, 366 (D.C. Cir. 2005)).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]articularly within the context of exhaustion, 'courts consider document attached to motions to dismiss and opposition papers without converting the motion into one for summary judgment when the documents were referenced in the Complaint and were central to the plaintiff's claim.'" *Robb v. Vilsack*, No. 2021 WL 3036796, at n.4 (D.D.C. 2021); *see also Marshall v. Honeywell Tech. Sols., Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008) (considering documentary exhibits and affidavits filed with motion to dismiss in context of exhaustion challenge without converting motion to one for summary judgment).

## ARGUMENT

Even assuming Plaintiffs have suffered a concrete harm at this stage, they have not yet exhausted their opportunities for administrative redress of that harm, as they must before proceeding to federal court. And, in any event, plaintiffs have not yet suffered concrete harm. As other courts have recognized, the harm of military discipline becomes concrete and judicially cognizable only after all available military proceedings have concluded.

### I.   PLAINIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiffs' claims should be dismissed because they have failed to exhaust administrative remedies. "[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 158 (D.C. Cir. 2007) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*,

8

405 U.S. 34, 37 (1972); *Bowen v. City of N.Y.*, 476 U.S. 467, 484 (1986). This is especially true in the military context "given the judiciary's lack of expertise in areas of military judgment and its long-standing policy of non-intervention in internal military affairs." *Heidman v. United States*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (citing *Schlesinger v. Councilman*, 420 U.S. 738 (1975); *Parker v. Levy*, 417 U.S. 733 (1974); *Gilligan v. Morgan*, 413 U.S. 1 (1973)). Indeed, the D.C. Circuit has long recognized "that a court should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures." *Bois*, 801 F.2d at 468 (further cautioning that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers"); *see also Cargill v. Marsh*, 902 F.2d 1006, 1007-08 (D.C. Cir. 1990) (affirming dismissal of service member's claim for failure to exhaust remedies); *Church v. Biden*, 573 F. Supp. 3d 118, 136–38 (D.D.C. 2021) (requiring service members to exhaust their remedies before pursuing their RFRA and First Amendment claims); *Roberts v. Roth*, --- F. Supp. 3d ---, 2022 WL 834148, at *4–5 (D.D.C. Mar. 21, 2022) (dismissing service member's RFRA claim where his discharge proceeding was still pending).

Plaintiffs have not met the Circuit's "salutary rule that an aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court." *Bois*, 801 F.2d at 468 (citation omitted). Navy SEALs 1 and 2 have received only an initial denial of their requests for religious exemption; their appeals of that decision remain pending. Katson Decl. ¶ 2(a), (b).[4] And even if those appeals are denied and separation proceedings are initiated, those

---

[4] Defendants also note that Navy SEAL 3 retired from active duty on July 1, 2022. Katson Decl. ¶ 2(c). Thus, Navy SEAL 3's claims are moot. *Bois*, 801 F.2d at 466 (concluding that because the plaintiff "voluntarily resigned from the Army and . . . asserted no intention of returning to active duty," she was effectively seeking "reform of military procedures to which she [was] no longer subject," rendering her claim moot).

SEALs will have further administrative avenues open to them, including electing to proceed before an administrative discharge board, which has the power to retain them and, if they are ultimately discharged, to file a case with the Board for Correction of Naval Records, which has the ability to void any discharge. Merz. Decl. ¶¶ 15, 18. As for Navy SEAL 4, though his appeal was denied on February 10, 2022, there remain significant additional administrative proceedings through which he can dispute his proposed discharge. Katson Decl. ¶ 2(d); ECF No. 22-14 ¶¶ 16–17 (under seal); *see Dowds v. Bush*, 792 F. Supp. 1289, 1293 (D.D.C. 1992) (pursuing "relief through the chain of military command does not constitute exhaustion of administrative remedies"). And again, if a discharge is the result of those proceedings, Navy SEAL 4 will have an opportunity for redress from the Board for Correction of Naval Records. Merz Dec. ¶ 18.

As this Court explained in similar circumstances, "adjudicat[ing] internal military affairs before the military chain of command has had full opportunity to consider the accommodation requests at issue" would "undermine the purpose of exhaustion and infringe on the military's expertise and interest in handling its own personnel matters." *Church*, 573 F. Supp. 3d at 137 (denying preliminary injunction where, like Plaintiffs here, the service members whose appeals had been denied would still have "multiple opportunities to present their arguments to the Service and for the Service to respond") (citation omitted); *Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852, at * 4 (C.D. Cal. Mar. 3, 2022) (service member who challenged the denial of his religious exemption request had "not exhausted administrative remedies" despite receiving a decision on his appeal because "he still must undergo separation proceedings before any permanent adverse consequences are imposed"). So too here. Plaintiffs' claims should therefore be dismissed.

## II.   PLAINTIFFS' CLAIMS ARE NOT RIPE.

Plaintiffs' failure to pursue administrative remedies also renders their claims unripe. The ripeness doctrine "generally deals with when a federal court can or should decide a case." *Am.*

10

*Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012). Ripeness has both a constitutional and a prudential component. *Id.* at 386–87. Plaintiff fails to satisfy either.

Plaintiffs cannot show constitutional ripeness because their claims are "riddled with contingencies and speculation that impede judicial review." *Church*, 573 F. Supp. 3d at 134; *Roberts*, 2022 WL 834148, at *5 ("Taking up plaintiff's claims now would defeat the purpose of the ripeness doctrine: to 'protect the agencies from judicial interference until an administrative decision has been formalized.'" (citation omitted)). Navy SEALs 1 and 2 have yet to receive any decision on their appeal of the initial denial of their request for a religious exemption. Katson Decl. ¶ 2(a), (b). And while Navy SEAL 4 has received a final denial on appeal, there are additional processes available to him to dispute his discharge. *Id.* ¶ 2(d); ECF No. 22-14 ¶¶ 16–17 (under seal). thus, Plaintiffs have not "been disciplined or separated from the [Navy]." *Church*, 573 F. Supp. 3d at 137. For this reason, Plaintiffs have not experienced the effects of a military discharge, which is speculative in any event given the ongoing proceedings. As Judge Amy Berman Jackson has explained in a similar case brought by a member of the Department of the Air Force, the fact that the plaintiff "has not been discharged at this point . . . means that plaintiff's alleged injury is theoretical, rather than certain and pending." *Roberts*, 2022 WL 834148, at *4 (dismissing case when discharge proceedings had been initiated, because they had not concluded); *see also, e.g.*, *Miller v. Austin*, No. 22-cv-118 (D. Wyo. Aug. 22, 2022) (slip op.) ("[T]his Court declines to make any decision regarding military affairs until the separation decision is final and can no longer be adjudicated within the military chain of command."); *Roth v. Austin*, No. 22-cv-3038 (D. Neb. Aug. 5, 2022) (slip op.) ("Plaintiffs still have opportunities to challenge the constitutionality and the legality under RFRA of application of the COVID-19 vaccination mandate to each of them in administrative proceedings"); *Vance*, 2022 WL 1094665, at *7 (dismissing service member's

11

challenge to denial of religious accommodation request as unripe in part because "[n]o separation proceedings have been implemented"); *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 94 (D. Md. 2021) (concluding case was unripe when a service member's potential discharge "is pending review"); *Diraffael v. Ca. Mil. Dep't*, 10-cv-7240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011) (holding that "the commencement of discharge proceedings is not sufficient injury when "those discharge proceedings are still underway and to date no final determination has been reached").

In an attempt to show immediate harm, Plaintiffs contend that their refusal to comply with the COVID-19 vaccination makes them "subject to criminal penalties," resulting in "stigma and reputational injury." Am. Compl. ¶¶ 79–81. But Plaintiffs do not allege that any criminal proceedings have actually been initiated or will be initiated. Indeed, the authority to initial courts-martial proceedings for failure to become vaccinated is withheld from commanders and placed in the Chief of Naval Personnel. Merz Decl. ¶ 4. Any reputational harm from criminal prosecution is therefore "dependent on contingent future events that . . . may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020). Plaintiffs also complain that the Navy is "currently restricting unvaccinated personnel travel." Am. Compl. ¶ 82. But that is connected to Plaintiffs' status as unvaccinated and would persist whether or not this Court ordered the Navy to grant them a religious accommodation. Indeed, even a service member with an approved exemption to the COVID-19 vaccination requirement is still subject to restrictions stemming from their unvaccinated status, including restrictions on deployment eligibility, foreign country entry restrictions, testing and quarantine requirements, and limitations on non-mission-essential travel. Littlejohn Decl. ¶ 4, ECF No. 22-8. Finally, to the extent that Plaintiffs claim reputational or other damage from simply undergoing the administrative review process, "[i]t is well-established that

the mere trouble and expense of defending an administrative proceeding is insufficient to warrant judicial review of the agency's action prior to the conclusion of the administrative proceeding." *Cent. Hudson Gas & Elec. Corp. v. EPA*, 587 F.2d 549, 559 (2d Cir. 1978); *see also Texaco, Inc. v. Dep't of Energy*, 490 F. Supp. 874, 889 (D. Del. 1980) ("If the costs associated with the defense of an administrative enforcement action and the injury to reputation caused by the pendency of such an action justified immediate judicial review under the ripeness doctrine, judicial pre-emption of the administrative process would be the rule rather than the exception.").

Nor can Plaintiffs establish prudential ripeness. The prudential ripeness doctrine "prevent[s] the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580 (1985). In assessing prudential ripeness, courts consider the "fitness of the issues for judicial decision" and the "extent to which withholding a decision will cause hardship to the parties." *Am. Petroleum*, 683 F.3d at 387 (internal quotation marks omitted). Plaintiffs' claims are not fit for judicial resolution because "further factual development would 'significantly advance [the Court's] ability to deal with the legal issues presented.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003); *see also Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) ("[E]ven purely legal issues may be unfit for review."). As noted, the Navy has not yet decided the religious exemption appeals of Navy SEALs 1 and 2, Katson Decl. ¶ 2(a), (b), and has yet to appoint, much less conclude, an administrative board for Navy SEAL 4, *id.* ¶ 2(d); ECF No. 22-14 ¶¶ 16–17 (under seal).

The Navy's separation proceedings are comparable to the permissive regulations at issue in *Toilet Goods Association v. Gardner*, 387 U.S. 158 (1967). There, the Supreme Court held a challenged regulation unripe for review when the regulation was permissive rather than

13

mandatory—*i.e.*, it did not compel the agency to act but only authorized the agency to exercise a discretionary power to act. Similarly, the regulations here provide that "Navy service members refusing the COVID-19 vaccine, absent a pending or approved exemption, are required to be processed for administrative discharge, but that does not automatically mean that the service member will ultimately be separated." Merz Decl. ¶¶ 13, 15. The Department's "initiation of separation proceedings is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceedings." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008); *see also Roberts*, 2022 WL 834148, at *5 (applying prudential ripeness doctrine, in addition to constitutional ripeness, to dismiss similar claims); *Vance*, 2022 WL 1094665, at *3, 7 (same). Navy SEAL 4 and any other Plaintiff whose appeal is denied will have the opportunity to respond and present evidence before an administrative discharge board. Merz Decl. ¶ 15. Thus, the exhaustion of any administrative discharge process will at least serve to complete the record of any discharge decision that might follow.

\*   \*   \*

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' amended complaint.

Dated:  August 23, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

  /s/ Johnny Walker
ANDREW E. CARMICHAEL, VA Bar. #76578
Senior Trial Counsel
MICHAEL P. CLENDENEN, DC Bar #1660091
CASSANDRA M. SNYDER, DC Bar #1671667
JOHNNY H. WALKER, DC Bar # 991325
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-3183
Fax: (202) 616-8470
Email: johnny.h.walker@usdoj.gov

*Counsel for Official-Capacity Defendants*