IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NAVY SEAL 1, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LLOYD AUSTIN, in his official | ) | Case No. 1:22-cv-00688 |
| capacity as Secretary of the United | ) | |
| States Department of Defense, *et al.*, | ) | Hon. Colleen Kollar-Kotelly |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF ADMIRAL GILDAY'S MOTION TO DISMISS PLAINTIFFS' INDIVIDUAL CAPACITY CLAIMS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................. 1

I.    The Department of Defense and Navy COVID-19 Vaccination Policies ...................... 1

II.   Plaintiffs' Religious Objections to Vaccination and Requests for Exemptions ............ 3

III.  Plaintiffs' Individual Capacity RFRA Claim Against Admiral Gilday ........................ 5

ARGUMENT ................................................................................................................. 5

I.    Plaintiffs' Claim Is Not Ripe. ...................................................................................... 5

II.   Plaintiffs have Failed to Exhaust Their Administrative Remedies. ............................... 6

III.  Plaintiffs' Allegations Do Not Support the Availability of Damages as "Appropriate
Relief" Under RFRA Against a High-Ranking Military Officer. .......................................... 7

       1.   Courts have long barred service members from asserting damages claims, including
       individual capacity statutory and constitutional claims, arising from harm incident to
       service. .................................................................................................................... 8

       2.   Plaintiffs' individual capacity RFRA damages claim challenges high-level military
       decision making that is not suitable for judicial scrutiny. ............................................. 11

       3.   Alternative avenues of judicial review and the military's internal justice system provide
       means other than an individual capacity damages suit for Plaintiffs to protect their asserted
       interests, including seeking backpay from the government. ............................................ 12

IV.   Admiral Gilday is Entitled to Qualified Immunity. .................................................. 13

       1.   The qualified immunity framework. ...................................................................... 13

       2.   Plaintiffs do not allege that Admiral Gilday was personally involved in violating the
       rights of Navy SEALs 1-3. ........................................................................................ 15

       3.   Plaintiffs fail to plausibly allege the violation of a clearly established right under
       RFRA. ................................................................................................................... 16

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)...........................................................................14, 15, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................... 15

*Aikens v. Ingram*,
  811 F.3d 643 (4th Cir. 2016)......................................................................9

*Air Force Officer v. Austin*,
  --- F. Supp. 3d ----, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ................. 18

*\*Ajaj v. Fed. Bureau of Prisons*,
  25 F.4th 805 (10th Cir. 2022) ............................................................. 10, 14

*Anderson v. Creighton*,
  483 U.S. 635 (1987)............................................................................... 14

*\*Austin v. U. S. Navy Seals 1-26*,
  142 S. Ct. 1301 (2022)....................................................................... 18, 21

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971)..................................................................................1

*\*Bois v. Marsh*,
  801 F.2d 462 (D.C. Cir. 1986)............................................................ passim

*Bowen v. Oistead*,
  125 F.3d 800 (9th Cir. 1997)................................................................... 10

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
  149 F.3d 971 (9th Cir. 1998)................................................................... 19

*Brosseau v. Haugen*,
  543 U.S. 194 (2004)............................................................................... 19

*Brown v. BOP*,
  No. 3:14-cv-681 (RNC), 2017 WL 1234104 (D. Conn. Mar. 31, 2017)............... 17

*Bundy v. Sessions*,
  812 F. App'x 1 (D.C. Cir. 2020)................................................................ 15

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014)............................................................................... 19

*Cavin v. Michigan Dep't of Corr.*,
  927 F.3d 455 (6th Cir. 2019).................................................................... 19

*Chandler v. Roche*,
  215 F. Supp. 2d 166 (D.D.C. 2002) ............................................................9

*Chappell v. Wallace*,
  462 U.S. 296 (1983)......................................................................9, 10, 13

*\*Church v. Biden*,
  573 F.Supp.3d 118 (D.D.C. Nov. 8, 2021) ................................................ 6, 18

*Cioca v. Rumsfeld*,
  720 F.3d 505 (4th Cir.2013).................................................................... 11

*Coffman v. State of Mich.*,

120 F.3d 57 (6th Cir. 1997) ..................................................................................... 10

*Cone v. Caldera*,
223 F.3d 789 (D.C. Cir. 2000) ................................................................................. 21

*Cooper v. True*,
No. 16-cv-02900-MJD-KMM, 2017 WL 6375609 (D. Minn. Nov. 2, 2017) ......................... 17

*Crawford v. Texas Army Nat. Guard*,
794 F.2d 1034 (5th Cir. 1986) ................................................................................. 10

*Creaghan v. Austin*,
No. CV 22-0981, 2022 WL 1500544 (D.D.C. May 12, 2022) ......................................... 18

*Cummings v. Dep't of the Navy*,
279 F.3d 1051 (D.C. Cir. 2002) ................................................................................. 9

*D.C. v. Wesby*,
138 S. Ct. 577 (2018) ...................................................................................... 16, 19

*Daugherty v. Sheer*,
891 F.3d 386 (D.C. Cir. 2018) .......................................................................... 16, 22

*Davila v. Gladden*,
777 F.3d 1198 (11th Cir. 2015) ................................................................................ 14

*Doe v. Rumsfeld*,
341 F. Supp. 2d 1 (D.D.C. 2004) .............................................................................. 17

*Does 1-6 v. Mills*,
16 F.4th 20 (1st Cir. 2021) ............................................................................... 20, 21

*Doster v. Kendall*,
---F. Supp. 3d ----, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ................................... 18

*Dreiver v. United States*,
No. 19-1807(TJK), 2021 WL 1946391 (D.D.C. May 14, 2021) ....................................... 17

*Dunn v. Austin, et al.*,
142 S. Ct. 1707 (April 18, 2022) .............................................................................. 18

*Emory v. Sec'y of Navy*,
819 F.2d 291 (D.C. Cir. 1987) ................................................................................. 12

*Fazaga v. FBI*,
965 F.3d 1015 (9th Cir. 2020) .......................................................................... 14, 17

*Feres v. United States*,
340 U.S. 135 (1950) ............................................................................................... 8

*Fernandez-Torres v. Watts*,
No. 2:16-cv-24, 2017 WL 9485591 (S.D. Ga. Jan. 30, 2017) ........................................ 17

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*,
873 F. Supp. 2d 363 (D.D.C. 2012) ........................................................................... 6

*Goldman v. Weinberger*,
475 U.S. 503 (1986) ...................................................................................... 11, 21

*Gregorich v. Lund*,
54 F.3d 410 (7th Cir. 1995) ..................................................................................... 19

*Guettlein v. U.S. Merchant Marine Academy*,
2021 WL 6015192 (E.D.N.Y. Dec. 20, 2021) ............................................................. 18

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ............................................................................................. 14

*Hedgpeth v. Rahim*,

893 F.3d 802 (D.C. Cir. 2018)........................................................................16
*Hope v. Pelzer*,
    536 U.S. 730 (2002)................................................................................20
*Jacobson v. Commonwealth of Massachusetts*,
    197 U.S. 11 (1905)..................................................................................20
*Johnson v. D.C.*,
    528 F.3d 969 (D.C. Cir. 2008).................................................................20
*Jones v. New York State Div. of Mil. & Naval Affs.*,
    166 F.3d 45 (2d Cir. 1999)........................................................................9
*Jorden v. Nat'l Guard Bureau*,
    799 F.2d 99 (3d Cir. 1986).......................................................................10
*Kalka v. Hawk*,
    215 F.3d 90 (D.C. Cir. 2000)....................................................................19
*Klaassen v. Trustees of Indiana Univ.*,
    7 F.4th 592 (7th Cir. 2021).......................................................................20
*Klay v. Panetta*,
    758 F.3d 369 (D.C. Cir. 2014)..................................................................11
*Knick v. Austin*,
    No. 22-1267, 2022 WL 2157066 (D.D.C. June 15, 2022)........................18
*Knutson v. Wisconsin Air Nat. Guard*,
    995 F.2d 765 (7th Cir. 1993).....................................................................10
*Lebron v. Rumsfeld*,
    670 F.3d 540 (4th Cir. 2012)..............................................................14, 17
*Lovell v. Heng*,
    890 F.2d 63 (8th Cir. 1989).......................................................................10
*Martelon v. Temple*,
    747 F.2d 1348 (10th Cir.1984)..................................................................10
*Mazares v. Dep't Of Navy*,
    302 F.3d 1382 (Fed. Cir. 2002)...........................................................11, 17
*McDonough v. Mabus*,
    907 F. Supp. 2d 33 (D.D.C. 2012)............................................................21
*Muhammad v. Sec'y of Army*,
    770 F.2d 1494 (9th Cir. 1985).....................................................................6
*Mullenix v. Luna*,
    577 U.S. 7 (2015)......................................................................................16
*Navy SEALS 1 v. Biden*,
    No. 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022)................19
*Oklahoma v. Biden*,
    No. CIV-21-1136-F, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021).......18
*Palmieri v. United States*,
    896 F.3d 579 (D.C. Cir. 2018)......................................................15, 16, 19
*Patel v. Bureau of Prisons*,
    125 F. Supp. 3d 44 (D.D.C. 2015).............................................................15
*Pearson v. Callahan*,
    555 U.S. 223 (2009)..................................................................................14
*Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*,

43 F. Supp. 3d 28 (D.D.C. 2014)............................................................................... 2

*Phillips v. City of New York,*
775 F.3d 538 (2d Cir. 2015)...................................................................................... 20

*Poffenbarger v. Kendall,*
---- F. Supp. 3d ----, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022)......................... 18

*Potts v. Holt,*
617 F. App'x 148 (3d Cir. 2015) ............................................................................... 14

*Application of President & Directors of Georgetown Coll., Inc.,*
331 F.2d 1000 (D.C. Cir. 1964).................................................................................. 20

*Prince v. Massachusetts,*
321 U.S. 158 (1944).................................................................................................... 20

*Rasul v. Myers.,*
512 F.3d 644 (D.C. Cir. 2008)................................................................................... 14

*Rasul v. Myers,*
563 F.3d 527 (D.C. Cir. 2009)................................................................................... 17

*Reichle v. Howards,*
566 U.S. 658 (2012).................................................................................................... 16

*Robert v. Austin,*
No. 21-CV-02228-RM-STV, 2022 WL 103374 (D. Colo. Jan. 11, 2022)............. 18

*Roberts v. Roth,*
No. 21-cv-1797, 2022 WL 834148 (D.D.C. Mar. 21, 2022).................................... 18

*Sanders v. McCrady,*
537 F.2d 1199 (4th Cir. 1976) .................................................................................... 7

*Saucier v. Katz,*
533 U.S. 194 (2001).................................................................................................... 15

*Short v. Berger,*
No. cv-22-1151-DMG, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022)..................... 18

*Sossamon v. Texas,*
563 U.S. 277 (2011)...................................................................................................... 7

*Speigner v. Alexander,*
248 F.3d 1292 (11th Cir. 2001) ................................................................................. 10

*Tanvir v. Tanzin,*
894 F.3d 449 (2d Cir. 2018)........................................................................................ 7

*Tanzin v. Tanvir,*
141 S. Ct. 486 (2020)........................................................................................... passim

*Taylor v. Reilly,*
685 F.3d 1110 (D.C. Cir. 2012).................................................................................. 15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
551 U.S. 308 (2007)...................................................................................................... 2

*U.S. Navy SEALs 1-26 v. Biden,*
No. 4:21-CV-01236-O, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) ........................ 19

*U.S. Navy SEALs 1-26 v. Austin,*
No. 4:21-CV-01236-O, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022) ............... 4, 5

*United States v. Chadwell,*
36 C.M.R. 741 (NBR 1965) ...................................................................................... 17

*United States v. Shearer,*

473 U.S. 52 (1983).................................................................................................8

*United States v. Shearer*,
  481 U.S. 681 (1987).............................................................................................8

*United States v. Stanley*,
  483 U.S. 669 (1987).............................................................................................9

*United States v. U.S. Gypsum Co.*,
  438 U.S. 422 (1978)...........................................................................................10

*Von Hoffburg v. Alexander*,
  615 F.2d 633 (5th Cir. 1980)...............................................................................7

*\*Wilson v. Layne*,
  526 U.S. 603 (1999).............................................................................................21

*Workman v. Mingo Cty. Bd. of Educ.*,
  419 F. App'x 348 (4th Cir. 2011).................................................................20, 21

*Wright v. Park*,
  5 F.3d 586 (1st Cir. 1993)..................................................................................10

*Youngbey v. Mar.*,
  676 F.3d 1114 (D.C. Cir. 2012)...........................................................................16

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017)...................................................................................16, 22

*Zucht v. King*,
  260 U.S. 174 (1922)...........................................................................................20

**Statutes, Regulations, and Other Authorities**

10 U.S.C. § 938 Art. 138......................................................................................13
10 U.S.C. § 1552(a)...............................................................................................13
28 U.S.C. § 1983......................................................................................................8
28 U.S.C. § 1985(3)..................................................................................................8
32 C.F.R. § 723.2(b)..............................................................................................13
42 U.S.C. § 2000bb–1............................................................................................17
DoD, *Coronavirus: DOD Response* (Aug. 5, 2022).................................................2
HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020)..........1, 2
S. REP. 103-111....................................................................................................21
United States Navy, BUPERSINST 1730.11A (March 16, 2020)..............................3

## PRELIMINARY STATEMENT

In this lawsuit, Plaintiffs seek to hold the Chief of Naval Operations, Admiral Michael M. Gilday, personally liable for declining to grant a religious exemption from the Department of Defense and Navy's mandatory COVID-19 vaccination policies. But Plaintiffs' novel attempt to obtain damages from a high-ranking military officer for enforcing official government policy is deeply misguided. Plaintiffs' individual-capacity claim under the Religious Freedom Restoration Act (RFRA) warrants dismissal.[1]

Several reasons support this conclusion. First, Plaintiffs' RFRA claim should be dismissed because it is not constitutionally or prudentially ripe. Second, Plaintiffs should not be allowed to proceed with their claim against Admiral Gilday because they have failed to exhaust their administrative remedies. Third, damages are not "appropriate relief" for a RFRA claim of this nature arising in the military context. Finally, Admiral Gilday is entitled to qualified immunity because Plaintiffs fail to allege that he was personally involved in a violation of clearly established statutory law. Admiral Gilday should therefore be dismissed from this case in his individual capacity.

## BACKGROUND

### I.     The Department of Defense and Navy COVID-19 Vaccination Policies

Since the first U.S. case was detected in January 2020, COVID-19 has been a significant cause of illness and death in this country. HHS, *Determination that a Public Health Emergency*

---

[1] In the First Amended Complaint, Plaintiffs state that they are "not advancing any claim for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)." FAC at ¶ 5. Because *Bivens* is the only means of asserting an individual capacity damages claim under the Constitution, Plaintiffs' RFRA claim is now their only individual capacity claim.

1

*Exists* (Jan. 31, 2020), https://perma.cc/VZ5X-CT5R.[2] The Armed Forces have not escaped the effects of this disease. As of August 5, 2022, DoD has recorded 435,744 COVID-19 cases, 2,717 hospitalizations, and 95 deaths among members of the military since the start of the pandemic. DoD, *Coronavirus: DOD Response* (Aug. 5, 2022), https://perma.cc/S5ZD-FS4W. The Navy, in particular, has seen 103,693 cases among its members. *Id.*

In response to this threat, on August 24, 2021, Secretary of Defense Lloyd J. Austin issued a memorandum directing the Secretaries of the Military Departments to begin full vaccination of all active-duty and reserve service members against COVID-19 "to protect the Force and defend the American people." Sec. Def. Memo, ECF No. 22-3, at 1.[3] Secretary Austin noted in the memorandum that "[m]andatory vaccinations are familiar to all of our Service members, and mission-critical inoculation is almost as old as the U.S. military itself." *Id.* Indeed, as this Court has observed, service members in the Navy have long been required to receive influenza, tetanus, diphtheria, and pertussis vaccinations, among others. Mem. Op. on Mot. for Prelim. Inj. ("Prelim. Inj. Op."), ECF No. 30, at 2.

Also on August 24, 2021, Secretary of the Navy Carlos Del Toro issued a directive requiring COVID-19 vaccination in order to prevent the disease from "adversely impact[ing] Department of the Navy (DON) force readiness and mission execution." Sec. Navy Memo, ECF

---

[2] On a motion to dismiss, the Court may take judicial notice of information available on government websites and not subject to dispute regarding the circumstances presented. *See Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (observing that "[c]ourts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies" and citing cases).

[3] The Court also may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Here, that includes the August 2021 memoranda from Secretary Austin and Secretary Del Toro, First Am. Compl. ("FAC")") at ¶¶ 23, 26; BUPERSINST 1730.11A, explaining the procedure for Navy service members to request a religious exemption, *id.* at ¶ 64; and Admiral Gilday's letter to Navy SEAL 4 denying his religious exemption request on appeal, *id.* at ¶ 70.

No. 22-4, at ¶ 2. Accordingly, he ordered all non-exempt active-duty Navy service members to be vaccinated within 90 days and all non-exempt reservists to be vaccinated within 120 days. *Id.* at ¶ 4. Service members may request religious exemptions from Navy policy—including mandatory vaccination—through their commanding officer and may appeal to the Chief of Naval Operations. *See* United States Navy, BUPERSINST 1730.11A (March 16, 2020), https:// perma.cc/RJ44-8V45.

## II.    **Plaintiffs' Religious Objections to Vaccination and Requests for Exemptions**

Plaintiffs, who are active-duty Navy SEALs, allege they object to receiving a COVID-19 vaccine for religious reasons. FAC at ¶¶ 15-16. Navy SEALs 1-3 allege that they oppose vaccination "because of the connections between the various COVID-19 vaccines and the cell lines of aborted fetuses[.]" *Id.* at ¶ 44. Navy SEAL 4 contends that his objection is based on his "personal conviction" that he should not take a COVID-19 vaccine. *Id.* at ¶ 45. All four Plaintiffs cite their belief that "their bodies are temples of the Holy Spirit and that they cannot place anything into their temples without confirmation and conviction from the Holy Spirit." *Id.* at ¶ 46.

After Secretary Del Toro issued his August directive, Plaintiffs requested religious exemptions from the Navy's mandatory vaccination policy. *Id.* at ¶ 64. All four Plaintiffs had their initial requests denied and appealed to the Chief of Naval Operations—Admiral Gilday. *Id.* at ¶¶ 65-70. According to the First Amended Complaint, the appeals of Navy SEALs 1-3 remain pending. *Id.* at ¶¶ 66-69. Admiral Gilday denied Navy SEAL 4's appeal on February 10, 2022. *Id.* at ¶ 70.

In his denial letter, Admiral Gilday explained that granting Navy SEAL 4's request to remain unvaccinated would have "a direct and foreseeable negative impact on the compelling

governmental interest in military readiness and health of the force." Navy SEAL 4 Appeal Denial Ltr., ECF No. 41-2, at ¶ 1.[4]  He went on to explain that, in reaching a decision, he considered Navy SEAL 4's "duties as a special warfare operator" and the recommendation of his Commanding Officer, who "emphasize[d] that each member of the command is vital to mission success" and "must be constantly ready to travel around the globe in support of military operations, conducted in an environment that often requires close quarters contact for prolong[ed] periods of time[.]" *Id.* at ¶ 3. Admiral Gilday also rejected Navy SEAL 4's accusation that the Navy was issuing "blanket disapproval" of religious exemption requests and assured Navy SEAL 4 that the "individual facts and circumstances" of his situation were considered. *Id.* at ¶ 5.

Navy SEAL 4 is now allegedly "being processed for discharge from the U.S. Navy," although he alleges no details about his status within that process. FAC at ¶ 70. In fact, Plaintiffs face no imminent threat of discharge or discipline based on their unvaccinated status. *See U.S. Navy SEALs 1-26 v. Austin*, No. 4:21-CV-01236-O, 2022 WL 1025144, at *14 (N.D. Tex. Mar. 28, 2022).[5]  Nonetheless, the First Amended Complaint broadly alleges that Plaintiffs are currently ineligible for promotion and are being denied benefits, such as regular leave and permanent change of station. *Id.* at ¶ 75. Navy SEAL 4 has also allegedly been issued an adverse fitness report that he claims harmed his reputation. *Id.* at ¶ 78. Finally, Plaintiffs allege generally that the defendants "have and will impose" additional punitive measures, including "removal from special warfare operations, adverse fitness reports, loss of special duty pay and benefits, loss of education and training opportunities, and loss of personal decorations and insignia,

---

[4]  As stated in footnote 3, *supra*, the First Amended Complaint incorporates Admiral Gilday's denial letter by reference. FAC at ¶ 70.

[5]  The government disagrees with and has appealed the *Navy SEALs 1-26* decision.

specifically including the Special Warfare / SEAL Trident insignia." *Id.* at ¶ 74.

### III.   Plaintiffs' Individual Capacity RFRA Claim Against Admiral Gilday

Plaintiffs assert a single individual capacity claim under RFRA (Count I). *Id.* at ¶¶ 147-161. Plaintiffs' claim focuses on their allegation that enforcement of the COVID-19 vaccination policy substantially burdens their religious beliefs by pressuring them to either take a "morally compromised" vaccine or face penalties. *Id.* at ¶¶ 151-54. They also put forth a variety of theories in support of their contention that requiring COVID-19 vaccination in the Navy does not further a compelling government interest through the least restrictive means. *Id.* at ¶¶ 85-146, 156-57. Plaintiffs' Prayer for Relief seeks to compel Admiral Gilday, "in his individual capacity, [to] pay damages to Plaintiffs for the harm caused by his actions as set forth in this First Amended Complaint." *Id.* at p. 41.

## ARGUMENT

### I.   Plaintiffs' Claim Is Not Ripe.

For the same reasons that the official capacity claims in this case are not ripe for adjudication, *see* Offic. Cap. Defendants' Mot. to Dismiss ("O.C. Defendants' MTD"), ECF No. 44, at 10-14, Plaintiffs' individual capacity RFRA claim is not ripe either. As the Official Capacity Defendants explain more fully in their brief, the ripeness requirement has both constitutional and prudential components. *Id.* at 11. Plaintiffs' claim fails on both fronts. They have failed to allege an injury-in-fact that would establish Article III ripeness because they have not been disciplined or discharged from the military and, as members of a class granted a preliminary injunction, face no imminent threat based on their unvaccinated status. *Id.* at 11-13; *see also U.S. Navy SEALs 1-26*, 2022 WL 1025144, at *14. They have also failed to establish prudential ripeness because they have not exhausted their administrative remedies.

O.C. Defendants' MTD at 13-14. These defects render all their claims—including the RFRA claim against Admiral Gilday—nonjusticiable.

Moreover, Navy SEALs 1-3 cannot establish ripeness for the additional reason that Admiral Gilday is not alleged to have decided their appeals or taken any other action regarding these Plaintiffs that could give rise to an injury. FAC at ¶¶ 65-69. Plaintiffs assert in conclusory fashion that Admiral Gilday is purposefully delaying a decision on their appeals, *id.* at ¶ 71, but this is pure speculation and, in any event, irrelevant to the ripeness inquiry. "[A]llegations of possible future injury do not satisfy [the ripeness] requirement." *Church v. Biden*, 573 F.Supp.3d 118, 134 (D.D.C. Nov. 8, 2021) (quoting *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012)). Admiral Gilday could not have possibly injured Navy SEALs 1-3, so dismissal under Rule 12(b)(1) is required.

## II.   Plaintiffs have Failed to Exhaust Their Administrative Remedies.

As the Official Capacity Defendants argue in more detail, Plaintiffs' claims also warrant dismissal because they have failed to satisfy the exhaustion doctrine. O.C. Defendants' MTD at 8-10. "[A] court should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures." *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986). Here, Plaintiffs' individual capacity RFRA claim against Admiral Gilday rests upon their broader challenge to the Navy's COVID-19 vaccination policy and its enforcement. Just as Plaintiffs should not be permitted to litigate these issues via official capacity claims for equitable relief until they have exhausted their administrative remedies, *see* O.C. Defendants' MTD at 8-10, they should not be permitted to assert an individual capacity claim based on the same allegations. *See, e.g., Muhammad v. Sec'y of Army*, 770 F.2d 1494, 1495 (9th Cir. 1985) (dismissing former service member's claims, including damages claim, for failure to exhaust

administrative remedies); *Von Hoffburg v. Alexander*, 615 F.2d 633, 641 (5th Cir. 1980) (same); *Sanders v. McCrady*, 537 F.2d 1199, 1201 (4th Cir. 1976) (same).

## III. Plaintiffs' Allegations Do Not Support the Availability of Damages as "Appropriate Relief" Under RFRA Against a High-Ranking Military Officer.

Plaintiffs' individual capacity RFRA claim against Admiral Gilday also warrants dismissal because it arises in an unprecedented military context for which personal damages (potentially to thousands of plaintiffs nationwide) are not "appropriate relief." Although the Supreme Court has resolved the question of whether monetary damages *can generally* be an appropriate remedy for an individual capacity RFRA claim, *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), that does not mean they *are necessarily* appropriate in every RFRA case. *Tanvir* considered whether RFRA's express remedies provision, which allows plaintiffs to "obtain appropriate relief against a government," § 2000bb–1(c), "encompasses money damages against officials." 141 S. Ct. at 489. In determining that it did, the Court was careful to limit its holding, stating that RFRA "permits litigants, *when appropriate*, to obtain money damages against federal officials in their individual capacities." *Id.* at 493 (emphasis added). Courts therefore must assess the appropriateness of damages under RFRA on a claim-by-claim basis.

The term "'appropriate' may well take on different meanings in different settings," *Tanvir v. Tanzin*, 894 F.3d 449, 466 (2d Cir. 2018), *aff'd*, 141 S. Ct. 486, and thus what constitutes "appropriate relief" is "inherently context dependent," *Tanvir*, 141 S. Ct. at 491 (quoting *Sossamon*, 563 U.S. at 286). At bottom, the question is whether damages would be "[s]pecially fitted or suitable, proper" in the context of the particular claim before the court. *Id.* (quoting 1 Oxford English Dictionary, at 586). Plaintiffs' RFRA claim in this case differs significantly from those in *Tanvir* and does not support the appropriateness of damages for multiple reasons.

First, to preserve order and discipline within the military, courts have traditionally barred service members from seeking damages from superior officers under federal statutes, including 28 U.S.C. §§ 1983 and 1985(3). Because the relief available under RFRA should mirror that available under § 1983, *Tanvir*, 141 S. Ct. at 492, allowing Plaintiffs to pursue damages against Admiral Gilday would not be appropriate. Second, adjudicating Plaintiffs' individual capacity claims would force the Court to second-guess high-level military decision making not suitable for judicial scrutiny. And, finally, Plaintiffs (and others similarly situated who could also bring a claim for relief against Admiral Gilday, were an individual capacity RFRA remedy recognized) have alternative means of protecting their interests in federal courts and even obtaining monetary relief within the military's internal administrative system. As explained in more detail below, for all these reasons, damages are not appropriate relief in the particular context alleged.

1. **Courts have long barred service members from asserting damages claims, including individual capacity statutory and constitutional claims, arising from harm incident to service.**

For decades, the Supreme Court and D.C. Circuit have limited the ability of service members to assert claims for damages in civilian courts, particularly against superior officers. This paradigm was established in *Feres v. United States*, where the Supreme Court held that the Federal Tort Claims Act (FTCA) does not provide a cause of action for "injuries [that] arise out of or are in the course of activity incident to service." 340 U.S. 135, 146 (1950). As the Supreme Court explained in *United States v. Johnson*, suits brought by service members against the government are the "*type[s]* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." 481 U.S. 681, 690 (1987) (quoting *United States v. Shearer*, 473 U.S. 52, 59 (1983)); *see also Bois*, 801 F.2d at 471 ("*Feres* and its progeny turned on the need to preserve discipline within our Nation's Armed

Forces.").[6]

The rationale of *Feres*—that courts should not intrude into military decision making through the avenue of damages actions—is not limited to the FTCA. In *Chappell v. Wallace*, the Court declined to expand the implied constitutional *Bivens* remedy to the military context in order to protect "the unique disciplinary structure of the military establishment." 462 U.S. 296, 304 (1983); *see also United States v. Stanley*, 483 U.S. 669, 683-84 (1987). The D.C. Circuit heeded this precedent in *Bois v. Marsh* by barring a former officer's § 1985(3) and intentional tort claims based on the logic of *Feres* and *Chappell*. 801 F.2d at 469-71; *see also Cummings v. Dep't of the Navy*, 279 F.3d 1051, 1057 n.4 (D.C. Cir. 2002) (declining to extend *Feres* to Privacy Act claim but noting that "*Bois*'s reasoning remains sound"); *Chandler v. Roche*, 215 F. Supp. 2d 166, 170 (D.D.C. 2002) (dismissing former Air Force National Guard member's § 1983 claims under *Feres* doctrine). And the D.C. Circuit is not alone—nearly every circuit has now held that individual capacity claims brought by members of the armed forces under statutes such as §§ 1983 and 1985 are barred when the alleged harm arises from service-related activity.[7]

---

[6] The deference to the military associated with the availability of a *damages* claim is distinct from, and generally broader than, the deference that this Court has already discussed regarding justiciability of official-capacity claims in the military context. Prelim. Inj. Op. at 10-12. *Bois* made this distinction clear by separately analyzing the justiciability of the plaintiff's non-monetary claims and the availability of a damages cause of action. *Compare* 801 F.2d at 468 (noting that "the need for military discipline by no means precludes judicial review of all military matters"); *with id.* at 469 (holding categorically "that intramilitary damages actions [are] not available" under § 1985). The question of whether a service-related damages claim is available under a given statute also precedes the separate question of how much deference a court should provide the military under the statute if a claim must be analyzed on the merits. *See* Prelim. Inj. Op. at 16 (discussing "[w]hether and to what extent military judgments are nevertheless due some degree of deference under RFRA"). Thus, Admiral Gilday's arguments in this regard are entirely consistent with this Court's discussion of whether Plaintiffs' RFRA injunctive relief claims (though unlikely to succeed on the merits) are generally cognizable under the statute.

[7] *See Aikens v. Ingram*, 811 F.3d 643, 650 (4th Cir. 2016) (barring § 1983 claim under *Feres* doctrine); *Jones v. New York State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 51 (2d Cir. 1999)

This precedent strongly indicates that damages are not "appropriate relief" when a RFRA claim relates to military service. In *Tanvir*, the Court looked to § 1983 when interpreting the scope of "appropriate relief" under RFRA and explained that RFRA claimants "must have at least the same avenues for relief against officials that they would have had" for a First Amendment § 1983 claim. 141 S. Ct. at 492; *see also Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 815 (10th Cir. 2022) (observing that "the damages remedy under [RFRA] was meant to copy that under § 1983"). Consistent with this reasoning, RFRA claimants should not be permitted to obtain damages from individual officers for service-related claims because damages have never been available for such constitutional claims, whether brought under § 1983, § 1985(3), or *Bivens*. Notably, this was as true when Congress passed RFRA in 1993 as it is today. *See Chappell*, 462 U.S. at 298; *Bois*, 801 F.2d at 469; *Jorden*, 799 F.2d at 107, 108 n.12; *Crawford*, 794 F.2d at 1036; *Lovell*, 890 F.2d at 65; *Martelon*, 747 F.2d at 1350-51. Presuming that Congress acted "against the background of our traditional legal concepts" in passing RFRA, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978), it would have viewed damages as an inappropriate form of relief against military officials.

Simply put, "subjecting military commanders to personal liability for suits brought by

---

(same); *Bowen v. Oistead*, 125 F.3d 800, 804 n.2 (9th Cir. 1997) (same); *Wright v. Park*, 5 F.3d 586, 591 (1st Cir. 1993) (same); *Knutson v. Wisconsin Air Nat. Guard*, 995 F.2d 765, 770 (7th Cir. 1993) (same); *Lovell v. Heng*, 890 F.2d 63, 65 (8th Cir. 1989) (barring §§ 1983 and 1985(3) claims); *Jorden v. Nat'l Guard Bureau*, 799 F.2d 99, 107, 108 n.12 (3d Cir. 1986) (same); *Crawford v. Texas Army Nat. Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986) (barring §§ 1983 and 1985(2) claims); *Martelon v. Temple*, 747 F.2d 1348, 1350-51 (10th Cir.1984) (barring § 1983 claim), *cert. denied*, 471 U.S. 1135; *see also Speigner v. Alexander*, 248 F.3d 1292, 1295 (11th Cir. 2001) (recognizing that, due to other decisions extending *Feres* to § 1983, "there is no recognized cause of action for a member of the armed forces to request monetary damages from the military if the claim is based on an injury that is incident to service"); *Coffman v. State of Mich.*, 120 F.3d 57, 59 (6th Cir. 1997) (acknowledging that "courts of appeals have consistently refused to extend statutory remedies available to civilians to uniformed members of the armed forces absent a clear direction from Congress to do so").

their subordinates poses an equal, if not greater, threat to military discipline as would permitting

suits under the FTCA." *Bois*, 801 F.2d at 471. This threat exists for individual capacity claims

under RFRA to the same extent as any other statute. And it is particularly acute for the RFRA

claim in this case, which is asserted against a high-ranking officer and is plainly service-related.

*See Klay v. Panetta*, 758 F.3d 369, 375 (D.C. Cir. 2014) ("[T]he 'incident to service' test asks, in

relevant part, whether 'particular suits would call into question military discipline and

decisionmaking [and would] require judicial inquiry into, and hence intrusion upon, military

matters.'" (quoting *Cioca v. Rumsfeld*, 720 F.3d 505, 515 (4th Cir.2013))). It would thus be

inappropriate to allow Plaintiffs' RFRA damages claim against Admiral Gilday to go forward.

> **2.      Plaintiffs' individual capacity RFRA damages claim challenges high-level military decision making that is not suitable for judicial scrutiny.**

Plaintiffs' RFRA damages claim against Admiral Gilday not only arises from activities

incident to service but also triggers the deepest concerns underlying judicial reluctance to impose

damages in the context of the military chain-of-command or second-guess military judgments by

way of tort actions. Plaintiffs' RFRA claim focuses on topics—*e.g.*, fitness for duty, obedience

to lawful orders, and the maintenance of an effective fighting force—that have all been deemed

by courts as uniquely within the military's sphere of control. *See Goldman v. Weinberger*, 475

U.S. 503, 507 (1986) (holding that "review of military regulations challenged on First

Amendment grounds is far more deferential than constitutional review of similar laws or

regulations designed for civilian society"); *Mazares v. Dep't Of Navy*, 302 F.3d 1382, 1385 (Fed.

Cir. 2002) (observing that the military "has broad authority and discretion in dealing with its

personnel, both military and civilian, including the protection of their health"); Prelim. Inj. Op.

at 11 (stating that "deference is particularly due 'when the military, pursuant to its own

regulations, effects personnel changes through the promotion or discharge process'" (quoting

*Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987)).

DoD's and the Navy's COVID-19 vaccination policies aim to protect the Navy itself and its core mission of military readiness to national defense. *See* ECF No. 22-3; ECF No. 22-4. Admiral Gilday cited these compelling interests in denying Navy SEAL 4's appeal. *See* Denial Ltr., ECF No. 41-2. Adjudicating Plaintiffs' individual capacity RFRA claim would thus put the Court in the position of scrutinizing military judgments about how best to ensure that Navy SEALs remain healthy enough to accomplish their missions. The Court has already expressed its concern that this type of judicial intervention is most likely untenable, even in the context of injunctive relief. *See* Prelim. Inj. Op. at 12. To recognize such claims in the context of a suit for *damages against high-ranking military superiors* would inappropriately interfere with military judgment on readiness, military operations, mission accomplishment, and good order and discipline.

> **3.      Alternative avenues of judicial review and the military's internal justice system provide means other than an individual capacity damages suit for Plaintiffs to protect their asserted interests, including seeking backpay from the government.**

Finally, Plaintiffs are in a very different position than the respondents in *Tanvir*, for whom damages was the "only form of relief" that could remedy their "wasted plane tickets." 141 S. Ct. at 492. Many of the alleged adverse consequences of refusing the COVID-19 vaccine—such as separation from the Navy, inability to attend military training and education, and loss of leave and travel privileges, FAC at ¶¶ 74-75—could, if otherwise warranted, be redressed through injunctive relief under RFRA, the Constitution, or the APA.

Insofar as Plaintiffs seek to make Admiral Gilday pay damages, even if their exemption requests are denied and discipline ensues, they have means of recovering through the military's internal administrative system. Plaintiffs may seek redress from the Board for Correction of

Naval Records. This administrative body "determin[es] the existence of error or injustice in the naval records of current and former members of the Navy" so that it can "take corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 723.2(b); *see also* 10 U.S.C. § 1552(a). Notably, the Board "is empowered to order retroactive back pay and retroactive promotion." *Chappell*, 462 U.S. at 303 (citing 10 U.S.C. § 1552(c)). Plaintiffs also may seek relief under Article 138 of the Uniform Code of Military Justice, which provides that "[a]ny member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer[.]" 10 U.S.C. § 938 Art. 138; *see also Chappell*, 462 U.S. at 302 (recognizing that the Board and Article 138 together constitute Congress's "comprehensive internal system of justice to regulate military life").

All these aspects of Plaintiffs' claims make damages inappropriate here. Any other construction would not only make Admiral Gilday personally liable to Plaintiffs herein, but risk opening him to liability to thousands of others whose religious exemption requests may be denied. Indeed, if *Tanvir*'s statement that litigants can only recover individual capacity damages under RFRA "when appropriate" means anything, it makes clear that Plaintiffs cannot obtain damages relief against high-raking military officers based on claims like this. *See* 141 S. Ct. at 493.

## IV.   Admiral Gilday is Entitled to Qualified Immunity.

Finally, although Plaintiffs' RFRA claim warrants dismissal on multiple other grounds, Admiral Gilday is also entitled to dismissal based on qualified immunity.

### 1.   The qualified immunity framework.

Courts have long recognized that individual capacity damages suits against federal

officials give rise to "substantial societal costs," particularly "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit government officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To mitigate these costs, the doctrine of qualified immunity shields government officials from personal liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity thus affords officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). And because qualified immunity is designed to shield officials from the burdens of litigation, it should be resolved "at the earliest possible stage in the litigation." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity applies not only to constitutional claims but also to federal statutory claims. *See Harlow*, 457 U.S. at 818. Consequently, the defense is available to defendants sued under RFRA, as the D.C. Circuit suggested in *Rasul v. Myers*. 512 F.3d 644, 668 n.20 (D.C. Cir. 2008) (reversed on other grounds), and other federal courts of appeal have unanimously recognized, *see, e.g.*, *Ajaj*, 25 F.4th at 813; *Fazaga v. FBI*, 965 F.3d 1015, 1061 (9th Cir. 2020); *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *Potts v. Holt*, 617 F. App'x 148, 150-51 (3d Cir. 2015); *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012); *see also Tanvir*, 141 S. Ct. at 492 n.* (acknowledging that both parties agreed qualified immunity should apply in RFRA cases).

Under the two-prong framework for analyzing qualified immunity, officials are shielded from money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the

challenged conduct." *Taylor v. Reilly*, 685 F.3d 1110, 1113 (D.C. Cir. 2012) (quoting *al-Kidd*, 563 U.S. at 735). Courts have discretion to decide which prong to of the analysis to tackle first. *Id.* Once a defendant invokes qualified immunity, it is the plaintiff's burden to demonstrate that the doctrine does not apply. *Palmieri v. United States*, 896 F.3d 579, 586 (D.C. Cir. 2018).

> **2.** **Plaintiffs do not allege that Admiral Gilday was personally involved in violating the rights of Navy SEALs 1-3.**

Under prong one of the qualified immunity analysis, courts must analyze not just whether the complaint's allegations make out a violation, but also whether the individual official was personally involved in the alleged violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (assessing whether "the facts alleged show the *officer's conduct* violated a constitutional right" (emphasis added)). This is because a government official "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also Bundy v. Sessions*, 812 F. App'x 1, 2 (D.C. Cir. 2020) (noting that "[p]ure vicarious liability . . . is [also] not sufficient to state a claim under RFRA" (quoting *Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 55 (D.D.C. 2015))). Thus, where the complaint does not plausibly establish a violation that the defendant personally participated in, immunity is appropriate.

For the same reason that Navy SEALs 1-3 fail to allege claims that are ripe for adjudication, *see supra* at 5-6, they also fail to allege that Admiral Gilday was personally involved in a RFRA violation. The complaint does not allege that Admiral Gilday has himself rendered any decision on whether these Plaintiffs are entitled to religious exemptions from mandatory COVID-19 vaccination. FAC at ¶¶ 65-69. He therefore could not have violated their rights and is entitled to immunity.[8]

---

[8] Plaintiffs' RFRA claim also fails under prong one of the qualified immunity analysis because damages are not "appropriate relief" in this context, *see supra* at 7-13, and certainly are not

**3.    Plaintiffs fail to plausibly allege the violation of a clearly established right under RFRA.**

Alternatively, Admiral Gilday is also entitled to qualified immunity because it was not clearly established that his limited conduct—denying Navy SEAL 4's request for a religious exemption from the Navy's COVID-19 vaccination policy—violated RFRA or the Constitution. An official is entitled to qualified immunity unless the asserted right was clearly established, which means it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). If "a reasonable officer might not have known *for certain* that the conduct was unlawful" in light of pre-existing law, then he is immune from liability. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (emphasis added). Consequently, to overcome an assertion of qualified immunity, Plaintiffs here must identify "cases of controlling authority" or "a consensus of cases of persuasive authority," *Youngbey v. Mar.*, 676 F.3d 1114, 1117 (D.C. Cir. 2012) (quotations omitted), that place the RFRA question "beyond debate," *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "It is not enough that the rule is suggested by then-existing precedent." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).

"The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* In other words, the right must be beyond debate "not merely 'at a high level of generality' but 'in light of the specific context of the case.'" *Palmieri*, 896 F.3d at 586 (quoting *Hedgpeth v. Rahim*, 893 F.3d 802, 806 (D.C. Cir. 2018)). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (quotation omitted). Consistent with

---

"clearly established" as such under prong two.

this guidance, courts have granted qualified immunity in RFRA cases at the motion to dismiss stage where there was no controlling precedent that would have put the defendant on notice that their conduct violated the statute.[9] A government official violates RFRA when their conduct "substantially burden[s] a person's exercise of religion" and is not the "the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb–1.

Here, the U.S. Military has long required service members to undergo numerous vaccinations. *See* O.C. Defendants' MTD at 2-3. No court of which we are aware has held that a military immunization requirement other than for COVID-19 was in violation of RFRA. Indeed, the few cases involving challenges to mandatory vaccination in the military predating the COVID-19 pandemic are either irrelevant to the claims here, *see Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 19 (D.D.C. 2004) (enjoining Anthrax vaccination requirement because of flaws in FDA procedures), or reject service members' claims, *see Mazares v. Dep't Of Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002) (upholding order requiring service members to receive Anthrax vaccine); *United States v. Chadwell*, 36 C.M.R. 741, 750 (NBR 1965) (upholding mandatory inoculation against constitutional challenge based on religious objection).

---

[9] *See, e.g., Fazaga*, 965 F.3d at 1062 (covert surveillance allegedly conducted on the basis of religion); *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012) (application of RFRA to enemy combatants); *Rasul v. Myers*, 563 F.3d 527, 533 n.6 (D.C. Cir. 2009) (application of RFRA to aliens detained abroad); *Dreiver v. United States*, No. 19-1807(TJK), 2021 WL 1946391, at *4 (D.D.C. May 14, 2021) (transgender prisoner's request not to be housed with female transgender prisoners to permit "modesty around members of the opposite sex"); *Cooper v. True*, No. 16-cv-02900-MJD-KMM, 2017 WL 6375609, at *1, 6 (D. Minn. Nov. 2, 2017), *report and recommendation adopted by* 2017 WL 6372651 (D. Minn. Dec. 12, 2017) (prison warden's allegedly inadequate request to transfer an inmate to a facility where he could better participate in his faith); *Brown v. BOP*, No. 3:14-cv-681(RNC), 2017 WL 1234104, at *2 (D. Conn. Mar. 31, 2017) (pat-down search of a Muslim female inmate by a male guard); *Fernandez-Torres v. Watts*, No. 2:16-cv-24, 2017 WL 9485591, at *3 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted by* 2017 WL 1173923 (S.D. Ga. Mar. 29, 2017) (prisoner's request to receive religious items from unapproved vendors).

Neither has any court in this circuit granted judicial relief against the military's COVID-19 vaccination requirement. To the contrary, courts in this Circuit have denied preliminary relief seeking exemptions from that requirement. *See Knick v. Austin*, No. 22-1267, 2022 WL 2157066, at *6 (D.D.C. June 15, 2022); *Creaghan v. Austin*, No. CV 22-0981, 2022 WL 1500544, at *11 (D.D.C. May 12, 2022); *Church*, 573 F.Supp.3d at 148. Moreover, the Supreme Court recently stayed a preliminary injunction issued by a district court in another circuit to the extent that injunction precluded the Navy from taking a service member's COVID-19 unvaccinated status into account in making deployment, assignment, and other operational decisions. *See Austin v. U. S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring). And in *Dunn v. Austin, et al.*, 142 S. Ct. 1707 (April 18, 2022), the Supreme Court denied an Air Force service member's application for an injunction pending appeal.

Decisions issued by courts outside this Circuit regarding the military's COVID-19 vaccination requirement are divided, with some decisions denying preliminary relief and some granting preliminary injunctions.[10] Those out-of-circuit decisions further confirm that there was

---

[10] *Compare, e.g., Roberts v. Roth*, 2022 WL 834148, at *6 (denying preliminary injunction on ripeness grounds); *Short v. Berger*, 2022 WL 1051852, at *6 (denying preliminary injunction and concluding that plaintiff's RFRA claim was unlikely to succeed on the merits); *Dunn v. Austin*, No. 2:22-cv-00288, ECF No. Nos. 16, 25 (E.D. Cal. Feb. 22, 2022) (denying preliminary injunction); *Robert v. Austin*, No. 21-CV-02228-RM-STV, 2022 WL 103374, at *3 (D. Colo. Jan. 11, 2022) (denying preliminary injunction and dismissing on ripeness grounds); *Oklahoma v. Biden*, No. CIV-21-1136-F, 2021 WL 6126230, at *14 (W.D. Okla. Dec. 28, 2021) (declining to grant preliminary injunction and concluding that "the military vaccination mandate is valid and enforceable as applied to the Guard"); *Guettlein v. U.S. Merchant Marine Academy*, 2021 WL 6015192 (E.D.N.Y. Dec. 20, 2021) (denying preliminary injunction on constitutional claims); *Church*, --- F.Supp.3d ----, 2021 WL 5179215 (declining to grant injunction on ripeness and exhaustion grounds); *with Doster v. Kendall*, --- F. Supp. 3d ----, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) (preliminarily enjoining application of DoD and Air Force vaccination requirement to plaintiffs); *Poffenbarger v. Kendall*, --- F. Supp. 3d ----, 2022 WL 594810 (S.D. Ohio Feb. 28, 2022) (same); *Air Force Officer v. Austin*, --- F. Supp. 3d ----, 2022 WL 468799

no "settled law," *Wesby*, 138 S. Ct. at 589, on this topic that would have informed reasonable officials in Defendant Gilday's position that any conduct on his part was supposedly illegal. *See also Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) (decisions that postdate alleged misconduct cannot clearly establish the law); *Kalka v. Hawk*, 215 F.3d 90, 100 (D.C. Cir. 2000) (observing that it is "highly unlikely" that "an unreviewed district court decision could clearly establish a constitutional right"); *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) ("[D]istrict courts, let alone those in other circuits, don't provide clearly established precedent."). This absence of controlling or uniform precedent addressing vaccination in the military context is sufficient on its own to warrant qualified immunity on Plaintiffs' single RFRA claim. *See Palmieri*, 896 F.3d at 586.

The dearth of case law finding a legal violation based on mandatory vaccination in the military is especially strong support for qualified immunity in contexts like this that involve multi-prong, individualized assessments for liability, *see, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 727 (2014) (discussing RFRA's individualized assessment), and the balancing of competing individual and governmental interests. "Differences in the nature of the competing interests from case to case make it difficult for a government official to determine, in the absence of case law that is very closely analogous, whether the balance that he strikes is an appropriate accommodation of the competing individual and governmental interests." *Gregorich v. Lund*, 54 F.3d 410, 414 (7th Cir. 1995); *see also Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 979 (9th Cir. 1998) (stating, for First Amendment test requiring "a fact-sensitive, context-specific balancing of competing interests," that the law "will rarely, if ever, be

---

(M.D. Ga. Feb. 15, 2022) (same); *Navy SEAL 1 v. Biden*, 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022) (same); *U.S. Navy SEALs 1-26 v. Biden*, No. 4:21-CV-01236-O, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022).

sufficiently 'clearly established' to preclude qualified immunity under *Harlow* and its progeny" (internal quotation omitted)).

Relevant precedent upholding compulsory vaccination outside the military further demonstrates that Admiral Gilday lacked "fair warning" that his conduct was anything less than lawful. *Johnson v. D.C.*, 528 F.3d 969, 976 (D.C. Cir. 2008) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Well over a century ago, the Supreme Court in *Jacobson v. Commonwealth of Massachusetts* upheld a law mandating vaccination against smallpox on the basis that it did not "invade[] any right secured by the Federal Constitution." 197 U.S. 11, 38 (1905); *see also, e.g., Zucht v. King*, 260 U.S. 174, 176 (1922) ("[I]t is within the police power of a state to provide for compulsory vaccination."). And the Supreme Court has also observed that "[t]he right to practice religion freely does not include liberty to expose the community . . . to communicable disease." *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944). Citing these and other cases, the D.C. Circuit has stated that "adults, sick or well, can be required to submit to compulsory treatment or prophylaxis, at least for contagious diseases" and that "there are no religious exemptions from these orders." *Application of President & Directors of Georgetown Coll., Inc.*, 331 F.2d 1000, 1008 (D.C. Cir. 1964) (granting emergency writ to forcibly administer emergency blood transfusion to patient who would not consent on religious grounds).

Other federal appellate courts have upheld mandatory vaccination laws against free exercise challenges in the contexts of state health care workers, *Does 1-6 v. Mills*, 16 F.4th 20, 33 (1st Cir. 2021); public colleges and universities, *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); and public schools, *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) and *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 353 (4th Cir. 2011) (unpublished). In some cases, courts have observed that the vaccination policy in question

would survive not only the rational basis test generally applied to First Amendment free exercise challenges, but also strict scrutiny. *Does 1-6*, 16 F.4th at 32; *Workman*, 419 F. App'x at 353. There is thus a substantial and longstanding body of case law from multiple courts *upholding* vaccination requirements.

Moreover, in the First Amendment context, the Supreme Court has observed that military regulations receive heightened deference, including regulations that impinge on religious exercise. *Goldman*, 475 U.S. at 507; *see also McDonough v. Mabus*, 907 F. Supp. 2d 33, 43-44 (D.D.C. 2012) (citing *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)) ("This Circuit . . . has taken a broad view of military expertise to which deference is owed."). Justice Kavanaugh's concurrence in *Navy SEALs 1-26* and RFRA's legislative history both suggest that military decisions challenged under RFRA similarly warrant a deferential approach. *See* 142 S. Ct. 1301 (Kavanaugh, J., concurring) ("RFRA does not justify judicial intrusion into military affairs in this case."); S. REP. 103-111, 12, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 ("The courts have always recognized the compelling nature of the military's interest in [good order, discipline, and security] in the regulations of our armed services. Likewise, the courts have always extended to military authorities significant deference in effectuating these interests. The committee intends and expects that such deference will continue under this bill."). At the very least, any "open legal question," *al-Kidd*, 563 U.S. at 743, regarding RFRA's application in this military context underscores the appropriateness of qualified immunity.

Lastly, Admiral Gilday's reasonable reliance on official agency policy in denying Navy SEAL 4's request also supports awarding qualified immunity. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999) (finding it "important" to the qualified immunity analysis that U.S. Marshals relied on agency policy). The directives issued by Secretary Austin and Secretary Del Toro

emphasize the threat COVID-19 poses to Force readiness and the effectiveness of COVID-19 vaccination. *See* ECF No. 22-3; ECF No. 22-4. Although Admiral Gilday "considered the individual facts and circumstances" of Navy SEAL 4's request, *see* Denial Ltr., ECF No. 41-2, he was also entitled to rely on the agency's official position regarding the compelling need to vaccinate the Armed Forces.

Given the paucity of controlling case law upholding challenges to vaccination in the military, the abundance of precedent upholding compulsory vaccination in other contexts, the tradition of deference to military decisions, and the military and agency policies on which Admiral Gilday could reasonably rely, it was not "beyond debate," *Daugherty*, 891 F.3d at 390, that requiring a Navy SEAL to undergo vaccination as a condition of continued service violated RFRA. Indeed, the weight of legal authority pointed to the opposite conclusion. Admiral Gilday is thus entitled to qualified immunity because no reasonable official in his position would have known, much less "known for certain," *Abbasi*, 137 S. Ct. at 1867, that his denial of Navy SEAL 4's appeal was unlawful.

### CONCLUSION

For the reasons stated above, Admiral Gilday respectfully requests that the Court grant this Motion and dismiss him from the case.

Dated: August 23, 2022

Respectfully submitted,

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch

*/s/ Daniel C. Luecke*

DANIEL C. LUECKE
Trial Attorney
California State Bar. No. 326695
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 616-3049
Fax: (202) 616-4314
E-mail: daniel.c.luecke@usdoj.gov

*/s/ Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney
D.C. Bar No. 995057
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 598-3988
Fax: (202) 616-4314
E-mail: joseph.a.gonzalez@usdoj.gov

*Attorneys for Admiral M.M. Gilday*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23th day of August, 2022, a true and correct copy of the Memorandum of Law in Support of Admiral Gilday's Motion to Dismiss was served by ECF upon all counsel of record.

*/s/ Daniel Luecke*