IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAVY SEAL 1, NAVY SEAL 2, NAVY SEAL 3, and NAVY SEAL 4,<br><br>        Plaintiffs,<br><br>    v.<br><br>LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense; CARLOS DEL TORO, in his official capacity as Secretary of the United States Navy; and ADMIRAL MICHAEL M. GILDAY, individually and in his official capacity as Chief of Naval Operations,<br><br>        Defendants. | Case No. 1:22-cv-00688 (CKK)<br><br>Hon. Colleen Kollar-Kotelly |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

SUMMARY OF FACTS ...................................................................................................... 2

    A.  The Parties ............................................................................................................... 2

    B.  The Vaccine Mandate ............................................................................................. 3

    C.  Plaintiffs' Requests for Religious Exemptions ...................................................... 5

    D.  Substantial Burden on Plaintiffs' Religious Exercise............................................ 8

    E.  No Compelling Interest and Availability of Less Restrictive Means ................... 10

ARGUMENT ..................................................................................................................... 15

I.     Defendants' Exhaustion Argument Is Wrong................................................... 15

II.    Plaintiffs' Claims Are Ripe............................................................................... 24

III.   A Claim for Damages Is "Appropriate Relief" under RFRA ........................... 27

IV.   Defendant Gilday Does Not Enjoy Qualified Immunity for Violating Plaintiffs' Clearly Established Rights................................................................................... 29

CONCLUSION.................................................................................................................. 33

CERTIFICATE OF SERVICE ......................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page**

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967)................................................................................................26

*ACLU v. NSA,*
493 F.3d 644 (6th Cir. 2007) .................................................................................25

*Agudath Isr. v. Cuomo,*
983 F.3d 620 (2d Cir. 2020).....................................................................................17

*Air Force Officer v. Austin,*
No. 5:22-cv-00009-TES, 2022 U.S. Dist. LEXIS 26660 (M.D. Ga. Feb. 15, 2022).........23, 28, 32

*Anderson v. Creighton,*
483 U.S. 635 (1987)................................................................................................30

*Arrington v. United States Park Police,*
No. 01-1391 (CKK), 2003 U.S. Dist. LEXIS 30547 (D.D.C. Sep. 30, 2003) ..............................29

*Ass'n of Flight Attendants-CWA v. Chao,*
493 F.3d 155 (D.C. Cir. 2007) ...........................................................................16, 22

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971)................................................................................................27

*Boatwright v. Jacks,*
239 F. Supp. 3d 229 (D.D.C. 2017) .........................................................................31

*Bois v. Marsh,*
801 F.2d 462 (D.C. Cir. 1986) ..................................................................16, 17, 18

*Bowen v. City of N.Y.,*
476 U.S. 467 (1986)................................................................................................16

*Bowsher v. Synar,*
478 U.S. 714 (1986)................................................................................................25

*Cargill v. Marsh,*
902 F.2d 1006 (D.C. Cir. 1990) ...............................................................................16

*Church v. Biden,*
573 F. Supp. 3d 118 (D.D.C. 2021) .....................................................................6, 16

*Davis v. District of Columbia*,
158 F.3d 1342 (D.C. Cir. 1998)................................................................24

*DeMarco v. Davis*,
914 F. 3d 383 (CA5 2019) .......................................................................29

*Doe v. Shanahan*,
755 F. App'x 19 (D.C. Cir. 2019).............................................................18

*Doe v. Trump*,
275 F. Supp. 3d 167 (D.D.C. 2017)....................................................18, 19

*Doster v. Kendall*,
No. 22-3702, 2022 U.S. App. LEXIS 25339(6th Cir. Sep. 9, 2022) ............32

*Dowds v. Bush*,
792 F. Supp. 1289 (D.D.C. 1992) ............................................................16

*Elrod v. Burns*,
427 U.S. 347 (1976)................................................................................23

*Elzie v. Aspin*,
841 F. Supp. 439 (D.D.C. 1993)...............................................................19

*Feres v. United States*,
340 U.S. 135 (1950)................................................................................28

*Gordon v. Holder*,
721 F.3d 638 (D.C. Cir. 2013).................................................................24

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)....................................................................29, 30, 31

*Heidman v. United States*,
414 F. Supp. 47 (N.D. Ohio 1976)...........................................................16

*Hope v. Pelzer*,
536 U.S. 730 (2002)................................................................................30

*Jacobson v. Commonwealth of Mass.*,
197 U.S. 11 (1905)..................................................................................17

*Marbury v. Madison*,
5 U.S. 137 (1803)....................................................................................21

*MedImmune, Inc.* v. *Genentech, Inc.*,
549 U.S. 118 (2007)................................................................................25

*Morales v. Trans World Airlines*, *Inc.*,
504 U.S. 374 (1992)................................................................................26

*Muhammad v. Sec'y of Army*,
770 F.2d 1494 (9th Cir. 1985) ...............................................................16

*Nat'l Fed'n of Indep. Bus. v. Dep't of Labor, OSHA*,
142 S. Ct. 661 (2022)..............................................................................17

*Nat'l Park Hosp. Ass'n v. DOI*,
538 U.S. 803 (2003)................................................................................26

*Navegar, Inc. v. United States*,
103 F.3d 994 (D.C. Cir. 1997)................................................................26

*Navy Seal 1 v. Austin*,
No. 8:21-cv-2429-SDM-TGW, 2022 U.S. Dist. LEXIS 31640 (M.D. Fla. Feb. 18, 2022) ....23, 32

*Navy SEALS 1-26 v. Austin*,
No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 65937 (N.D. Tex. Mar. 28, 2022) ...........19, 24, 27

*Navy SEALS 1-26 v. Biden*,
No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 2268 (N.D. Tex. Jan. 3, 2022).....................24, 32

*NLRB v. Canning*,
573 U.S. 513 (2014)................................................................................21

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
676 F.3d 829 (9th Cir. 2012) ..................................................................16

*Parisi v. Davidson*,
405 U.S. 34 (1972)..................................................................................16

*Pearson v. Callahan*,
555 U.S. 223 (2009)................................................................................30

*Poffenbarger v. Kendall*,
No. 3:22-cv-1, 2022 U.S. Dist. LEXIS 34133 (S.D. Ohio Feb. 28, 2022) ...................18

*Roberts v. Roth*,
--- F. Supp. 3d ---, 2022 WL 834148 (D.D.C. Mar. 21, 2022) ................................ 15-16

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,
547 U.S. 47 (2006) ........................................................................................................25

*Sanders v. McCrady,
537 F.2d 1199 (4th Cir. 1976) .................................................................................16, 23

Saucier v. Katz,
533 U.S. 194 (2001) ......................................................................................................30

*Singh v. Carter,
168 F. Supp. 3d 216 (D.D.C. 2016) .......................................................................15, 16

Steffel v. Thompson,
415 U.S. 452 (1974) ......................................................................................................26

Susan B. Anthony List v. Driehaus,
573 U.S. 149 (2014) ......................................................................................................25

Tandon v. Newsom,
141 S. Ct. 1294 (2021) ..................................................................................................25

*Tanzin v. Tanvir,
141 S. Ct. 486 (2020) ........................................................................................27, 28, 29

*United States v. Begani,
81 M.J. 273 (C.A.A.F. 2021) ........................................................................................20

United States ex rel. Brooks v. Clifford,
412 F.2d 1137 (4th Cir. 1969) ......................................................................................23

Von Hoffburg v. Alexander,
615 F.2d 633 (5th Cir. 1980) ..................................................................................16, 22

Wilson v. Layne,
526 U.S. 603 (1999) ......................................................................................................30

Winter v. NRDC, Inc.,
555 U.S. 7 (2008) ..........................................................................................................16

You Vang Yang v. Sturner,
728 F. Supp. 845 (RI 1990) ..........................................................................................29

Yang v. Sturner,
750 F. Supp. 558 (RI 1990) ..........................................................................................29

**Statutes**

15 U.S.C. § 78u(d)(5) ...................................................................................27

29 U.S.C. § 1132(a)(3) .................................................................................27

42 U.S.C. § 1983 ..........................................................................................16

42 U.S.C. § 1997e(a) ....................................................................................16

42 U.S.C. § 2000e-5(g)(1) ............................................................................27

*42 U.S.C. § 2000bb .................................................................................1, 21

Fed. R. Civ. P. 12(b) ......................................................................................1

**Other**

https://www.socom.mil/care-coalition ..............................................................8

## INTRODUCTION

Defendants Austin, Del Toro, and Gilday, in their official capacities, move to dismiss this lawsuit, arguing that "Plaintiffs' claims should be dismissed because they have failed to exhaust administrative remedies" and that "Plaintiffs' failure to pursue administrative remedies also renders their claims unripe."  (Defs.' Mem. at 8, 10 [Doc. No. 44-1]).  The former argument is allegedly brought pursuant to Rule 12(b)(6) and the latter argument pursuant to Rule 12(b)(1).  (Defs.' Mem. at 7-8).

Defendant Gilday, in his individual capacity, moves to dismiss this lawsuit, arguing that "[f]or the same reasons that the official capacity claims in this case are not ripe for adjudication, . . . . Plaintiffs' individual capacity RFRA [Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.*] claim is not ripe either" and "[a]s the Official Capacity Defendants argue in more detail, Plaintiffs' claims also warrant dismissal because they have failed to satisfy the exhaustion doctrine."  (Gilday Mem. At 5, 6 [Doc. No. 45-1]).  Defendant Gilday further argues, in his individual capacity, that damages are not an "appropriate relief" against him under RFRA as he is a "high-ranking military officer" and that he, nonetheless, is entitled to qualified immunity.  (Gilday Mem. at 7-13, 13-22).

Defendants are mistaken.  There is no exhaustion of administrative remedies requirement under RFRA or the First and Fifth Amendments, particularly in this case.  The claims are ripe as the issues are fit for judicial resolution and Plaintiffs have been irreparably harmed.  This harm will continue absent judicial relief.  Regarding the individual capacity claim, there is no question that Defendant Gilday is subject to RFRA, and as the U.S. Supreme Court confirmed, damages are an "appropriate remedy" under this statute.  Congress made no exceptions for "high-ranking

military officers" nor should this Court.  Furthermore, Defendant Gilday does not enjoy qualified immunity for violating Plaintiffs' clearly established rights.  The motions should be denied.

SUMMARY OF FACTS

**A.      The Parties.**

Plaintiffs are Christians.  Plaintiff Navy SEALs 1, 2, and 4 are active-duty members of the U.S. Navy Sea, Air, and Land Teams, commonly known as Navy SEALs.  Navy SEAL 3 recently retired and is now a member of the Fleet Reserve.  SEALs are the U.S. Navy's primary special operations force, and they are a component of the Naval Special Warfare Command.  Plaintiffs have served honorably on active duty in the U.S. Navy for many years.  Navy SEAL 3 served honorably for three decades.  (First Am. Compl. ¶¶ 9-15 [Doc. No. 43] [hereinafter "FAC"]; Navy SEAL 3 Decl. ¶¶ 2, 5 at Ex. 1 [under seal]).

As Navy SEALs, Plaintiffs face death and suffer many hardships defending our freedoms against enemies around the globe.  They each took an oath to support and defend the Constitution of the United States against all enemies, foreign and domestic.  Plaintiffs remain willing to make the ultimate sacrifice in defense of our freedoms enshrined in the Bill of Rights.  (FAC ¶ 13).

Defendant Lloyd Austin is the Secretary of the United States Department of Defense (DoD).  In that capacity, Defendant Austin is responsible for enacting, implementing, and enforcing the challenged Vaccine Mandate.  (FAC ¶ 18).

Defendant Carlos Del Toro is the Secretary of the United States Navy.  In that capacity, Defendant Del Toro is responsible for enacting, implementing, and enforcing the Vaccine Mandate for all members of the United States Navy, including Plaintiffs.  (FAC ¶ 19).

Defendant Admiral Michael M. Gilday is the Chief of Naval Operations (CNO).  In that capacity, he is responsible for enacting, implementing, and enforcing the Vaccine Mandate for all

members of the United States Navy, including Plaintiffs.  Moreover, Defendant Gilday has plenary authority to grant or deny religious exemptions to the mandate.  (FAC ¶¶ 20, 22).

## B.     The Vaccine Mandate.

Secretary of Defense Lloyd Austin announced on August 9, 2021, that COVID-19 vaccines would be added to the list of mandatory vaccines required for all service members "by no later than mid-September, or immediately upon [FDA] licensure, whichever comes first."  (FAC ¶ 23).

After the FDA announced its approval of Pfizer BioNTech's COVID-19 vaccine on August 23, 2021, Secretary Austin directed the "Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority or on active duty or in the Ready Reserve, including the National Guard, who are not fully vaccinated against COVID-19."  (FAC ¶ 25).

Secretary Austin's directive indicates that "[m]andatory vaccination against COVID-19 will only use COVID-19 vaccines that receive full licensure from the [FDA] in accordance with FDA-approved labeling and guidance," but also notes that service members "voluntarily immunized with a COVID-19 vaccine under FDA Emergency Use Authorization" are considered fully vaccinated.  *Id*.  A subsequent directive issued by the Secretary of the Navy required all "[a]ctive duty Sailors and Marines" to "become fully vaccinated by November 28, 2021."  (FAC ¶ 26).

Without a waiver from the President, Defendants have no authority to order military members, including Plaintiffs, to be vaccinated with a vaccine that does not receive full FDA approval.  That is, Defendants have no authority to order any military member to receive a vaccine under FDA Emergency Use Authorization without a presidential waiver.  President Biden never waived this requirement for the COVID-19 vaccines.  (FAC ¶ 24).

The Navy does not have a supply of FDA-approved COVID-19 vaccines on hand. Consequently, it is not physically possible for Navy personnel, including Plaintiffs, to comply with the Vaccine Mandate.  None of the SARSCoV-2 vaccines currently available in the United States are FDA approved and licensed for use.  All doses currently available (Pfizer-BioNTech, Moderna, and Johnson & Johnson) are experimental medical products made available as such by the FDA and the Department of Health and Human Services under the Emergency Use Statutes and Authorizations (EUA).  Under the EUA, and the FDA Fact Sheets for Pfizer-BioNTech, Moderna, and Johnson & Johnson, individuals have the "option to accept or refuse" the products. Accordingly, under current military regulations, Defendants cannot force or mandate Plaintiffs to receive an EUA vaccine.  Any order to do so is unlawful.  (FAC ¶¶ 27, 29).

Failure to abide by the unlawful Vaccine Mandate can and will result in harsh and severe penalties, including criminal prosecution, loss of pay and benefits, removal from the Navy SEALs, and separation from the armed services.  Accordingly, Plaintiffs were advised by their chains of command via a page 13 entry in their service record that "[u]nless medically or administratively exempt, any refusal to be vaccinated may constitute a Failure to Obey a Lawful Order and may be punishable under the Uniform Code of Military Justice (UCMJ) and/or administrative action for Failure to Obey a Lawful Order (UCMJ, Article 92)."  A page 13 entry is an adverse entry in Plaintiffs' official service records.  (FAC ¶¶ 30, 31).

Plaintiffs were further advised via the page 13 entry of the following: "Additionally, per MANMED 15-105, special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED).  This will affect

deployment and special pays.  This provision does not pertain to medical contraindications or allergies to vaccine administration."  (FAC ¶ 32).

Because Plaintiffs, who are "special operations (SO) duty personnel," object to the Vaccine Mandate on religious grounds, they will face punitive measures for exercising their religion, regardless of whether they are granted a religious exemption to the mandate.  However, those with a secular, medical objection will not face similar punishment.  (FAC ¶ 33).

### C.    Plaintiffs' Requests for Religious Exemptions.

Plaintiffs object to the Vaccine Mandate on religious grounds as the mandate substantially burdens their religious exercise.  (FAC ¶¶ 43-63).  As a result, each Plaintiff submitted a timely request for a religious exemption to the Vaccine Mandate pursuant to the established procedures.  (FAC ¶¶ 64-70).

On May 7, 2022, Navy SEAL 1's request was denied by the Deputy Chief of Naval Operations.  The denial letter utilized the same boilerplate justification and language used in every other such rejection.  While Navy SEAL 1 timely submitted an appeal to the CNO, this appeal is futile as the CNO has a policy and practice of issuing blanket denials of such appeals, particularly for Navy SEALs, and regardless of the outcome of the appeal, Navy SEAL 1 has been and will continue to be punished for asserting a religious objection to the Vaccine Mandate.  (FAC ¶¶ 65, 66).

Navy SEAL 2 submitted a timely request for a religious exemption, and on March 2, 2022, he received official notice that his request was denied by the reviewing authority on February 6, 2022.  The February 6, 2022, denial letter contains the same boilerplate justification and language that Defendants have used to deny all of the religious exemption requests made by Navy SEALs.  On March 3, 2022, Navy Seal 2 submitted a timely appeal of his denial to the CNO.  The CNO is

currently sitting on his appeal.  However, as noted, this appeal is futile as the CNO has a policy and practice of making blanket denials of such appeals, particularly for Navy SEALs.  And regardless of the outcome of the appeal, Navy SEAL 2 has been and will continue to be punished for asserting a religious objection to the Vaccine Mandate.  (FAC ¶ 67).

Navy SEAL 3 submitted a timely request for a religious exemption, and on November 30, 2021, he received an email with an attached letter from the Deputy Chief of Naval Operations informing him that his religious exemption was denied.  The letter was dated November 22, 2021, and it contains the same boilerplate justification and language that Defendants have used to deny all of the religious exemption requests made by Navy SEALs.  Navy SEAL 3 timely submitted an appeal of his denial to the CNO.  The CNO is sitting on his appeal.  However, as noted previously, this appeal is futile as the CNO has a policy and practice of issuing blanket denials of such appeals, particularly for Navy SEALs, and regardless of the outcome of the appeal, Navy SEAL 3 has been and will continue to be punished for asserting a religious objection to the Vaccine Mandate.  (FAC ¶ 68, 69).

Navy SEAL 4 made his request for a religious exemption to the Vaccine Mandate on October 15, 2021.  This request was denied by the reviewing authority on November 26, 2021, utilizing the same boilerplate justification and language used for all other such denials.  Navy SEAL 4 timely appealed this denial to the CNO, who denied the appeal on February 10, 2022, pursuant to the CNO's policy and practice of issuing blanket denials of such appeals, particularly for Navy SEALs.[1]  Navy SEAL 4 is now being processed for discharge from the U.S. Navy.  (FAC ¶ 70).

---

[1] Navy SEAL 4's situation alone is sufficient to distinguish this case from *Church v. Biden*, 573 F. Supp. 3d 118, 137 (D.D.C. 2021), where "Plaintiffs' initial requests for religious accommodations to the DoD Vaccine Mandate were denied and their appeals of those denials are

The CNO's delay with responding to the religious exemption requests of Navy SEALs 1 through 3 is purposeful, and it is intended to thwart the efforts of this litigation so that Defendants can argue that the claims are not ripe.  (FAC ¶ 71).  Moreover, the delay is further evidence that the government does not have a compelling interest in mandating the COVID-19 vaccine.

Based on clearly established law, the government is required to review requests for religious accommodations/exemptions on a case-by case basis.  Yet, the U.S. Navy denial letters are boilerplate form letters that do not address the specific situations of each Navy SEAL.  Indeed, the letters received by Plaintiffs were identical to the disapproval letters received by numerous sailors stationed at Plaintiffs' commands and at other commands.  The carbon copy disapproval letters demonstrate a "blanket disapproval" of religious accommodation requests regardless of factors articulated in the initial requests.  Blanket disapprovals of religious accommodation requests violate military service members' religious liberties and the right to case-by-case consideration and review as specified in DOD INSTRUCTION 1300.17 and as mandated by RFRA, which requires the government to demonstrate that the compelling interest test is satisfied through application of the challenged mandate "to the person"—the particular claimant whose sincere exercise of religion is being substantially burdened.  Based on clearly established law, Defendants have not, nor could they, satisfy that standard with regard to Plaintiffs.  (FAC ¶ 72).

Plaintiffs have been, and will continue to be, punished as a result of their sincerely held religious beliefs.

---

pending."  Consequently, the presence of Navy SEAL 4 in this litigation is sufficient to compel the Court to hear and decide the issues presented.  *See infra*.

### D.        Substantial Burden on Plaintiffs' Religious Exercise.

The punitive measures that Defendants have and will impose upon Plaintiffs for exercising their religion and objecting to the Vaccine Mandate on religious grounds include, but are not limited to, removal from special warfare operations, adverse fitness reports, loss of special duty pay and benefits, loss of education and training opportunities, separation from the service, loss of reputation, and loss of personal decorations and insignia, specifically including the Special Warfare / SEAL Trident insignia.  (FAC ¶ 74).

Because Plaintiffs are unvaccinated due to their sincerely held religious beliefs, they are currently being denied benefits, including tuition assistance, benevolence support such as Transition Assistance Programs, which include DOD SkillBridge and the Warrior Care Program (Care Coalition) (https://www.socom.mil/care-coalition), among other support programs.  Because Plaintiffs are unvaccinated due to their sincerely held religious beliefs, they are not eligible for promotions, regular leave to visit family members, permanent change of station (PCS) orders, nor are they eligible to attend any schools, among other punishments.  Denying Plaintiffs these benefits does not promote any legitimate government interest nor does it serve any legitimate government purpose.  Rather, Defendants' actions are punitive, and Defendants are taking these actions to punish Plaintiffs for exercising their religion.  The denial of these benefits substantially burdens Plaintiffs' religious exercise.  (FAC ¶ 75).

Another punitive measure imposed by Defendants against Plaintiffs includes removing Plaintiffs from the ranks of the Navy SEALs and placing them in another fleet command.  In other words, Defendants will force Plaintiffs to serve in close quarters alongside other Navy sailors deployed on a ship or at a shore station, but Defendants will not permit Plaintiffs to serve alongside their fellow SEALs.  (FAC ¶ 77).

Navy SEAL 4 has received an adverse fitness report.  He was formally accused of the "Commission of a Serious Offense" for exercising his religious beliefs.  And he was notified that he would be separated "by reason of Misconduct –Commission of a Serious Offense . . . [a]s evidenced by [his] refusal of the COVID-19 vaccination."  Navy SEAL 4's reputation has already been harmed as a result.  (FAC ¶ 78).

All Plaintiffs remain subject to criminal penalties, including confinement and loss of pay, for objecting to the Vaccine Mandate on religious grounds.  As stated in Plaintiffs' page 13 entries in their official services records, the Vaccine Mandate is "a lawful order.  Refusal to be fully vaccinated against COVID-19, absent an approved exemption, will constitute a failure to obey a lawful order and is punishable under the Uniform Code of Military Justice and/or may result in administrative action."  (FAC ¶ 79).

Consequently, in addition to having to suffer through adverse separation proceedings (which have been momentarily put on hold) and threats of criminal prosecution, Defendants brand and stigmatize Plaintiffs as criminals, consider them less capable of serving in the military, reduce their stature among their peers and officers, stunt the growth of their careers, and threaten to derail their chosen calling or access to unique educational and future career opportunities on account of their sincerely held religious beliefs.  These injuries are imminent in that some have occurred and some are ongoing or, at the latest, will begin upon completion of the inevitable adverse separation proceedings, which have already been initiated for Navy SEAL 4 but are temporarily on hold.  Damages are an appropriate relief under RFRA for these injuries and violations.  These injuries cannot be completely remedied by administrative procedures or administrative proceedings.  (FAC ¶ 80).

A judicial determination that the enforcement of the Vaccine Mandate against Plaintiffs is unlawful would redress the stigma and reputational injury of which Plaintiffs complain in ways in which no administrative procedure could remedy, and it will provide protection from future harm by declaring such mandates unlawful.  (FAC ¶ 81).

Defendants have denied Plaintiffs travel in the past and are still currently restricting unvaccinated personnel travel.  However, in recent months, there was approximately an eight-week window between April and May (2022) where Defendants allowed Plaintiffs to travel, but by the end of May, Defendants restricted Plaintiffs' travel yet again.  Navy SEAL 1 was scheduled to be on a training trip in early June (2022), but a week before he was told to cancel his orders.  This constant back and forth between preventing Plaintiffs from working, and then allowing them to work, then preventing them again is, as Navy SEAL 1 put it: "like being in a washing machine and not knowing which direction we should be focused on.  Do we prepare to get kicked out or do we focus on our jobs?"  This uncertainty of Plaintiffs' future and the random back and forth are taking their toll on Plaintiffs, and they are taking their toll on Plaintiffs' families.  (FAC ¶¶ 82, 83).

Plaintiffs are currently suffering harm as a result of the Vaccine Mandate in that they are being treated disparately on account of their religious objection to the mandate, they have been stigmatized, they have lost educational benefits and opportunities, and they have been denied travel and skill development opportunities, among the other harms set forth in the First Amended Complaint.  In sum, all Plaintiffs are currently suffering a cognizable injury caused by the Vaccine Mandate.  (FAC ¶ 84).

**E.     No Compelling Interest and Availability of Less Restrictive Means.**

While the government may have an interest in mandating COVID-19 vaccination, that interest is not compelling.  The readiness and fitness of the military force is not enhanced by

mandating a vaccine that is experimental, ineffective, and dangerous.  The readiness and fitness of the military force is not advanced by removing Plaintiffs from their special operator status as Navy SEALs and sending them to other fleet billets or discharging them from the military because Plaintiffs object to the Vaccine Mandate based on their sincerely held religious beliefs.  (FAC ¶¶ 85-87).

Vaccinations to prevent reinfection of recent or even remote history of any viral infection have never been mandated or even recommended by any health prevention organization.  Normal biology and virology principles are violated when a patient is vaccinated to produce neutralizing antibodies which already exist in the patient.  There would be no physiologic reason to vaccinate anyone with reasonable titers of neutralizing antibodies; this would be considered a procedure which is not medically indicated.  (FAC ¶¶ 126, 127).

Plaintiffs have natural immunity.  All Plaintiffs have contracted COVID-19 and recovered with little difficulty.  As a result, Plaintiffs have active antibodies that have been proven to be more protective to their personal health than the vaccines.  These antibodies also more effectively reduce the transmission of COVID-19 to their fellow sailors.  (FAC ¶ 101; *see also id*. FAC ¶¶ 34, 37, 38, 96, 103, 112, 117, 129, 130).

Plaintiffs are extraordinarily fit.  The physical demands of being a SEAL require them to be some of the most physically fit men in the country, if not the world.  Consequently, Plaintiffs belong to a demographic that is the least susceptible to suffering any adverse consequences from COVID-19.  However, Plaintiffs remain at risk of adverse and serious health consequences from the COVID-19 vaccines.  Indeed, the risks associated with the investigational COVID-19 vaccines, particularly for young healthy men such as Navy SEALs, outweigh any theoretical benefits, are not minor or unserious, and many of those risks are unknown or have not been adequately

quantified nor has the duration of their consequences been evaluated. Consequently, the mandatory administration of COVID-19 vaccines creates an unethical, unreasonable, clinically unjustified, unsafe, and unnecessary risk to servicemembers, specifically including Plaintiffs. (FAC ¶¶ 14, 88-97, 104-08).

No Navy SEAL has died, let alone been hospitalized, by COVID-19 even though this virus has been with us for over two years. Plaintiffs are aware of other Navy SEALs who have had COVID-19, and the symptoms have all been those similar to a weak case of the seasonal flu, with the most common symptom being a loss of smell or taste. Navy SEALs suffer far more injuries, some of which are disabling, from their routine and rigorous training than anything COVID-19 has caused. (FAC ¶¶ 115, 116).

For more than a year prior to the introduction of the COVID-19 vaccines and when the pandemic was in full force, Plaintiffs and their commands continued to execute mission requirements. They deployed, trained, and conducted operational and non-operational tasks worldwide, with minimum impact due to COVID-19. Consequently, during the pandemic and without the benefit of a vaccine, Plaintiffs and their fellow SEALs traveled and conducted operations as well as exercises. In fact, they travelled within and outside of CONUS (the continental United States) for training. COVID-19 had no impact on Plaintiffs' operational capabilities or the operational capabilities of their commands. (FAC ¶ 136; *see also id*. at ¶¶ 137-41).

The COVID-19 vaccines are not safe. These genetic vaccines (Pfizer, Moderna, Johnson & Johnson ["J & J"]) skipped testing for genotoxicity, mutagenicity, teratogenicity, and oncogenicity. In other words, it is unknown whether or not these products will change human genetic material, cause birth defects, reduce fertility, or cause cancer. The Pfizer, Moderna, and J

& J vaccines are considered "genetic vaccines," or vaccines produced from gene therapy molecular platforms, which, according to FDA regulatory guidance, are classified as gene delivery therapies and should be under a 15-year regulatory cycle with annual visits for safety evaluation by the research sponsors.  (FAC ¶ 104).

Reports through the Vaccine Adverse Event Reporting System (VAERS), which collects data on a voluntary basis from health care providers and patients, show dramatic and concerning outcomes.  The total number of adverse events in VAERS from the three COVID-19 gene therapy vaccines was 1,131,984 as of February 18, 2022, while all of the other vaccines combined since 1990 reported only 872,313.  In addition, the number of deaths from this gene therapy was 24,402 during this same period, while all the other vaccines combined from 1990 total 9,573.  Finally, the number of permanent disabilities caused by this experiment was 44,512, while all of other vaccines combined have contributed to only 20,861 permanent disabilities.  As of June 19, 2022, the following numbers related to the COVID-19 gene therapy vaccines were reported in VAERS: 31,533 deaths; 56,215 disabilities; 1,201 congenital abnormalities; 178,116 hospitalizations; and 138,394 emergency room visits.  (FAC ¶ 105).

In January 2022, Department of Defense "whistleblowers" revealed disturbing information regarding dramatic increases in medical diagnoses among military personnel.  The concern is that these increases are related to the COVID-19 vaccines that service members, including Plaintiffs, have been mandated to take.  Based on data from the Defense Medical Epidemiology Database (DMED), these whistleblowers found a significant increase in registered diagnoses on DMED for miscarriages, cancer, and many other medical conditions in 2021 compared to a five-year average from 2016-2020.  (FAC ¶¶ 106-07).

The available COVID-19 vaccines are not effective against current and future variants of COVID. Each variant is the result of an immune escape mechanism built into the corona virus family. The virus survives by escaping our current immune system and mutating away from the original or native form of the virus. The three currently available COVID-19 gene therapy vaccines focused on the native spike protein production within our bodies to produce neutralizing antibodies effective only for the native form and perhaps the first couple of mutations. As more and more humans either contract the virus or become fully immunized with the gene therapy, we reach herd immunity, and the virus has no choice but to mutate to survive. (FAC ¶ 109).

Before mandating vaccines that violate the sincerely held religious beliefs of military personnel, the Department of Defense should study operators with natural immunity and establish a base control group to monitor and study vaccinated and unvaccinated members for long term control. The Department of Defense has no interest in doing so because the Vaccine Mandate is purely political and not based on science. (FAC ¶ 120).

Testing, wearing a mask (which the government claims is an effective way to stop the spread of COVID), social distancing, reporting symptoms and close contacts, and available therapeutics and treatments are all less restrictive means of promoting the government's interests without violating Plaintiffs' sincerely held religious beliefs. (FAC ¶¶ 40, 133).

In summary, as the facts demonstrate (1) the pandemic is over; (2) the vaccines are ineffective as they were developed for now extinct variants of COVID-19; (3) effective therapeutics, treatments, and other less restrictive means to advance the government's interests are available; (4) natural immunity provides better protection from COVID-19 than any of the current vaccines, and the Navy's own regulations acknowledge this fundamental principle of virology;[2]

---

[2] Pursuant to the Navy's own regulations, exemptions to vaccines are provided if there is

(5) Plaintiffs belong to the demographic that is the least susceptible to any bad outcomes caused by COVID-19, and this is evidenced by the fact that no Navy SEAL has suffered any adverse outcomes from having contracted COVID-19, including Plaintiffs; and (6) there are serious adverse health consequences caused by the COVID-19 vaccines to individuals such as Plaintiff. (FAC ¶¶ 38-40, 85-145).  This last fact undermines any claim that granting medical exemptions is different because medically exempt individuals could be harmed by getting the vaccine.  Plaintiffs have a better chance of being sidelined by an adverse reaction to the vaccine than being sidelined by a virus which they already had and from which they fully recovered. And Plaintiffs are certainly more likely to be sidelined by the intense and dangerous training they undergo on a regular basis as Navy SEALs.  (*See, e.g.,* FAC ¶¶ 115-17).

Since the inception of the Vaccine Mandate, Plaintiffs have remained serving, meritoriously, as Navy SEALs.  Plaintiffs' service has been beneficial to the Navy, and it has had no dramatic or negative impact on their units.  Most certainly, whatever minor inconveniences created by their vaccine status were caused by the Vaccine Mandate itself and not Plaintiffs' actions, and these inconveniences do not equate to a compelling interest.  (FAC ¶ 146).

## ARGUMENT

### I.    Defendants' Exhaustion Argument Is Wrong.

Defendants' exhaustion argument is wrong.[3]   RFRA does not have an exhaustion requirement.  *See, e.g., Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016) ("Congress

---

"[e]vidence of immunity based on serologic tests, documented infection, or similar circumstances."  BUMEDINST 62330.15B]; *see* FAC ¶ 123).  Here, basic concepts of virology are discarded when it comes to the highly-politicized COVID-19 vaccine.  Natural immunity is the best defense against a virus, as the Navy's regulations confirm.  (*See* FAC ¶¶ 34, 37, 38, 96, 101, 103, 112, 117, 129, 130).

[3] A review of the principal cases relied upon by Defendants demonstrates that their arguments are incorrect.  For example, Defendants cite to *Roberts v. Roth*, --- F. Supp. 3d ---, 2022 WL 834148,

nowhere inserted any exception for the U.S. Armed Forces from RFRA's application or any exhaustion requirement, as it did, for example, in RFRA's 'sister statute,' the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. . . . ; *see also Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) ('We decline . . . to read an exhaustion requirement into RFRA where the statute contains no such condition, . . . and the Supreme Court has not imposed one.').").  If Congress wanted to create such a requirement (for the military or otherwise), it certainly knew how to do so.  *See, e.g.,* 42 U.S.C. § 1997e(a), Prison Litigation Reform Act, (providing that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted").  This Court has no authority to change the statutory scheme established by Congress.

Additionally, "military interests do not always trump other considerations, and [the Supreme Court has] not held that they do."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 26 (2008).  And

---

at *4–5 (D.D.C. Mar. 21, 2022), and parenthetically state, "dismissing service member's RFRA claim where his discharge proceeding was still pending." (Defs.' Mem. at 9).  However, the case does not address the exhaustion issue.  Per the court, "Because the Court concludes that it does not have jurisdiction to hear this case, it will not reach defendants' other, related arguments, such as that plaintiff failed to exhaust administrative remedies."  *Id.* at *15 n.4.  *Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021), is distinguishable on its facts, *see supra*.  *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986), which Plaintiffs discuss in greater detail later in this memorandum, is not a RFRA case.  Indeed, the majority of the cases relied upon by Defendants are not RFRA cases.  *See Muhammad v. Sec'y of Army*, 770 F.2d 1494 (9th Cir. 1985) (non RFRA case); *Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (non RFRA case); *Sanders v. McCrady*, 537 F.2d 1199 (4th Cir. 1976) (non RFRA case); *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155 (D.C. Cir. 2007) (non RFRA case); *Parisi v. Davidson*, 405 U.S. 34 (1972) (non RFRA case); *Bowen v. City of N.Y.*, 476 U.S. 467 (1986) (non RFRA case); *Heidman v. United States*, 414 F. Supp. 47 (N.D. Ohio 1976) (non RFRA case); *Cargill v. Marsh*, 902 F.2d 1006 (D.C. Cir. 1990) (non RFRA case); *Dowds v. Bush*, 792 F. Supp. 1289 (D.D.C. 1992) (non RFRA case).  The only RFRA case from this jurisdiction directly on point supports Plaintiffs' position.  *See Singh v. Carter*, 168 F. Supp. 3d 216 (D.D.C. 2016) (finding no exhaustion requirement under RFRA).

there is nothing uniquely "military" about a vaccine mandate such that this Court would be incompetent to apply well-established law. Legal challenges to vaccine mandates are not beyond the judicial competency of the courts. *See, e.g., Nat'l Fed'n of Indep. Bus. v. Dep't of Labor, OSHA*, 142 S. Ct. 661, 664-65 (2022) (issuing stay and holding that the applicants were likely to succeed on the merits of their claim that the Secretary of Labor lacked authority to impose the challenged vaccine mandate); *see generally Jacobson v. Commonwealth of Mass.*, 197 U.S. 11 (1905) (upholding a mandatory vaccination law against a substantive due process challenge); *but see Agudath Isr. v. Cuomo*, 983 F.3d 620, 635 (2d Cir. 2020) (noting that "*Jacobson* predated the modern constitutional jurisprudence of tiers of scrutiny, was decided before the First Amendment was incorporated against the states, and did not address the free exercise of religion") (internal quotations and citation omitted).

The broadly enforced and patently unlawful Vaccine Mandate does not require the Court to tamper with established command relationships. In other words, this challenge is nothing like *Bois v. Marsh*, 801 F.2d 462 (D.C. Cir. 1986), a case upon which Defendants rely. (Defs.' Mem. at 1, 9). *Bois* involved a personal dispute between a junior officer and a senior officer involving allegations of sexual discrimination. *Bois*, 801 F.2d at 463-66. Per the D.C. Circuit:

> Permitting Bois to attempt to prove that she was victimized by discrimination would necessarily require a civilian court to examine in detail the personnel and other command decisions which Bois claims were discriminatory. Such scrutiny would also likely require testimony by Army personnel about command decisions by Bois's superiors. Adjudication of her due process attack on Army procedures for handling internal complaints of discrimination would obviously require this court to intrude on the "peculiar and special relationship" of military personnel to their superiors.

Id. at 467-68. This case is not *Bois*. Moreover, the *Bois* court "recognize[d] that the exhaustion doctrine is subject to exceptions, even in the context of suits alleging wrongs suffered incident to military service. The doctrine is not, for example, applied where exhaustion would in all likelihood

be futile, or where no real possibility of adequate relief exists." *Id.* at 468 (internal citations and quotations omitted). As discussed further below, both exceptions apply here.

Indeed, this Court had no difficultly exercising its judicial authority to preliminarily enjoin the restriction on the service of transgendered individuals in the military even though such a policy did not implicate clearly established federal law such as RFRA. *Doe v. Trump*, 275 F. Supp. 3d 167 (D.D.C. 2017), *rev'd sub nom. Doe v. Shanahan*, 755 F. App'x 19, 25 (D.C. Cir. 2019) ("In light of the substantial constitutional arguments and the apparent showing that the policy accommodates at least some of Plaintiffs' interests, we think that the public interest weighs in favor of dissolving the injunction."). More to the point, this Court did not decline to decide the matter because the servicemembers failed to exhaust administrative remedies.

Per Defendants' argument, *any and all* harm caused by *any* DoD policy, which would necessarily include a policy of excluding transgendered persons (or other LGBTQ persons or minorities or certain religious adherents) from service, can be remedied by *some* administrative process. In other words, per Defendants, DoD policy is beyond judicial review, rendering RFRA (and the U.S. Constitution) virtually meaningless in the military context. However, as one court put it: "Defendants essentially want the Court to accord a degree of deference that is tantamount to unquestioning acceptance, which is not the proper function of a court in a RFRA case or a First Amendment case." *See Poffenbarger v. Kendall*, No. 3:22-cv-1, 2022 U.S. Dist. LEXIS 34133, at *54 (S.D. Ohio Feb. 28, 2022) ("The issue is whether in light of traditional deference granted to the military by the courts they have nonetheless managed to cross the line separating the constitutional from the unconstitutional. . . . The Court believes that, given the issue and evidence presented as set forth above, there is a sufficient showing at this stage that the Defendants have nonetheless crossed that line. Defendants essentially want the Court to accord a degree of

deference that is tantamount to unquestioning acceptance, which is not the proper function of a court in a RFRA case or a First Amendment case.") (internal quotations and citations omitted). Indeed, this Court previously and implicitly rejected Defendants' argument, stating as follows:

> Absent an injunction, Plaintiffs will suffer a number of harms *that cannot be remediated after that fact even if Plaintiffs were to eventually succeed in this lawsuit*.  The impending ban brands and stigmatizes Plaintiffs as less capable of serving in the military, reduces their stature among their peers and officers, stunts the growth of their careers, and threatens to derail their chosen calling or access to unique educational opportunities.  *See Elzie v. Aspin*, 841 F. Supp. 439, 443 (D.D.C. 1993) (holding that plaintiff would suffer irreparable injury in the absence of preliminary injunctive relief because "plaintiff faces the stigma of being removed from active duty as a sergeant in the Marine Corps—a position which he has performed in a sterling fashion for eleven years—and labeled as unfit for service solely on the basis of his sexual orientation, a criterion which has no bearing on his ability to perform his job").  Money damages *or other corrective forms of relief* will not be able to fully remediate these injuries once they occur. . . .

*Doe*, 275 F. Supp. 3d at 216 (Kollar-Kotelly, J.) (emphasis added).  Similar harms exist here.

As noted in the First Amended Complaint, in addition to having to suffer through adverse separation proceedings (which have been *momentarily* put on hold) and credible threats of criminal prosecution, Defendants branded and stigmatized Plaintiffs as criminals, consider them less capable of serving in the military, reduced their stature among their peers and officers, stunted the growth of their careers, and threaten to derail their chosen calling or access to unique educational and future career opportunities on account of their sincerely held religious beliefs.  These injuries are imminent, some have occurred, and some are ongoing or, at the latest, will begin upon completion of the inevitable adverse separation proceedings, which have already been initiated for Navy SEAL 4 but are temporarily on hold (ironically, due to an injunction issued by another federal court, *see Navy SEALS 1-26 v. Austin*, No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 65937 (N.D. Tex. Mar. 28, 2022)).  In addition to declaratory and injunctive relief, damages are an

appropriate relief under RFRA for these injuries and violations—injuries which cannot be completely remedied by administrative procedures or administrative proceedings.

Moreover, a *judicial* determination that the enforcement of the Vaccine Mandate against Plaintiffs violates the U.S. Constitution and RFRA would redress the stigma and reputational injury of which Plaintiffs complain in ways in which no administrative procedure could remedy, and it will provide protection from future harm by declaring the mandate unlawful and enjoining its enforcement.  Neither administrative procedures nor administrative remedies can fully redress the harm caused by the Vaccine Mandate and its enforcement against Plaintiffs (including Navy SEAL 3, who recently retired under the cloud created by this unlawful mandate).[4]  (*See* FAC ¶ 81).

---

[4] As a retiree, Navy SEAL 3 is a member of the Fleet Reserve.  "Members of the Fleet Reserve are not only paid for their current status; their status also requires that they maintain readiness for future recall. . . .  They are subject to recall by the Secretary of the Navy 'at any time.' . . .  They are also required to '[m]aintain readiness for active service in the event of war or national emergency,' to keep Navy leadership apprised of their home address and 'any changes in health that might prevent service in time of war,' and remain 'subject *at all times to laws, regulations, and orders* governing [the] Armed Forces.'"  *United States v. Begani*, 81 M.J. 273, 278-79 (C.A.A.F. 2021) (citations omitted) (emphasis added).  The Vaccine Mandate is a regulation and order governing the Armed Forces.  Additionally, as a retired member of the military, Navy SEAL 3 will have access to naval/military installations to obtain benefits he earned for his lengthy service, such as medical care, commissary and exchange privileges, and access to the various restaurants/clubs on the installations.  As a result, Navy SEAL 3 will continue to have close, personal, and direct contact with other members of the military.  More specifically, Navy SEAL 3 has retired near the naval/military installations where his former commands and the commands of Navy SEALs 1, 2, and 4 are located.  Navy SEAL 3 will continue to have close, personal, and direct contact with naval personnel, including Navy SEALs.  Consequently, if Defendants now claim that Navy SEAL 3 is exempt from the Vaccine Mandate, then this is further evidence demonstrating that the government lacked a compelling interest in the first instance to demand the vaccine.  Moreover, because of the Vaccine Mandate, the Navy retains the ability via existing policy to limit Navy SEAL 3's access to medical facilities and other facilities on the naval installations, and his access to other Navy SEALs may also be limited due to his vaccination status.  That is, in addition to the discrimination he suffered while on active duty and the adverse entries in his otherwise stellar service record, Navy SEAL 3 will continue to be discriminated against because he objects to the Vaccine Mandate on religious grounds. (*See* Navy SEAL 3 Decl. ¶¶ 2-8 at Ex. 1).

Defendants have denied Plaintiffs travel in the past and are still currently restricting unvaccinated personnel travel.  However, there was approximately an eight-week window between April and May (2022) where Defendants allowed Plaintiffs to travel, but by the end of May, Defendants restricted Plaintiffs' travel yet again.  This constant back and forth between preventing Plaintiffs from working, and then allowing them to work, then preventing them again is, as Navy SEAL 1 put it: "like being in a washing machine and not knowing which direction we should be focused on.  Do we prepare to get kicked out or do we focus on our jobs?"  The uncertainty of Plaintiffs' futures and the random back and forth are taking their toll on Plaintiffs, and they are taking their toll on Plaintiffs' families.  (*See* FAC ¶¶ 82, 83).

In sum, Plaintiffs are currently suffering harm as a result of the Vaccine Mandate in that they are being treated disparately on account of their religious objection to the mandate, they have been stigmatized, they have lost educational benefits and opportunities, and they have been denied travel and skill development opportunities.  (*See* FAC ¶ 84).

As noted, just because this mandate arises in the military context does not preclude this Court from deciding the matter under RFRA or the U.S. Constitution (First and Fifth Amendments).  Congress expressly made the military (including Defendants) subject to RFRA.  42 U.S.C. § 2000bb-2(1) (applying RFRA to any "branch, department, agency, instrumentality, and official . . . of the United States"); *see also* DOD INSTRUCTION 1300.17 (establishing DoD policy applying RFRA and the Free Exercise Clause in the military context).  Defendants do not, nor could they, refute this fundamental fact.  At the end of the day, Defendants are asking this Court to abdicate its duty "to say what the law is."  *NLRB v. Canning*, 573 U.S. 513, 525 (2014) ("[I]t is the 'duty of the judicial department . . . to say what the law is.'") (quoting *Marbury v. Madison*, 5 U.S. 137 (1803)).  The Court should reject the invitation.

Additionally, "[c]ourts have discretion to excuse the [exhaustion] requirement where the litigant's interest in an immediate judicial forum clearly outweighs the institutional interests underlying the exhaustion requirement. . . .  For example, exhaustion may be excused if delaying judicial review would cause irreparable injury, if the agency is not competent to address the issue or to grant effective relief, or if further pursuit of an administrative remedy would be futile." *Ass'n of Flight Attendants-CWA, AFL-CIO v. Chao*, 493 F.3d 155, 159 (D.C. Cir. 2007); *see also Von Hoffburg v. Alexander*, 615 F.2d 633, 638 (5th Cir. 1980) ("Notwithstanding the strong policies favoring the exhaustion of administrative remedies in military cases, several established exceptions to the exhaustion doctrine have been held applicable to military discharge actions. First, only those remedies which provide a genuine opportunity for adequate relief need be exhausted. . . .  Second, exhaustion is not required when the petitioner may suffer irreparable injury if he is compelled to pursue his administrative remedies. . . .  Third, the doctrine will not apply when administrative appeal would be futile (the futility exception). . . .  Finally, exhaustion may not be required, under some precedents, if the plaintiff has raised a substantial constitutional question.") (internal citations omitted).

Here, Plaintiffs have already suffered irreparable injury, as noted above, and Defendant Gilday, the final adjudicative authority for obtaining the requested relief (*i.e.*, a religious *exemption* to the Vaccine Mandate) has made a final decision on Navy SEAL 4's request, and he has a policy and practice of denying all such requests received from Navy SEALs.  (FAC ¶¶ 66, 67, 68, 70). Any further administrative review or remedy is futile.  As the D.C. Circuit noted, "exhaustion is especially important where allowing the litigants to proceed in federal court would deprive the agency of *any* opportunity to exercise its discretion or apply its expertise." *Chao*, 493 F.3d at 159. Here, the government put in place a review process, requiring Plaintiffs to meet with a chaplain,

to submit a request to their commands, to appeal the adverse decision to the reviewing authority, and then to seek a final appeal to the CNO.  The government has had *multiple* opportunities "to exercise its discretion or apply its expertise," and it has done so to the detriment of Plaintiffs. There is no exhaustion requirement at issue here.  None.

Finally, in *Sanders v. McCrady*, 537 F.2d 1199 (4th Cir. 1976), a cased cited by Defendant Gilday (Gilday Mem. at 7), the court stated as follows:

> [W]e held in *United States ex rel. Brooks v. Clifford*, 412 F.2d 1137, 1139-41 (4th Cir. 1969), that a soldier need not exhaust administrative remedies before petitioning for a writ of habeas corpus on the ground that he is a conscientious objector.  We found that Brooks' remedy before the Army Board for Correction of Military Records was inadequate because Brooks and others like him would '. . . be required to litigate administratively during a period of which each hour of each day they are required to engage in conduct inimical to their consciences or be subject to court martial, with the added risk that in the ordinary course of the operations of the military, they may be ordered to a duty even more offensive to them.' 412 F.2d at 1141.

*Id*. at 1201.  Here, Plaintiffs are suffering ongoing punishment and disparate treatment because they conscientiously object, based on their firmly held religious beliefs, to the Vaccine Mandate. There are no adequate administrative remedies available.  *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Navy Seal 1 v. Austin*, No. 8:21-cv-2429-SDM-TGW, 2022 U.S. Dist. LEXIS 31640, at *63 (M.D. Fla. Feb. 18, 2022) ("Requiring a service member either to follow a direct order contrary to a sincerely held religious belief or to face immediate processing for separation or other punishment undoubtedly causes irreparable harm."); *Air Force Officer v. Austin*, No. 5:22-cv-00009-TES, 2022 U.S. Dist. LEXIS 26660, at *32-33 (M.D. Ga. Feb. 15, 2022) ("[F]ocusing exclusively on financial harm misses the mark because the loss of First Amendment freedoms, even for minimal periods of time unquestionably constitutes irreparable injury. . . .   Since Defendant Miller ultimately denied Plaintiff's religious

accommodation request and essentially infringed upon the free exercise of her religion, Plaintiff has suffered an irreparable injury. . . . [T]he choice to adhere to her religious beliefs or modify her behavior to violate those beliefs suffices to trigger constitutional protection. . . . Thus, Plaintiff has satisfied the second element to obtain a preliminary injunction.") (internal punction, quotations, and citations omitted); *U.S. Navy SEALS 1-26 v. Biden*, Civil Action No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 2268, at *35 (N.D. Tex. Jan. 3, 2022) ("The crisis of conscience imposed by the [vaccine] mandate is itself an irreparable harm. . . .").

> As stated by the D.C. Circuit,
>
> "[S]uits for declaratory and injunctive relief against the threatened invasion of a constitutional right do not ordinarily require proof of any injury *other than the threatened constitutional deprivation itself*." *Davis v. District of Columbia*, 158 F.3d 1342, 1346, 332 U.S. App. D.C. 436 (D.C. Cir. 1998). Thus, "[a]lthough a plaintiff seeking equitable relief must show a threat of substantial and immediate irreparable injury, *a prospective violation of a constitutional right constitutes irreparable injury for these purposes*." *Id*. (internal citation omitted).

*Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (emphasis added). In short, there is no basis for this Court to refuse to decide this case.

## II.    Plaintiffs' Claims Are Ripe.

Defendants' ripeness argument is simply a recasting of their exhaustion argument (*see* Defs.' Mem. at 10 ["Plaintiffs' failure to pursue administrative remedies also renders their claims unripe."]), and it fails for similar reasons. Moreover, Defendants' ripeness argument is based on a false premise that the only actionable harm is a discharge (*see generally id*. at 11-12 [arguing that "Plaintiffs have not experienced the effects of a military discharge"]), which, ironically, is only stalled because of an injunction issued by another federal court. *See Navy SEALS 1-26 v. Austin*, 2022 U.S. Dist. LEXIS 65937.

Additionally, it is disingenuous to argue that the claims advanced by Navy SEALS 1, 2, and 3 are not ripe because Defendant Gilday has not yet made a final decision on their requests for a religious exemption, requests which the Navy has had for _many_ months,[5] but then argue that the Vaccine Mandate is so important that it satisfies strict scrutiny—the "most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997); *see also Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) ("That standard 'is not watered down'; it 'really means what it says.'") (internal citation omitted).   These delays completely undermine any legitimate claim that the government has a compelling interest in enforcing the Vaccine Mandate.

Moreover, as set forth in the First Amended Complaint, any such appeal is futile as the CNO has a policy and practice of making blanket denials of such appeals, particularly for Navy SEALs, and regardless of the outcome of the appeal, Plaintiffs have been and will continue to be punished for asserting a religious objection to the Vaccine Mandate.

At the end of the day, ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete

---

[5] At a minimum, Navy SEAL 4's claims are ripe for review.  The doctrines of ripeness and standing "originate" from the same Article III limitation. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014).  Quite often, Article III standing and ripeness issues "boil down to the same question." *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 128, n. 8 (2007).  And it is well established that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement," thereby triggering the court's jurisdiction. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (finding it sufficient that at least one plaintiff had standing to invoke the Court's jurisdiction to hear and decide the case); *ACLU v. NSA*, 493 F.3d 644, 652 (6th Cir. 2007) ("[F]or purposes of the asserted declaratory judgment . . . it is only necessary that one plaintiff has standing.").

way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  None of these concerns exist here.

There is nothing abstract about this legal challenge.  It is plainly fit for judicial resolution. Defendants have made their decision to reject Plaintiffs' requests for a religious exemption (and Defendants have had plenty of time and opportunity to grant the exemption requests for all Plaintiffs had they desire to do so).  Plaintiffs have been harmed in a concrete way.  There are no prudential reasons for declining to hear and decide this case.  None.

"Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 808 (2003).  This case is fit for judicial review.  The Vaccine Mandate places a substantial burden on Plaintiffs' religious exercise, thereby requiring the Court to apply strict scrutiny—a well-known test that the Court should be quite familiar with applying.  And it is Defendants' burden to satisfy this standard, which they cannot do, particularly in light of the facts set forth in the First Amended Complaint.

The hardship to Plaintiffs of withholding court consideration is also evident.  Plaintiffs have already been harmed, and this harm will only continue and increase absent Court action. Plaintiffs are under constant pressure to surrender their religious beliefs in order to conform to the government's mandate.  *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (holding challenge ripe given that a contrary finding "may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity"); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (holding challenge ripe where respondents were "faced with a Hobson's choice" of compliance or penalty); *Navegar, Inc. v. United States*, 103 F.3d 994, 998-99 (D.C. Cir. 1997)

(holding challenge ripe because a threat of prosecution can put the threatened party "between a rock and a hard place"). But for the fact that another court was willing to address the matter and issue a class-wide injunction—that is, the court exercised its jurisdiction pursuant to its duty to do so, *see Navy SEALS 1-26 v. Austin*, 2022 U.S. Dist. LEXIS 65937—the harm today would be significantly greater. The Vaccine Mandate is alive and well, and Plaintiffs are subject to it. The case is ripe.

### III.    A Claim for Damages Is "Appropriate Relief" under RFRA.

Plaintiffs' claim for damages is authorized by RFRA, which Congress expressly applied to military officials, including Defendant Gilday.[6] There is no statutory exemption, and this Court has no authority to create one. *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020) ("[I]t would be odd to construe RFRA in a manner that prevents courts from awarding [damages]. Had Congress wished to limit the remedy to that degree, it knew how to do so. *See, e.g.*, 29 U.S.C. § 1132(a)(3) (providing for 'appropriate equitable relief'); 42 U.S.C. § 2000e-5(g)(1) (providing for 'equitable relief as the court deems appropriate'); 15 U.S.C. § 78u(d)(5) (providing for 'any equitable relief that may be appropriate or necessary').").

As set forth in *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020), "[a] damages remedy is not just 'appropriate' relief as viewed through the lens of suits against Government employees. It is also the *only* form of relief that can remedy some RFRA violations." In other words, under RFRA, Congress authorized a damages remedy—which is an appropriate relief. Defendant Gilday misreads *Tanzin* to conclude that damages would not be an "appropriate relief" against him simply because he is a high-ranking military official. But that is not what *Tanzin* says nor is it what the

---

[6] Plaintiffs are not advancing any claim for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (FAC ¶ 5).

case stands for.  Under RFRA, a damage claim is an appropriate remedy.  Consequently, if Plaintiffs can prove damages at trial against Defendant Gilday, then damages must be awarded as an "appropriate relief."

Defendant Gilday claims that permitting damages in this case would pose a threat to military discipline.  (Gilday Mem. at 10-11).  Plaintiffs disagree.  Damages would create an incentive for high-ranking military officials to comply with RFRA and the U.S. Constitution.  As stated by the court in *Air Force Officer v. Austin*, "[W]hat real interest can our military leaders have in furthering a requirement that violates the very document they swore to support and defend? . . .  [We all] want a military force strong enough to respect and protect its service members' constitutional and statutory religious rights."  2022 U.S. Dist. LEXIS 26660, at *34-35.  In short, allowing damages in this case would promote discipline and morale (as well as the rule of law).

Defendant Gilday argues that Plaintiffs must be limited to administrative remedies or injunctive relief.  (*See* Gilday Mem. at 12-13).  Yet, none of the available "administrative remedies" that he references (and which he also claims deprive this Court of its jurisdiction to hear this case, *see id.* at 6-7) provide for damages.  In short, damages may be "the only form of relief that can remedy [these] RFRA violations."

The *Feres* doctrine also does not apply here.  In *Feres*, the Court explained the foundation for this doctrine as follows:

> We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.  Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law.  We do not think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence. We cannot impute to Congress such a radical departure from established law in the absence of express congressional command.

*Feres v. United States*, 340 U.S. 135, 146 (1950).  As the Court said more recently in *Tanzin*:

To be sure, there may be policy reasons why Congress may wish to shield Government employees from personal liability, and <u>Congress is free to do so</u>. But there are no constitutional reasons why we must do so in its stead. To the extent the Government asks us to create a new policy-based presumption against damages against individual officials, we are not at liberty to do so. <u>Congress is best suited to create such a policy</u>.

*Tanzin*, 141 S. Ct. at 493 (emphasis added). If Congress does not want damages to be an available remedy under RFRA, then it is Congress's role, and not the role of this Court, to say so.

As the Court concluded in *Tanzin*: "We conclude that RFRA's express remedies provision permits litigants, when appropriate,[7] to obtain money damages against federal officials in their individual capacities." Money damages are appropriate here.

## IV. Defendant Gilday Does Not Enjoy Qualified Immunity for Violating Plaintiffs' Clearly Established Rights.

The defense of qualified immunity does not shield Defendant Gilday from liability for violating Plaintiffs' clearly established rights. When deciding this issue, the Court must "[p]resum[e] all of Plaintiff[s'] factual allegations are true." *Arrington v. United States Park Police*, No. 01-1391 (CKK), 2003 U.S. Dist. LEXIS 30547, at *9 (D.D.C. Sep. 30, 2003) (denying defense of qualified immunity at motion to dismiss stage).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Court stated the applicable standard as follows: government officials are protected from personal liability and thus enjoy qualified immunity only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. And "[t]his is

---

[7] The Court earlier described what "when appropriate" means. Per the Court, "A damages remedy is not just 'appropriate' relief as viewed through the lens of suits against Government employees. It is also the *only* form of relief that can remedy some RFRA violations. For certain injuries, such as respondents' wasted plane tickets, effective relief consists of damages, not an injunction. *See, e.g.*, *DeMarco v. Davis*, 914 F. 3d 383, 390 (CA5 2019) (destruction of religious property); *Yang v. Sturner*, 728 F. Supp. 845 (RI 1990), *opinion withdrawn* 750 F. Supp. 558 (RI 1990) (autopsy of son that violated Hmong beliefs)." *Tanzin*, 141 S. Ct. at 492.

not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted); *see also Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) ("'Clearly established' for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (internal quotations and citation omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the '*objective legal reasonableness*' of the action, . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819) (emphasis added). And "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Court mandated a two-step sequence for resolving qualified immunity claims. First, a court must decide whether the facts alleged or shown by a plaintiff make out a violation of a constitutional or statutory right. And second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. at 201; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (stating that courts have discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). As noted, whether a right is "clearly established" is ultimately an *objective*, legal analysis. As stated by the Supreme Court, "By defining the limits of qualified immunity essentially in *objective* terms, we provide no license to lawless conduct."

*Harlow*, 457 U.S. at 819 (emphasis added).  In other words, the Court must reject a "Sergeant Schultz Defense."

"In order to defeat qualified immunity at the motion to dismiss stage, plaintiff must allege facts that plausibly establish the individual defendants knew *or should have known* that the action [they] took within [their] sphere of official responsibility would violate plaintiff's rights." *Boatwright v. Jacks*, 239 F. Supp. 3d 229, 233 (D.D.C. 2017) (internal quotations and citation omitted) (emphasis added).

RFRA and its demands are not a military secret.  DOD INSTRUCTION 1300.17 "[e]stablishes DoD policy in furtherance of the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that Service members have the right to observe the tenets of their religion, or to observe no religion at all"; it "[e]stablishes DoD policy providing that an expression of sincerely held beliefs (conscience, moral principles, or religious beliefs) may not, in so far as practicable, be used as the basis of *any* adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment"; and it "[i]mplements requirements in Section 2000bb-1 of Title 42, United States Code (U.S.C.), also known as 'The Religious Freedom Restoration Act' (RFRA), and other laws applicable to the accommodation of religious practices for DoD to provide, in accordance with the RFRA, that DoD Components will normally accommodate practices of a Service member based on a sincerely held religious belief."  (FAC ¶ 43) (emphasis added).  Defendant Gilday, a senior military official, knew, or at least should have known, that his official actions denying requests for a religious exemption to the Vaccine Mandate would run afoul of RFRA's most demanding test.

Accordingly, at the time the Vaccine Mandate was issued and enforced, the law was clearly established that government officials, including Defendant Gilday, could not violate Plaintiffs'

sincerely held religious beliefs without satisfying strict scrutiny, and that this law applies to the Vaccine Mandate.  Thus, based on the *objective* legal reasonableness of Defendant Gilday's actions, assessed in light of the legal rules that were clearly established at the time they were taken *as applied to the factual allegations set forth in the First Amended Complaint* (facts which demonstrate that the mandate does not satisfy strict scrutiny), Defendant Gilday does not enjoy qualified immunity in this case.[8]  *See also Navy Seal 1 v. Austin*, No. 8:21-cv-2429-SDM-TGW, 2022 U.S. Dist. LEXIS 31640 (M.D. Fla. Feb. 18, 2022) (granting preliminary injunction); *Air Force Officer v. Austin*, No. 5:22-cv-00009-TES, 2022 U.S. Dist. LEXIS 26660 (M.D. Ga. Feb. 15, 2022) (granting preliminary injunction); *U.S. Navy SEALS 1-26 v. Biden*, Civil Action No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 2268 (N.D. Tex. Jan. 3, 2022) (granting preliminary injunction).

Indeed, Defendant Gilday's policy and practice of issuing blanket denials plainly (and objectively) violates the dictates of RFRA.  *See Doster v. Kendall*, No. 22-3702, 2022 U.S. App. LEXIS 25339, at *9 (6th Cir. Sep. 9, 2022) (denying the government's motion to stay a class-wide injunction issued against the vaccine mandate and noting that RFRA "allows the Department to impose that burden on a service member's exercise of [his] faith only as a last resort, after examining all the circumstances relevant to [his] individual case" and concluding that "[a] *de facto* policy to impose that burden upon class members in gross, regardless of their individual circumstances, *would seem rather plainly* to violate that restriction") (emphasis added).  Defendant Gilday's motion should be denied.

---

[8] It should not go unnoticed that Defendants did not move this Court to dismiss for failure to state a claim under Rule 12(b)(6).  And the reason is simple: the allegations in the First Amended Complaint plainly (and objectively) set forth facts establishing a clear violation of RFRA and the U.S. Constitution.

**CONCLUSION**

The Court should deny Defendants' motions to dismiss.

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
rmuise@americanfreedomlawcenter.org

/s/ *David Yerushalmi*
David Yerushalmi, Esq. (DC Bar No. 978179)
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20001
dyerushalmi@americanfreedomlawcenter.org
(646) 262-0500

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system.  Parties may access this filing through the court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: None.

AMERICAN FREEDOM LAW CENTER

*/s/Robert J. Muise*
Robert J. Muise, Esq.