IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAVY SEAL 1, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-00688 (CKK) |
| LLOYD AUSTIN, Secretary of Defense, *et al.*, | |
| Defendants. | |

**OMNIBUS REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 1

    I.      Plaintiffs Failed to Exhaust Administrative Remedies. ......................................... 1

    II.     Plaintiffs' Claims Are Not Ripe................................................................................ 7

    III.    Some Aspects of Plaintiffs' Claims Are Nonjusticiable, and Others Should Be
             Decided with Significant Deference to the Military. .............................................. 9

           A.     Many aspects of Plaintiffs' claims are not justiciable. .............................. 9

           B.     The Court must give the military significant deference in evaluating any
                 justiciable aspects of Plaintiffs' claims.................................................... 12

    IV.    Navy SEAL 3's Claims Are Moot. ........................................................................ 14

    V.     Damages Are Not "Appropriate Relief" Under RFRA For Plaintiffs' Individual-
            Capacity RFRA Claim Challenging the Execution of Military Policy................. 15

    VI.    Admiral Gilday is Entitled to Qualified Immunity. .............................................. 18

CONCLUSION...................................................................................................................... 23

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Adkins v. United States*,
    68 F.3d 1317 (Fed. Cir. 1995) ................................................................. 9

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) .............................................................................. 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................. 18

*Atherton v. D.C. Off. of Mayor*,
    706 F.3d 512 (D.C. Cir. 2013) ............................................................... 20

*Austin v. U.S. Navy SEALs 1–26*,
    142 S. Ct. 1301 (2022) ................................................................. 6, 8, 10

*Bois v. Marsh*,
    801 F.2d 462 (D.C. Cir. 1986) ....................................................... *passim*

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014) .............................................................................. 22

*Cent. Hudson Gas & Elec. Corp. v. EPA*,
    587 F.2d 549 (2d Cir. 1978) .................................................................... 5

*Chappell v. Wallace*,
    462 U.S. 296 (1983) ................................................................................ 3

*Church v. Biden*,
    573 F. Supp. 3d 118 (D.D.C. 2021) ................................................. 2, 3, 7

*Cioca v. Rumsfeld*,
    720 F.3d 505 (4th Cir.2013) ................................................................. 16

*Colonel Fin. Mgmt. Officer v. Austin*,
    No. 8:22-CV-1275-SDM-TGW, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022) .................. 12

*Cook v. Gates*,
    528 F.3d 42 (1st Cir. 2008) ................................................................... 13

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001) ............................................................................... 17

*Davis v. Scherer,*
    468 U.S. 183 (1984)...................................................................................................... 23

*Dist. of Columbia v. Wesby,*
    138 S. Ct. 577 (2018).............................................................................................. 20, 21

*Dodson v. Dep't of Army,*
    988 F.2d 1199 (Fed. Cir. 1993)...................................................................................... 10

*Doe v. Trump,*
275 F. Supp. 3d 167 (D.D.C. 2017),
    *vacated sub nom.*, *Doe 2 v. Shanahan*, 755 F. App'x 19 (D.C. Cir. 2019) ................................ 4

*Doe 2 v. Shanahan,*
    755 F. App'x 19 (D.C. Cir. 2019)................................................................................... 13

*Dowds v. Bush,*
    792 F. Supp. 1289 (D.D.C. 1992) .................................................................................... 2

*Fourte v. Spencer,*
    No. 18-cv-2023, 2019 WL 340713 (D.D.C. Jan. 28, 2019)...................................................... 6

*Fox v. District of Columbia,*
    794 F.3d 25 (D.C. Cir. 2015) ........................................................................................ 19

*Gilligan v. Morgan,*
    413 U.S. 1 (1973)................................................................................................... 9, 12

*Goldman v. Weinberger,*
    475 U.S. 503 (1986)................................................................................................... 13

*Harkness v. Sec'y of Navy,*
    858 F.3d 437 (6th Cir. 2017) ........................................................................................ 10

*Hodges v. Callaway,*
    499 F.2d 417 (5th Cir. 1974) ......................................................................................... 7

*Holt v. Hobbs,*
    574 U.S. 352 (2015).................................................................................................... 22

*Hope v. Pelzer,*
    536 U.S. 730 (2002).................................................................................................... 20

*J.D. v. Azar,*
    925 F.3d 1291 (D.C. Cir. 2019) ...................................................................................... 8

*Karnoski v. Trump*,
   926 F.3d 1180 (9th Cir. 2019) ............................................................ 14

*Klay v. Panetta*,
   758 F.3d 369 (D.C. Cir. 2014) ............................................................ 16

*Knick v. Austin*,
   No. 22-cv-01267, 2022 WL 2157066 (D.D.C. June 15, 2022)................... 3

*Kreis v. Sec'y of Air Force*,
   866 F.2d 1508 (D.C. Cir. 1989) ................................................... 9, 10, 12

*M.M.V. v. Garland*,
   1 F.4th 1100 (D.C. Cir. 2021)............................................................... 8

*Malley v. Briggs*,
   475 U.S. 335 (1986)............................................................................ 20

*Mark Short v. Berger*,
   No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022),
   *appeal dismissed*, 2022 WL 2421096 (9th Cir. May 17, 2022)................... 2

*Martin v. Stone*,
   759 F. Supp. 19 (D.D.C. 1991) ......................................................... 2, 5

*Miller v. Austin*,
   — F. Supp. 3d —, 2022 WL 3584666 (D. Wyo. Aug. 22, 2022)................ 3

*Nat'l Fed'n of Fed. Emps. v. United States*,
   905 F.2d 400 (D.C. Cir. 1990) ............................................................. 9

*Navy SEAL 1 v. Austin*,
   — F. Supp. 3d —, 2022 WL 710321 (M.D. Fla. Mar. 2, 2022)................ 12

*Navy SEAL 1 v. Austin*,
   — F. Supp. 3d —, 2022 WL 1294486 (D.D.C. Apr. 29, 2022),
   *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022).......................... *passim*

*North Dakota v. United States*,
   495 U.S. 423 (1990)............................................................................ 13

*Orloff v. Willoughby*,
   345 U.S. 83 (1953)................................................................... 9, 10, 13

*Palmieri v. United States*,
   896 F.3d 579 (D.C. Cir. 2018) ............................................................ 19

*Pettiford v. Sec'y of Navy*,
   774 F. Supp. 2d 173 (D.D.C. 2011) ........................................................................ 9

*Reilly v. Sec'y of the Navy*,
   12 F. Supp. 3d 125 (D.D.C. 2014) .......................................................................... 9

*Reinhard v. Johnson*,
   209 F. Supp. 3d 207 (D.D.C. 2016) .................................................................... 5, 8

*Roberts v. Roth*,
   No. CV 21-1797 (ABJ), 2022 WL 834148 (D.D.C. Mar. 21, 2022) ........................ 7

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ........................................................................................... 12, 13

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*,
   547 U.S. 47 (2006) .................................................................................................. 8

*Saucier v. Katz*,
   533 U.S. 194 (2001) .............................................................................................. 19

*Schlesinger v. Ballard*,
   419 U.S. 498 (1975) .............................................................................................. 13

*Singh v. McHugh*,
   109 F. Supp. 3d 72 (D.D.C. 2015) ........................................................................ 10

*Sossamon v. Texas*,
   563 U.S. 277 (2011) .............................................................................................. 15

*Tanzin v. Tanvir*,
   141 S. Ct. 486 (2020) ...................................................................................... 15, 16

*Taylor v. Reilly*,
   685 F.3d 1110 (D.C. Cir. 2012) ............................................................................ 19

*Taylor v. Riojas*,
   141 S. Ct. 52 (2020) ........................................................................................ 20, 21

*Toor v. Berger, Civ. A.*,
   No. 22-1004 (RJL), 2022 WL 3646565 (D.D.C. Aug. 24, 2022),
   *appeal filed*, No. 22-5234 (D.C. Cir. Sept. 8, 2022) ............................................ 11

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017) ............................................................................................ 8

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ............................................................................... 13

*United States v. Stanley*,
  483 U.S. 669 (1987) .................................................................................... 16

*Wilson v. Layne*,
  526 U.S. 603 (1999) .................................................................................... 22

*Youngbey v. Mar.*,
  676 F.3d 1114 (D.C. Cir. 2012) ................................................................. 19

**STATUTES**

10 U.S.C. § 1552 .............................................................................................. 17

42 U.S.C. § 2000bb-1 ................................................................................... 4, 16

**REGULATIONS**

32 C.F.R. § 723.10 ........................................................................................... 17

**LEGISLATIVE MATERIALS**

H.R. Rep. 103-88 (1993) .................................................................................. 3

S. Rep. No. 103-111 (1993) .............................................................................. 3

## PRELIMINARY STATEMENT

In their opposition to the motions to dismiss filed by Secretary Lloyd Austin, Secretary Carlos Del Toro, and Admiral Michael M. Gilday in their official capacities ("Official Capacity Defendants"), *see* ECF No. 44, and Admiral Gilday in his individual capacity, *see* ECF No. 45, Plaintiffs fail to demonstrate that any aspect of this lawsuit challenging the Department of Defense and Navy's COVID-19 vaccination policy should be allowed to proceed.[1] *See* Pls.' Br., ECF No. 48. Plaintiffs offer no compelling arguments that their claims are exempt from the requirement of exhaustion or that the claims are ripe and otherwise justiciable. They further cannot explain why damages would be an "appropriate" form of relief for their individual capacity RFRA claim against Admiral Gilday or why he should not be shielded by qualified immunity. Instead, Plaintiffs repeatedly insist that their RFRA and constitutional claims—which seek to enjoin a military policy promulgated by the Secretary of Defense himself and impose liability for its enforcement—should escape dismissal despite a substantial body of case law refusing to interfere with military administrative processes. The Court should reject Plaintiffs' arguments and dismiss the First Amended Complaint with prejudice.

## ARGUMENT

### I.      Plaintiffs Failed to Exhaust Administrative Remedies.

All four Plaintiffs have yet to exhaust their administrative remedies—a requirement that applies with special force to claims challenging military actions. *See* Official Capacity Defs.' Br. in Support of Mot. to Dismiss ("Defs.' Br.") at 9–10, ECF No. 44-1 (citing *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986)). Navy SEAL 1 and Navy SEAL 2 have received initial denials of

---

[1]      In its September 15, 2022, minute order, the Court directed all Defendants to file a single omnibus reply.

their requests for religious accommodation but have not completed the process of appealing those denials. *Id.* (citing Katson Decl. ¶ 2(a), (b), ECF No. 44-3). And while Navy SEAL 4's appeal has been denied, he has additional administrative means of obtaining relief. He can present his religious-freedom arguments to an administrative discharge board and, if he is ultimately discharged, to the Board for Correction of Naval Records. *Id.* (citing Merz Decl. ¶¶ 15, 18, ECF No. 44-1). Plaintiffs are incorrect that the denial of Navy SEAL 4's appeal suffices to fully exhaust his administrative options. *See* Pls.' Br. at 25 n.5. Indeed, courts in this district have traditionally required plaintiffs bringing claims against the military to exhaust administrative remedies all the way through the relevant Board for Correction of Military Records before bringing their claims to federal court. *See Dowds v. Bush*, 792 F. Supp. 1289, 1293 (D.D.C. 1992) ("[W]hen exhaustion is required, it is not complete if relief has not been sought before the Board [for Correction of Naval Records].").; *Martin v. Stone*, 759 F. Supp. 19, 20–21 (D.D.C. 1991) (plaintiff must exhaust to the Army Board for Correction of Military Records where it has authority to grant the sought-after relief); *see also Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852, at * 4 (C.D. Cal. Mar. 3, 2022) (service member who challenged the denial of his religious exemption request had "not exhausted administrative remedies" despite receiving a decision on his appeal because "he still must undergo separation proceedings before any permanent adverse consequences are imposed"), *appeal dismissed*, 2022 WL 2421096 (9th Cir. May 17, 2022).

Plaintiffs contend that military servicemembers need not pursue administrative remedies for RFRA claims because the statute itself does not impose an exhaustion requirement. Pls.' Br. at 15–16. The Court, however, has concluded otherwise. In *Church v. Biden*, this Court observed that the D.C. Circuit "recognizes a 'salutary rule that an aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court," and applied that

rule to a RFRA claim. 573 F. Supp. 3d 118, 137 (D.D.C. 2021) (quoting *Bois*, 801 F.2d at 468). Other courts have followed that holding with approval. *See Miller v. Austin*, — F. Supp. 3d —, 2022 WL 3584666, at *4 (D. Wyo. Aug. 22, 2022) (following *Church*); *Knick v. Austin*, No. 22-cv-01267, 2022 WL 2157066, at *3 (D.D.C. June 15, 2022) (same). The *Church* decision's requirement of exhaustion in the RFRA context was sound. The D.C. Circuit's military exhaustion principle is not founded upon any specific statutory requirement, but rather upon the Supreme Court's broad instruction that courts "hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers." *Bois*, 801 F.2d at 468 (quoting *Chappell v. Wallace*, 462 U.S. 296, 300 (1983)). RFRA does not abrogate that traditional hesitation. Indeed, as this Court has noted, the legislative history of RFRA confirms Congress's intention that existing principles of judicial deference would continue to apply fully in matters involving the military. *See U.S. Navy SEAL 1 v. Austin*, — F. Supp. 3d —, 2022 WL 1294486, at *8 (D.D.C. Apr. 29, 2022) (citing S. Rep. No. 103-111; H.R. Rep. 103-88), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022). Exhaustion is therefore required in the RFRA context as elsewhere, notwithstanding the absence of a specific exhaustion requirement in the statute.

Plaintiffs next attempt to avoid the military exhaustion requirement by insisting that "there is nothing uniquely 'military'" about their claims and that adjudicating them would "not require the Court to tamper with established command relationships." Pls.' Br. at 17–18. These characterizations are demonstrably erroneous. Plaintiffs are (or were) Navy SEALs who were ordered by their commanders to be vaccinated against the deadly and highly transmissible COVID-19 virus as part of ensuring their medical readiness for high-intensity special operations missions. Am. Compl. ¶¶ 9, 31, ECF No. 43; Merz Decl. ¶¶ 3–4. To conduct the individualized assessment

RFRA requires, the Court would have to engage in a to-the-person inquiry into whether application of the vaccination requirement to each individual servicemember furthers compelling interests in military readiness and mission accomplishment and whether there are less restrictive alternatives that equally serve those interests. *See* 42 U.S.C. § 2000bb-1(b). As this Court has observed, such an inquiry would require the Court to "determine whether vaccination against COVID-19 is the narrowest means to accomplish the Navy's interest in ensuring the success of [Plaintiffs'] deployment" and to review such matters as "[t]he tactical necessities" of particular special-operations missions. *Navy SEAL 1*, 2022 WL 1294486, at * 6. One is hard pressed to imagine a claim that intrudes more significantly on the relationship between military servicemembers and their commanders. This case therefore highlights the interests underlying military deference principles.[2]

Plaintiffs alternatively argue that they should be excused from exhausting their military remedies because doing so would cause them irreparable harm. Pls.' Br. at 22–23; *see also id.* at 19–21. Specifically, they speculate that, while seeking relief through available military processes, they would be subject to threats of court martial, separation proceedings, and reputational harm. *Id.* at 19. But the Court has already denied Plaintiff Navy SEAL 4 a preliminary injunction in part because it found that he faces no irreparable harm from having to exhaust his claims in the ordinary course. *Navy SEAL 1*, 2022 WL 1294486, at *15–16. In doing so, the Court addressed and rejected

---

[2]      Plaintiffs' reliance on *Doe v. Trump* is misplaced. *See* Pls.' Br. at 18 (citing 275 F. Supp. 3d 167 (D.D.C. 2017), *vacated sub nom.*, *Doe 2 v. Shanahan*, 755 F. App'x 19 (D.C. Cir. 2019)). In that case, the Court concluded that the plaintiffs' claims against the military were ripe because they presented a purely legal, facial challenge to a policy regarding transgender servicemembers. 275 F. Supp. 3d at 204–05. The situation here—requiring a fact-based, to-the-person analysis of the military's interests in vaccinating Navy SEALs and any alternative means of preserving mission effectiveness—stands in stark contrast. Moreover, *Doe* concerned ripeness; the Court did not address whether the plaintiffs there had administrative remedies to exhaust.

essentially the same arguments that Plaintiffs advance here. The Court correctly observed that a court-martial is unlikely because only the Deputy Chief of Naval Operations may initiate such proceedings for a refusal to vaccinate, and there is no indication that he intends to do so. *Id.* at *15 (citing NAVADMIN 225/21, ECF No. 22-5). As for discharge, any loss of pay and benefits connected with discharge are reparable because courts can award reinstatement and back pay after service members exhaust their military remedies. *Id.* at *4, 15. And to the extent Plaintiffs complain about simply having to undergo "adverse separation proceedings," *see* Pls.' Br. at 19, Defendants have noted (and Plaintiffs have not disputed) that the "the mere trouble and expense of defending an administrative proceeding is insufficient to warrant judicial review of the agency's action prior to the conclusion of the administrative proceeding," Defs.' Br. at 13 (quoting *Cent. Hudson Gas & Elec. Corp. v. EPA*, 587 F.2d 549, 559 (2d Cir. 1978)).

As for Plaintiffs' purported reputational harms, the Court recognized that the same types of harms alleged by Navy SEAL 4 are "definitionally reparable" because they can be reversed— an adverse fitness report can be purged, for example, or a service member can be reassigned. *Navy SEAL 1*, 2022 WL 1294486, at *15. Plaintiffs' assertions of reputational harm are also vague and unsupported. They refer generally to stunted career growth, reduced stature, and the threatened "derail[ment of] their chosen calling," Pls.' Br. at 19–20, but they do not identify any specific irreparable harm that would befall them while they pursue their administrative remedies. *See Reinhard v. Johnson*, 209 F. Supp. 3d 207, 220 (D.D.C. 2016) ("The Court will not credit Plaintiff's bald assertions regarding reputational harm and employment consequences without any support."). In any event, such generalized allegations of a delay in advancement due to the pendency of administrative proceedings do not excuse Plaintiffs' obligation to exhaust. *See Martin*, 759 F. Supp. at 21 ("The fact that the plaintiff is falling behind her peers at the Academy

during the pendency of her challenge to her separation does not present the kind of irreparable harm that warrants premature review of military personnel actions.").

Plaintiffs also complain that they have been denied requests for travel. Pls.' Br. at 21. As explained, however, *all* unvaccinated servicemembers—including those with religious, medical, or administrative exemptions—were precluded from traveling unless it was mission critical. Defs.' Br. at 12 (citing Littlejohn Decl. ¶ 4). Thus, Plaintiffs' receipt of a religious exemption from vaccination would not remedy that purported harm. Similarly, Plaintiffs complain that they have been limited in their assignments, promotions, and ability to undertake special operations. *See* Pls.' Br. at 8, 11. Such matters are nonreviewable, however, and those alleged harms are accordingly not redressable in this litigation. *See Fourte v. Spencer*, No. 18-cv-2023, 2019 WL 340713, at *7 (D.D.C. Jan. 28, 2019) (exhaustion requirement not excused where judicial relief would not alleviate alleged irreparable harm). The Supreme Court made it clear that courts may not direct the military in its assignment and deployment determinations when it stayed a preliminary injunction out of the Northern District of Texas "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions[.]" *Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301, 1301 (2022) (mem.). By contrast, however, Plaintiffs could seek to remedy these alleged harms before the Board for Correction of Naval Records, underscoring the importance of exhaustion.

Plaintiffs also contend that exhaustion would be futile because they allege that the Chief of Naval Operations has a "policy and practice" of indiscriminately denying all appeals from the denial of requests for religious accommodation related to COVID-19 vaccinations. Pls.' Br. at 22. Plaintiffs, however, have offered no evidence of this. The Official Capacity Defendants, on the other hand, have provided evidence that each request for religious accommodation is reviewed on

an individualized basis to determine whether there is a compelling need to vaccinate the applicant and whether there are any less restrictive means of achieving the military's interests. Merz Decl. ¶ 12. In any event, courts have required exhaustion in the military context even where plaintiffs are unlikely to obtain relief. *See, e.g., Hodges v. Callaway*, 499 F.2d 417, 422 & n.13 (5th Cir. 1974) (requiring exhaustion of intramilitary remedies even if the odds against receiving the requested relief "are unquestionably very heavy"). Further, as Defendants have shown, the appeal is not the last stage of the process. Service members receiving an adverse decision on their appeal have further recourse to an administrative discharge board and, if discharged, to the Board for Correction of Military Records, which has extensive authority to void discharges and remove adverse documents from a service member's record. *Id.* ¶ 18. Plaintiffs do not contend that it would be futile to seek relief from those tribunals. Consequently, there is "no reason . . . to suggest that the [administrative process] lacks the power to provide [them] with complete relief or that it would not fairly consider all [their] claims." *Bois*, 801 F.2d at 468.

## II.    Plaintiffs' Claims Are Not Ripe.

Plaintiffs' claims are also unripe from both a constitutional and prudential standpoint. Defs.' Br. at 10–14. As in *Church*, because Plaintiffs have not fully pursued available administrative remedies, their claims remain "riddled with contingencies and speculation that impede judicial review." 573 F. Supp. 3d at 134; *see also Roberts*, 2022 WL 834148, at *5 ("Taking up plaintiff's claims now would defeat the purpose of the ripeness doctrine: to 'protect the agencies from judicial interference until an administrative decision has been formalized.'" (citation omitted)).

Plaintiffs insist that their claims are constitutionally and prudentially ripe because they seek to remedy harms beyond their discharge from the armed forces. Pls.' Br. at 24. As noted above,

however, *supra* at 4–6, the reputational harms asserted by Plaintiffs are impermissibly vague and unsupported, *Reinhard*, 209 F. Supp. 3d at 220, and Plaintiffs may not seek any relief with respect to the Navy's assignment, deployment, and operational determinations because such matters are not justiciable, *Navy SEALs 1–26*, 142 S. Ct. at 1301. And, as already discussed, *supra* at 6–7, Plaintiffs' claims that their appeals to the Chief of Naval Operations are futile is unsupported and ignores additional available administrative remedies, which Plaintiffs do not contend would be futile. And Plaintiffs are simply incorrect that their religious beliefs are being burdened while they undergo the administrative process. They are not being forcibly vaccinated, and so they are able to observe their religious beliefs by declining to receive the available COVID-19 vaccines.

Plaintiffs also argue that Navy SEAL 4's claim is ripe and that his standing permits the Court to move forward with the case as a whole. Pls.' Br. at 25 n.5. For the reasons discussed above, Plaintiffs are incorrect. Navy SEAL 4 has not exhausted his administrative remedies, which include proceedings before an administrative discharge board and, potentially, the Board for Correction of Naval Records. This renders his claims unripe. But even if Navy SEAL 4's claims were ripe, that would not give the Court jurisdiction to decide the claims of the other three Plaintiffs. Plaintiffs state that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement," *id.* (quoting *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)), but they neglect to mention that this rule applies only in cases of "individual plaintiffs bringing a shared claim seeking a single remedy," *J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019). The rule does not apply where, as here, each Plaintiff seeks "individualized relief." *M.M.V. v. Garland*, 1 F.4th 1100, 1110 (D.C. Cir. 2021) (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017)). Even if Navy SEAL 4's own claims are ripe, he lacks standing to seek relief specific to any of the other three plaintiffs.

**III.     Some Aspects of Plaintiffs' Claims Are Nonjusticiable, and Others Should Be Decided with Significant Deference to the Military.**

The Court instructed Defendants to address whether this case should be dismissed as nonjusticiable. Some aspects of Plaintiffs' claims are nonjusticiable, and any justiciable elements of their claims must be decided with heavy deference to the military.

**A.     Many aspects of Plaintiffs' claims are not justiciable.**

"The Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). Accordingly, "the judiciary has traditionally been extremely reluctant to involve itself in claims implicating military decision-making." *Reilly v. Sec'y of the Navy*, 12 F. Supp. 3d 125, 139–40 (D.D.C. 2014); *see also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").

Typically, this means that the judiciary will limit its review of a military decision to procedural challenges and will decline to second-guess the substance of those decisions. *See Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995) ("[A]lthough the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the procedure followed in rendering a military decision may present a justiciable controversy."); *see also Nat'l Fed'n of Fed. Emps. v. United States*, 905 F.2d 400, 406 (D.C. Cir. 1990) (judicial review is typically unavailable where review would require "second-guessing the Secretary's assessment" of military needs); *Pettiford v. Sec'y of Navy*, 774 F. Supp. 2d 173, 182 (D.D.C. 2011) ("[A] court's role in reviewing the decision of a military corrections board is to determine whether

the decision-making process was deficient, not whether [the] decision was correct[.]" (quoting *Kreis*, 866 F.2d at 1511)). Where a plaintiff makes both a procedural and a merits challenge to a particular military decision, a court may find that aspects of the plaintiff's claims are not reviewable. *See Dodson v. Dep't of Army*, 988 F.2d 1199, 1207 n.7 (Fed. Cir. 1993) (reviewing the procedural regularity of the challenged action, but not the substance of the Army's decision).

Other claims are entirely nonjusticiable, including claims that would require the Court to second-guess military decisions about operational risks. *See Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022) (mem.) (Kavanaugh, J., concurring) ("[E]ven accepting that RFRA applies in this particular military context, RFRA does not justify judicial intrusion into military affairs in this case."). Military duty assignments are quintessentially nonjusticiable. *See Harkness v. Sec'y of Navy*, 858 F.3d 437, 443 (6th Cir. 2017) ("Although some military personnel decisions are indeed reviewable, courts are generally reluctant to review claims involving military duty assignments.") (citations omitted) (collecting cases); *see also Orloff*, 345 U.S. at 94 ("We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectional handling of men. But judges are not given the task of running the Army.").

Here, the Court has identified "serious questions" as to whether Plaintiffs' claims are justiciable, including whether review of those claims would usurp functions committed exclusively to the Executive by the Commander-in-Chief clause and whether the claims involve scientific determinations outside the realm of judicial expertise. *Navy SEAL 1*, 2022 WL 1294486, at *5 . The Government acknowledges that RFRA and the First Amendment apply to the military and that, if exhausted and ripe, some aspects of Plaintiffs' claims would be justiciable. *See, e.g.*, *Singh v. McHugh*, 109 F. Supp. 3d 72, 74 (D.D.C. 2015) (reviewing the Army's decision not to allow a

cadet to enroll in ROTC while wearing a turban, having unshorn hair, and a beard); *Toor v. Berger*, Civ. A. No. 22-1004, 2022 WL 3646565, at *2 (D.D.C. Aug. 24, 2022) (reviewing the Marine Corps' decision not to allow three cadets to beginning Marine Corps recruit training while having unshorn beards and hair, wearing a turban, and other religious articles), *appeal filed*, No. 22-5234 (D.C. Cir. Sept. 8, 2022). But in undertaking such review, a court may not second-guess military operational decisions and risk assessments associated with the missions and duties that the plaintiff service members are called upon to execute.

This Court has already recognized that "[t]here are a number of reasons to think" that claims like Plaintiffs' "implicate[] professional military expertise well beyond the Court's ken." *Navy SEAL 1*, 2022 WL 1294486, at *6. The Court further observed that reviewing the military's determination that service members unvaccinated against COVID-19 are unfit for any particular military mission would require the Court "to assess the [military's] conclusion that this particular medical requirement was necessary to ensure [the service members'] effectiveness in their military duties" and "whether vaccination against COVID-19 is the narrowest means to accomplish the [military's] interest in ensuring the success of [each specific plaintiff's] deployments." *Id.* Such weighing of the "tactical necessities of a particular mission" involves the type of military judgment that is vested solely in the other branches of government. *Id.*; *cf. id.* (fitness for duty justiciable only "where resolution of the issue does not require evaluation of the merits of military discretion"). The claims in this case would require the Court to review a military judgment about the medical needs for the types of missions and duties that each plaintiff may be called to perform. *Navy SEAL 1*, 2022 WL 1294486, at *6. Because such review would require the Court to "substitute its judgment for that of the Secretary regarding the allocation of military personnel,"

*Kreis*, 866 F.2d at 1512, the Court should not review the military's conclusion that Plaintiffs must be vaccinated to avoid risks to missions they may be called to perform now or in the future.

Some courts outside this Circuit have misunderstood these limitations. For example, in a decision preliminarily enjoining the Marine Corps from applying its COVID-19 vaccination requirement to a class of Marines, a district court questioned the Marine Corps' longstanding policy of requiring all Marines to be world-wide deployable and wondered why it might not accept 95% deployability. *Colonel Fin. Mgmt. Off.*, 2022 WL 3643512, at *16-17. In another case, a court questioned why the commander of a Navy destroyer—whom the court viewed as "triumphantly fit and slim and strong"—needed to be vaccinated. *Navy SEAL 1 v. Austin*, — F. Supp. 3d —, 2022 WL 710321, at *7 (M.D. Fla. Mar. 2, 2022). But these are exactly the types of decisions that the Constitution entrusts to the Executive and Legislative Branches of Government. *See Gilligan*, 413 U.S. at 10 ("The complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches. The ultimate responsibility for these decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability.").

### B.   The Court must give the military significant deference in evaluating any justiciable aspects of Plaintiffs' claims.

If the Court finds any part of Plaintiffs' claims to be justiciable and ripe, it nevertheless should defer to the military's judgment in adjudicating those claims. Challenges to military decisions are reviewed more deferentially than claims arising in the civilian context. *Rostker v. Goldberg*, 453 U.S. 57, 67 (1981) ("the tests and limitations to be applied may differ because of the military context"). Judicial "review of military regulations challenged on First Amendment grounds," for instance, "is far more deferential than constitutional review of similar laws or

regulations designed for civilian society." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). The Supreme Court has repeatedly emphasized that "judges are not given the task of running the Army." *Orloff*, 345 U.S. at 93; *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2420 & n.5 (2018) (declining to import "the *de novo* 'reasonable observer' inquiry" under the Establishment Clause into "the national security . . . context," which includes "military actions," and stressing that judicial "inquiry into matters of . . . national security is highly constrained").

Although the Supreme Court has declined to attach a "label[]" to the type of review applicable to military policies that may normally trigger heightened scrutiny, *Rostker*, 453 U.S. at 70, the Court's approach most closely resembles rational basis review in substance. *Id.* at 81; *see also id.* at 74–75 (relying on legislative record to sustain statute limiting draft-registration requirement); *Schlesinger v. Ballard*, 419 U.S. 498, 508 (1975) (upholding mandatory-discharge requirements based on what "Congress may . . . quite rationally have believed"). The Court has deferred to the political branches on military matters even in the face of significant contrary evidence, including testimony from current and former military officials. *See Goldman*, 475 U.S. at 509; *Rostker*, 453 U.S. at 63. And it has granted the political branches significant latitude to choose "among alternatives" in furthering military interests, *Rostker*, 453 U.S. at 71–72, and to decide where to "draw[] the line" on particular standards, *Goldman*, 475 U.S. at 510. *See also Doe 2 v. Shanahan*, 755 F. App'x 19, 25 (D.C. Cir. 2019) ("[A]s in *Rostker* and *Goldman*, any review must be 'appropriately deferential' in recognition of the fact that the [challenged military policy] concerned the composition and internal administration of the military.") (citation omitted). In sum, "where confronted with questions relating to military operations the Court 'properly defer[s] to the judgment of those who must lead our Armed Forces in battle.'" *Cook v. Gates*, 528 F.3d 42, 57 (1st Cir. 2008) (quoting *North Dakota v. United States*, 495 U.S. 423, 443 (1990)).

Moreover, principles of deference counsel against allowing discovery into the military's professional decision here. The Supreme Court has made clear the Government may prevail against challenges to its national-security decisions on such challenges when the Government's decision is legitimate on its face. *See, e.g., Karnoski v. Trump*, 926 F.3d 1180, 1206 n.22 (9th Cir. 2019) ("We note that in *Trump v. Hawaii* . . . the Court held that '[t]he 12-page Proclamation— which thoroughly describes the process, agency evaluations, and recommendations underlying the President's chosen restrictions'—was sufficient to allow for judicial review."). Thus, to the extent that any of Plaintiffs' claims survive Defendants' motion to dismiss, the case should be decided on an administrative record and the challenged government action should be subject to deferential rational basis review.

## IV.    Navy SEAL 3's Claims Are Moot.

The Official Capacity Defendants explained in their opening brief that Navy SEAL 3's claims are moot because he retired from active duty on July 1, 2022, and is no longer subject to the policies he challenges. *See* Defs.' Br. at 9 n.4 (citing Katson Decl. ¶ 2(c)); *Bois*, 801 F.2d at 466). In their response, Plaintiffs state that Navy SEAL 3 is now a member of the Fleet Reserve and is therefore "presumably" still subject to the COVID-19 vaccination requirement. *See* Pls.' Br. at 20 n.4; Decl. of Navy SEAL 3 ¶ 5 (under seal)). Plaintiffs are mistaken. In his memorandum of August 24, 2021, the Secretary of Defense directed full vaccination of members of the Armed Forces "on active duty or in the Ready Reserve." *See* Sec'y of Def. Mem. (Aug. 24, 2021), ECF No. 22-3. Members of the Fleet Reserve, including Navy SEAL 3, are not subject to the vaccination requirement. 2d Katson Decl. ¶ 2 (filed herewith). Because Navy SEAL 3 is not subject to the vaccination requirement, his challenge to that requirement is moot. *Bois*, 801 F.2d at 466.

V.     **Damages Are Not "Appropriate Relief" Under RFRA For Plaintiffs' Individual-Capacity RFRA Claim Challenging the Execution of Military Policy.**

Admiral Gilday demonstrated in his opening brief that damages would not be "appropriate relief" in this case because Plaintiffs' RFRA claim challenges high-level policy determinations by some of the Nation's most senior-ranking civilian and military officials. Gilday Opening Br., ECF No. 45-1 at 7-13. Plaintiffs respond first by arguing that, under *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), a damages remedy is appropriate in every RFRA case. Pls.' Br. at 27-28. Plaintiffs then assert that allowing damages in this case would not undermine military discipline and contend that administrative and injunctive relief would be inadequate remedies. *Id.* at 28–29.

Plaintiffs are incorrect on all counts. *Tanvir* recognized that, as Congress provided, damages are permissible under RFRA only "when appropriate." 141 S. Ct. at 493. As the Court noted, "what relief is 'appropriate' is 'inherently context dependent.'" *Id.* at 491 (quoting *Sossamon v. Texas*, 563 U.S. 277, 286 (2011)). There can be no doubt that this case presents a context—involving a high-ranking officer's implementation of military policy—that is entirely distinct from the allegations in *Tanvir*, which focused on isolated incidents of conduct by low-level law enforcement agents. Consequently, as in other contexts where civil liability would threaten the separation of powers by interfering with military policy and chain of command, this Court should examine whether damages are appropriate in light of the substantial case law circumscribing claims in the military context.

There can only be one conclusion to this analysis: Plaintiffs' individual-capacity damages claim against Admiral Gilday should not proceed. As this Court previously acknowledged, a court should not adjudicate a claim that challenges "military judgments," such as a sailor's "effectiveness in their military duties." *Navy SEAL 1*, 2022 WL 1294486, at *6; *see also supra*, section III (explaining justiciability of claims in military context). Consistent with this, courts have

uniformly restricted the availability of damages when a claim—be it constitutional, statutory, or common law tort—would "call into question military discipline and decisionmaking" and "require judicial inquiry into, and hence intrusion upon, military matters." *Klay v. Panetta*, 758 F.3d 369, 375 (D.C. Cir. 2014) (quoting *Cioca v. Rumsfeld*, 720 F.3d 505, 515 (4th Cir.2013), and *United States v. Stanley*, 483 U.S. 669, 682 (1987)) (rejecting service members' *Bivens* claims); *see also Bois*, 801 F.2d at 469 (dismissing § 1985 and intentional tort claims arising in military context); Gilday Opening Br. at 9 n.7 (collecting cases barring damages under §§ 1983 and 1985 for service-related claims). Here, Plaintiffs' only damages claim arises under a statute in which Congress has specifically limited litigants to "appropriate relief." 42 U.S.C. § 2000bb–1(c). Plaintiffs offer no reason to depart from courts' consensus that damages are an inappropriate remedy for claims that challenge military decisions, particularly in the high-level policy context at issue here.[3] *See Tanvir*, 141 S. Ct. at 490 (looking to the "legal backdrop against which Congress enacted RFRA" (citation omitted)).

Moreover, contrary to Plaintiffs' insistence that resolving their claim would merely incentivize compliance with RFRA, *see* Pls.' Br. at 28, awarding damages against the Chief of Naval Operations for determining that a Navy SEAL must receive a vaccine to effectively carry

---

[3]     Plaintiffs miss the point in asserting that "[t]he *Feres* doctrine . . . does not apply here." Pls.' Br. at 28. The rationale underlying *Feres*—that courts should not intrude into military decision-making through damages actions—is relevant outside the context of the Federal Tort Claims Act.   In *Tanvir* itself, the Supreme Court looked to precedent under civil rights statutes such as § 1983 to elucidate the scope and application of RFRA's "appropriate relief" requirement. 141 S. Ct. at 492. There can be no dispute (as amply established in the case law cited in Admiral Gilday's opening brief, *see* ECF No. 45-1 at 9-11 & n.7), that even where Congress provides a money damages remedy, courts have limited the scope of such causes of action based on separation-of-powers principles at the core of the Executive's constitutionally delegated military authority. Thus, however *Feres* may apply in more routine military contexts (none of which plaintiffs identify), in the military-wide policy arena at issue here, plaintiffs cite not a single case contemplating that the money damages liability they seek to impose personally on Admiral Gilday would be "appropriate."

out his duties would unquestionably undermine the military's hierarchical command structure. Indeed, this case presents the unprecedented prospect of holding officers personally liable, with respect to claims of potentially thousands of service members, for executing military policies issued by the Secretary of Defense himself. The mere possibility of individual-capacity damages in a context like this would deter commanders from taking steps they think are necessary to protect the United States for fear of being sued by service members who disagree with their assessments. Such a state of affairs would gravely undermine the military's ability to carry out its mission.

Plaintiffs' contention that administrative and injunctive relief would be inadequate to remedy their injury is also misguided. "[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). If plaintiffs' claim were meritorious and satisfied ripeness and exhaustion requirements, the claim would be better addressed through injunctive relief. And, in any event, Plaintiffs are incorrect that they would have no ability to obtain monetary relief through the Navy's administrative processes. *See* 10 U.S.C. § 1552(c)(1) (allowing for payment of "a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits" through the Board for Correction of Naval Records); *see also* 32 C.F.R. § 723.10.

In short, it is clear from the context in which this case arises that damages against Admiral Gilday would not be "appropriate relief" under RFRA. Many courts have concluded as much in declining to consider claims challenging military decisions or award damages against military officials. Plaintiffs' individual capacity claim against Admiral Gilday for his execution of DoD and Navy vaccination policies should therefore be dismissed.

## VI.    Admiral Gilday is Entitled to Qualified Immunity.

Admiral Gilday is also shielded by qualified immunity in this case for multiple reasons, including his lack of personal involvement in resolving Navy SEALs 1-3's exemption requests; the absence of case law finding a RFRA or Free Exercise Clause violation under analogous circumstances; the abundance of authority upholding mandatory vaccination policies; the tradition of deference to military decisions; and Admiral Gilday's reliance on official agency policies. *See* Gilday Opening Br. At 15, 17-22. In opposition, Plaintiffs do not dispute that the U.S. military's mandatory vaccination policy existed for decades prior to the COVID-19 pandemic without a court ever holding that its application violated religious liberty rights. Indeed, Plaintiffs fail to identify a single case decided before Admiral Gilday's alleged conduct, much less a controlling case, in which the execution of a military or public health policy has given rise to a RFRA or Free Exercise Clause violation. Instead, Plaintiffs contend that RFRA's statutory text alone was enough to put Admiral Gilday on notice that his denial of Navy SEAL 4's exemption request "plainly" violated the law. Pls.' Br. at 31.

This argument, which is inconsistent with the Supreme Court's repeated admonition that qualified immunity must be assessed at the appropriate level of specificity, cannot save Plaintiffs' claim. *See* Gilday Opening Br. at 16-17 and cases cited therein. First, Plaintiffs do not even attempt to explain how Admiral Gilday could have violated the rights of Navy SEALs 1-3 without denying their appeals or directing any other conduct toward them whatsoever. *Id.* at 15. They therefore concede that, with respect to these three Plaintiffs, the First Amendment Complaint does not allege Admiral Gilday violated RFRA through his "own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Dismissal under the first prong of the qualified immunity analysis is warranted

as to Navy SEALs 1-3. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (assessing whether "the facts alleged show the *officer's conduct* violated a constitutional right" (emphasis added)).

Second, Plaintiffs also largely ignore the demanding burden they must meet to overcome prong two of the qualified immunity analysis, which shields officials unless their alleged conduct violated "clearly established" law. *Taylor v. Reilly*, 685 F.3d 1110, 1113 (D.C. Cir. 2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *see also Palmieri v. United States*, 896 F.3d 579, 586 (D.C. Cir. 2018) (stating that "the plaintiff must 'overcome'" an assertion of qualified immunity (quoting *Fox v. District of Columbia*, 794 F.3d 25, 29 (D.C. Cir. 2015)). "In determining whether the legal rules at issue are clearly established, a court must look to cases of controlling authority in [its] jurisdiction" or "a consensus of cases of persuasive authority." *Youngbey v. Mar.*, 676 F.3d 1114, 1117 (D.C. Cir. 2012) (cleaned up). Moreover, this precedent "must have placed the statutory or constitutional question beyond debate, not merely at a high level of generality but in light of the specific context of the case." *Palmieri*, 896 F.3d at 586 (cleaned up). Satisfying this standard is "no easy feat." *Id.*

Plaintiffs do not attempt to satisfy this demanding standard. As Admiral Gilday demonstrated in his opening brief, no case law would have put a reasonable official on notice that denying Navy SEAL 4's request violated the law, Gilday Opening Br. at 17-19; in fact, there was substantial authority to the contrary, *id.* at 20-21. There was likewise no authority contradicting the proposition that Admiral Gilday's alleged conduct—which aimed to promote "military readiness and health of the force," ECF No. 41-2 at ¶ 1—"at least arguably" furthered a compelling government interest through the least restrictive means. *See Fox v. Gov't of D.C.*, 794 F.3d 25, 30 (D.C. Cir. 2015) (affirming grant of qualified immunity). Absent such specific authority, it is not a stretch to say that "officers of reasonable competence could disagree" about whether the

government was justified in maintaining the battle-readiness of an elite Navy SEAL by requiring his inoculation against a dangerous virus. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Instead of trying to meet their burden by identifying factually analogous case law, Plaintiffs cite the broad-brush proposition that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Pls.' Br. at 30 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). But while Plaintiffs rely almost exclusively on *Hope*, they fail to confront the details and reasoning of that case. In *Hope*, the Supreme Court reiterated that officials are entitled to "fair warning" that their conduct violates the Constitution before qualified immunity can be overcome. 536 U.S. at 740. The Court then found that the respondents—who left the plaintiff attached to a hitching post shirtless in the hot sun for seven hours without water and taunted him—possessed such warning "in light of binding Eleventh Circuit precedent [concerning the use of corporal punishment], an Alabama Department of Corrections (ADOC) regulation, and a DOJ report informing the ADOC of the constitutional infirmity in its use of the hitching post." *Id.* at 741-42. The denial of qualified immunity in *Hope* was therefore premised on far more than "a general constitutional rule." *Id.* at 741. It is only in the "rare obvious case" that a plaintiff can overcome qualified immunity without producing analogous case law. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590, 593 (2018) (reversing denial of qualified immunity where there was "no controlling case holding that a bona fide belief of a right to enter defeats probable cause" and "several precedents suggest[ing] the opposite"); *see also Atherton v. D.C. Off. of Mayor*, 706 F.3d 512, 515–16 (D.C. Cir. 2013) (finding no obvious violation where "the procedural due process owed a grand juror seems as unclear today as it was over a decade ago").

The level of "obviousness" that the claim in *Hope* exemplified and that Plaintiffs bear the burden of demonstrating is completely absent here. *Accord Taylor v. Riojas*, 141 S. Ct. 52, 53

(2020) (finding "obvious" violation on "extreme circumstances" and "particularly egregious facts" where plaintiff was confined for six days in "shockingly unsanitary cells" that were covered in feces and frigidly cold). In evaluating Navy SEAL 4's request for religious exemption, Admiral Gilday faced the difficult task of weighing one sailor's professed religious beliefs against the Navy's interest in preserving the health and readiness of every service member. In doing so, Admiral Gilday had to consider not only the details of Navy SEAL 4's request, but also the recommendation of his commanding officer, ECF No. 41-2 at ¶ 3; Navy guidance on the advisability of COVID-19 vaccination, *id.* at ¶ 4; and the objectives expressed in the directives from Secretary Austin and Secretary Del Toro, including the need to maintain a lethal military force that is ready to deploy at a moment's notice, ECF Nos. 22-3, 22-4. Reconciling this array of considerations is hardly a process with an "obvious" outcome under RFRA. Even acknowledging Plaintiffs' lengthy allegations about the COVID-19 vaccine's effectiveness, *see* FAC at 22-36, the scientific and medical issues implicated here only underscore the complexity of Admiral Gilday's decision. As noted in Admiral Gilday's principal brief, such multifactor inquiries on their own, far from constituting clearly established law, are particularly appropriate for the provision of qualified immunity. *See* Gilday Opening Br. at 19-20. If qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018), its application is clearly warranted here.

Plaintiffs' claim that Admiral Gilday had a "policy and practice of issuing blanket denials" does not alter this conclusion. Pls.' Br. at 32. To the extent Plaintiffs suggest that Admiral Gilday summarily denied Navy SEAL 4's request without justification, this conclusory allegation is contradicted by Admiral Gilday's memorandum to Navy SEAL 4, incorporated by reference into the First Amendment Complaint. *See* Gilday Opening Br. at 2 n.3. In it, he explains the reasons

for the denial and that he considered Navy SEAL 4's particular "duties as a special warfare operator and [his] assignment at Naval Special Warfare Tactical Development and Evaluation Squadron FIVE." ECF No. 41-2 at ¶ 3. Plaintiffs' assertion is also contradicted by their own allegation that the Navy had granted 37 religious exemptions as of June 8, 2022. Am. Compl. at ¶ 145. This shows that the Navy considers the circumstances of each request and has granted some.

To the extent Plaintiffs suggest that denying religious exemption requests for uniform reasons is a *de facto* RFRA violation, Pls.' Br. at 32, they cite no authority for this proposition. That is because it is possible, even likely in the context identified, to give individualized attention to multiple requests yet deny them on similar bases. It is unsurprising that naval personnel with similar duty obligations making similar religious objections to a vaccine subject to one set of scientific guidance would have their requests denied for similar reasons. The Court need look no further than the FAC—in which Plaintiffs provide identical reasons why all four of their requests should be granted—for proof that similar analyses apply in each case. *See* Am. Compl. at 19–36. It is therefore not true, and certainly not clearly established, that applying RFRA's test "to the person" requires coming up with *sui generis* justifications for each decision. *See Holt v. Hobbs*, 574 U.S. 352, 363 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)).

Finally, Plaintiffs offer no meaningful response to the principles that qualified immunity is especially proper in a case such as this where the alleged conduct relied on official policy, *see Wilson v. Layne*, 526 U.S. 603, 617 (1999) (stating that it was "not unreasonable" for officers to rely on policy on an issue subject to "undeveloped" case law); where the military decision-making at issue is entitled to significant deference, *see supra*, section III; and where the individual-capacity damages Plaintiffs seek have not traditionally been considered an "appropriate" form of relief in the military context in other federal statutory arenas, *see* Gilday Opening Br. at 7-13. All these

factors further reinforce that Admiral Gilday could not have reasonably anticipated that denying

Navy SEAL 4's request would subject him to personal liability. *See Davis v. Scherer*, 468 U.S.

183, 195 (1984) ("The qualified immunity doctrine recognizes that officials can act without fear

of harassing litigation only if they reasonably can anticipate when their conduct may give rise to

liability for damages . . . ."). The Court should therefore grant qualified immunity to Admiral

Gilday in this lawsuit.

## CONCLUSION

For the reasons stated above, Defendants respectfully requests that the Court grant their

Motions and dismiss them from the case with prejudice.


Dated: September 27, 2022                          Respectfully submitted,

                                                   BRIAN M. BOYNTON
                                                   Principal Deputy Assistant Attorney General

                                                   ALEXANDER K. HAAS
                                                   Director, Federal Programs Branch

                                                   ANTHONY J. COPPOLINO
                                                   Deputy Director, Federal Programs Branch

                                                   */s/ Johnny Walker*
                                                   ANDREW E. CARMICHAEL
                                                   VA Bar. #76578
                                                   Senior Trial Counsel
                                                   MICHAEL P. CLENDENEN
                                                   DC Bar #1660091
                                                   CASSANDRA M. SNYDER
                                                   DC Bar #1671667
                                                   JOHNNY H. WALKER
                                                   DC Bar # 991325
                                                   Trial Attorneys
                                                   United States Department of Justice

Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-3183
Fax: (202) 616-8470
Email: johnny.h.walker@usdoj.gov

*Counsel for Official-Capacity Defendants*


C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel, Torts Branch

*/s/ Daniel C. Luecke*
DANIEL C. LUECKE
Trial Attorney
California State Bar. No. 326695
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 616-3049
Fax: (202) 616-4314
E-mail: daniel.c.luecke@usdoj.gov

*/s/ Joseph A. Gonzalez*
JOSEPH A. GONZALEZ
Trial Attorney
D.C. Bar No. 995057
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 598-3988
Fax: (202) 616-4314
E-mail: joseph.a.gonzalez@usdoj.gov

*Attorneys for Admiral M.M. Gilday*