IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAVY SEAL 1, NAVY SEAL 2, NAVY SEAL 3, and NAVY SEAL 4,<br><br>    Plaintiffs,<br><br>    v.<br><br>LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense; CARLOS DEL TORO, in his official capacity as Secretary of the United States Navy; and ADMIRAL MICHAEL M. GILDAY, individually and in his official capacity as Chief of Naval Operations,<br><br>    Defendants. | Case No. 1:22-cv-00688 (CKK)<br><br>Hon. Colleen Kollar-Kotelly |

**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING MOOTNESS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................1

SUMMARY OF RELEVANT FACTS ...................................................................................1

ARGUMENT ......................................................................................................................4

I.      Plaintiffs' Claim for Damages Prevents a Finding of Mootness .........................4

II.     The FY23 NDAA Does Not Moot the Case .......................................................5

III.    The Voluntary Cessation of Illegal Conduct Does Not Moot the Case.............7

IV.     The Vaccine Mandate Is Capable of Repetition, Yet Evades Review................8

V.      The FY23 NDAA Shows that the Government Lacks a Compelling Interest...................10

CONCLUSION....................................................................................................................11

CERTIFICATE OF SERVICE ..........................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page**

*\*Adarand Constructors, Inc. v. Slater*,
528 U.S. 216 (2000).............................................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................5

*Bernhardt v. Cnty. of L.A.*,
279 F.3d 862 (9th Cir. 2002) ..............................................................................................5

*Cent. Radio Co. v. Norfolk*,
811 F.3d 625 (4th Cir. 2016) ..............................................................................................5

*City of Boerne v. Flores*,
521 U.S. 507 (1997)...........................................................................................................10

*\*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982).............................................................................................................7

*Comm. for First Amend. v. Campbell*,
962 F.2d 1517 (10th Cir. 1992) ..........................................................................................5

*\*Doster v. Kendall*,
No. 22-3497/3702, 2022 U.S. App. LEXIS 32847 (6th Cir. Nov. 29, 2022) ............4, 5

*\*Foretich v. United States*,
351 F.3d 1198 (D.C. Cir. 2003) ..........................................................................................6

*Gonzales v. O Centro Espírita Beneficente União do Vegetal*,
546 U.S. 418 (2006)...........................................................................................................10

*Henson v. Honor Comm. of U. Va.*,
719 F.2d 69 (4th Cir. 1983) ................................................................................................5

*\*Honig v. Doe*,
484 U.S. 305 (1988).............................................................................................................9

*Kingdomware Techs., Inc. v. United States*,
136 S. Ct. 1969, 1976 (2016)..............................................................................................8

*Morgan v. Plano Indep. Sch. Dist.*,
589 F.3d 740 (5th Cir. 2009) ..............................................................................................5

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) .................................................................................................9

\*Scott v. Conley*,
937 F. Supp. 2d 60 (D.D.C. 2013) ...........................................................................5

\*Smith v. Nixon*,
807 F.2d 197 (D.C. Cir. 1986) .................................................................................6

*Speech First, Inc. v. Schlissel*,
939 F.3d 756 (6th Cir. 2019) ...................................................................................7

*S. Bay United Pentecostal Church v. Newsom*,
141 S. Ct. 716 (2021) ...............................................................................................9

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) .........................................................................................9, 10

\*United States v. W. T. Grant Co.*,
345 U.S. 629 (1953) .................................................................................................7

*U.S. Navy Seals 1-26 v. Austin*,
No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 65937 (N.D. Tex. Mar. 28, 2022) .......................2

\*Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021) ...............................................................................................5

\*Weinstein v. Bradford*,
423 U.S. 147 (1975) .................................................................................................8

*Wis. Right to Life*,
551 U.S. 449 (2007) .................................................................................................9

## Statutes & Rules

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. ___, H.R. 7776, 117th Cong. (2022) .......................................................................................1

\*42 U.S.C. § 2000bb ..........................................................................................2, 10

42 U.S.C. § 2000cc ...............................................................................................10

## Other

13C C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* (3d ed. Supp. 2019) ....5

"Biden will sign NDAA despite repeal of the military vaccine mandate," https://www.washingtontimes.com/news/2022/dec/19/biden-will-sign-ndaa-despite-its-repeal-military-v/ ..................................................................................................................................... 4

"House passes defense bill that rescinds military Covid vaccine mandate," https://www.cnn.com/2022/12/08/politics/house-vote-ndaa-military-vaccine-mandate/index.html .............................................................................................................. 4

"Statement by the President on H.R. 7776, the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023," https://www.whitehouse.gov/briefing-room/statements-releases/2022/12/23/statement-by-the-president-on-h-r-7776-the-james-m-inhofe-national-defense-authorization-act-for-fiscal-year-2023/ ........................................................................ 3-4

## INTRODUCTION

In a Minute Order of December 23, 2022, the Court issued the following order to show cause:

> On December 23, 2022, the President of the United States signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. ___, H.R. 7776, 117th Cong. (2022) [hereinafter "FY23 NDAA"].  Among other things, this law requires the Secretary of Defense to "rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 . . ." no "later than 30 days after the date of the enactment of" the law.  *Id.* sec. 525.  As such, the parties shall SHOW CAUSE on or before January 6, 2023 why this matter should not be dismissed as moot.

As set forth below, this case is not moot.

## SUMMARY OF RELEVANT FACTS

The Secretary of Defense, Lloyd Austin, announced on August 9, 2021, that COVID-19 vaccines would be added to the list of mandatory vaccines required for all service members "by no later than mid-September, or immediately upon [FDA] licensure, whichever comes first." Mem. for Dep't of Def. Employees (Aug. 9, 2021), https://perma.cc/H5G8-T62L.  (First Am. Compl. ¶ 23, Doc. No. 43).

After the FDA announced its approval of Pfizer BioNTech's COVID-19 vaccine on August 23, 2021, Secretary Austin directed the "Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority or on active duty or in the Ready Reserve, including the National Guard, who are not fully vaccinated against COVID-19." Mem. for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency and DoD Field Activity Directors (Aug. 24, 2021), https://perma.cc/CV3JEM3M ("Vaccine Mandate").  (First Am. Compl. ¶ 25).

A subsequent order issued by the Secretary of the Navy required all "[a]ctive duty Sailors and Marines" to "become fully vaccinated by November 28, 2021."  (First Am. Compl. ¶ 26).

Failure to abide by the vaccine mandate is a violation of a "lawful" order, which can and will result in harsh and severe penalties, including criminal prosecution, loss of pay and benefits, removal from the Navy SEALs, and separation from the armed services.  (First Am. Compl. ¶ 30).

At the time the vaccine mandate issued, the Government considered it be a lawful order. To this day, the Government considers the vaccine mandate to be a lawful order.  At the time it was issued, Plaintiffs considered the vaccine mandate to be an unlawful order as it violates the U.S. Constitution and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*. (RFRA). To this day, Plaintiffs consider the vaccine mandate to be an unlawful order for the same reasons. (First Am. Compl. ¶¶ 147-73).

Navy SEAL 4 requested a religious exemption to the vaccine mandate on October 15, 2021. This request was denied by the reviewing authority on November 26, 2021, utilizing the same boilerplate justification and language used for all other such denials.  Navy SEAL 4 timely appealed this denial to the Chief of Naval Operations (Admiral Gilday), who denied the appeal on February 10, 2022, pursuant to the CNO's policy and practice of issuing blanket denials of such appeals, particularly for Navy SEALs.  The CNO is the final decision maker for such requests.  As a result, Navy SEAL 4 is now being processed for discharge from the U.S. Navy.  This adverse process is being delayed solely because of a class-wide injunction issued by a federal court in Texas. *U.S. Navy Seals 1-26 v. Austin*, No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 65937 (N.D. Tex. Mar. 28, 2022).  Navy SEAL 4 also received an adverse fitness report.  He was formally accused of the "Commission of a Serious Offense" for exercising his religious beliefs.  And he was notified that he would be separated "by reason of Misconduct –Commission of a Serious

Offense . . . [a]s evidenced by [his] refusal of the COVID-19 vaccination." [1]  (First Am. Compl. ¶¶ 70, 78).

Similar to Plaintiff Navy SEAL 4, all of the other Plaintiffs requested religious exemptions from the mandate.  (First Am. Compl. ¶¶ 64-70).  None were granted.  (First Am. Compl. ¶¶ 65-71).  As of November 28, 2021, and continuing today regardless of the FY23 NDAA, all Plaintiffs have violated a direct order and remain subject to the UCMJ as a result.[2]  Plaintiffs have lost benefits and career opportunities because of the mandate, and those losses continue today.  Plaintiffs have received adverse entries in their official service records because of the mandate, and those adverse records remain today.[3]  Plaintiffs have suffered harm to their reputations, and that harm continues today.  Plaintiffs have suffered damages, and those damages remain today.  In sum, the FY23 NDAA does not remedy the ongoing harm to Plaintiffs.  Indeed, the FY23 NDAA does not restore the *status quo ante*.  (First Am. Compl. ¶¶ 74-84; *see also id*., Prayer for Relief).

In a press statement issued following the signing of the FY23 NDAA, the President did not mention Section 525.[4]  *Why*?  Because the President "*was opposed to rolling back the vaccine*

---

[1] These adverse and retaliatory actions have had, and will continue to have, an adverse impact on Plaintiff Navy SEAL 4's eligibility for promotion should he be retained on active duty.

[2] This includes Plaintiff Navy SEAL 3, who retired.  (*See* Pls.' Resp. to Mot. to Dismiss at 20, n.4, Doc. No. 48).

[3] Each plaintiff received a similar page 13 entry in their official service record advising that "any refusal to be vaccinated may constitute a Failure to Obey a Lawful Order and may be punishable under the Uniform Code of Military Justice (UCMJ) and/or administrative action for Failure to Obey a Lawful Order (UCMJ, Article 92)."  A page 13 entry is an adverse entry.  (First Am. Compl. ¶ 31).  Plaintiffs were further advised via the page 13 entry that "special operations (SO) duty personnel (SEAL and SWCC) who refuse to receive the COVID-19 vaccine based solely on personal or religious beliefs will be disqualified from SO duty (unless the disqualification is separately waived by BUMED).  This will affect deployment and special pays. This provision does not pertain to medical contraindications or allergies to vaccine administration."  (First Am. Compl. ¶ 32).

[4] "Statement by the President on H.R. 7776, the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023," https://www.whitehouse.gov/briefing-room/statements-releases/2022/12/23/statement-by-the-president-on-h-r-7776-the-james-m-inhofe-national-

*mandate*" and signed the legislation with this provision simply as a political compromise to ensure

passage of the massive spending bill.[5]

## ARGUMENT

**I.    Plaintiffs' Claim for Damages Prevents a Finding of Mootness.**

Plaintiffs have advanced a claim for damages, which is authorized by RFRA.  (*See* First

Am. Compl. ¶¶ 5, Prayer for Relief).  There is no statutory exemption for military officials, high-

ranking or otherwise.  *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020) ("[I]t would be odd to construe

RFRA in a manner that prevents courts from awarding [damages].").

As the Sixth Circuit recently noted in *Doster v. Kendall*, No. 22-3497/3702, 2022 U.S.

App. LEXIS 32847 (6th Cir. Nov. 29, 2022), in which the court affirmed the lower court's order

granting a preliminary injunction and enjoining the United States Air Force from enforcing its

COVID-19 vaccine mandate:

> At day's end, the Air Force all but acknowledges that it cannot succeed under
> traditional strict-scrutiny review.  It instead asks us to read RFRA as if it simply
> codified the "great deference" that the Supreme Court had previously given to the
> military under the Free Exercise Clause. . . .  We see no textual path to that result.

---

defense-authorization-act-for-fiscal-year-2023/ (last visited Dec. 26, 2022).

[5]    "Biden will sign NDAA despite repeal of the military vaccine mandate,"
https://www.washingtontimes.com/news/2022/dec/19/biden-will-sign-ndaa-despite-its-repeal-
military-v/ (last visited Dec. 26, 2022). ("'Clearly the president was opposed to rolling back the
vaccine mandate but we saw Republicans in Congress would rather fight against the health and
well-being of the troops,' Ms. Jean-Pierre said."). "House passes defense bill that rescinds military
Covid    vaccine    mandate,"    https://www.cnn.com/2022/12/08/politics/house-vote-ndaa-
military-vaccine-mandate/index.html (last visited Dec. 30, 2022) ("'We continue to believe
that repealing the vaccine mandate is a mistake.  Making sure our troops are ready to defend
this country and prepared to do so that remains the President's priority and the vaccine
requirement for Covid does just that,' National Security Council coordinator for strategic
communications John Kirby told reporters Wednesday when pressed specifically on whether
Biden would sign the NDAA if the mandate stayed in the final legislation.").

*Doster*, 2022 U.S. App. LEXIS 32847, at \*56.  There is no "textual path" to conclude that RFRA does not apply in full, including RFRA's provision for damages.  In short, the Court should reject the Government's argument that it is owed unique deference in this case.  (*See* Gilday Mot. to Dismiss at 8-12, Doc. No. 45-1; *see also* Pls.' Surreply [demonstrating that the case is justiciable], Doc. No. 51).  And there is no dispute that Admiral Gilday was *personally* involved in the decisions that caused harm to Plaintiffs.  *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (finding no liability under a *Bivens* action for high-ranking government officials based on conclusory allegations and noting that "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct").

Accordingly, damages are appropriate.  And a claim for damages, including nominal damages (awarded when compensatory damages cannot be proven), precludes mootness.  *Scott v. Conley*, 937 F. Supp. 2d 60, 64 (D.D.C. 2013) (holding that a claim for damages prevents a finding of mootness); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) (finding case justiciable and holding that an award of nominal damages by itself can redress a past injury); 13C C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3533.3, n. 47 (3d ed. Supp. 2019) (collecting cases); *Cent. Radio Co. v. Norfolk*, 811 F.3d 625, 631-32 (4th Cir. 2016); *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748, n.32 (5th Cir. 2009); *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 872 (9th Cir. 2002); *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1526-27 (10th Cir. 1992); *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 72, n.5 (4th Cir. 1983).

## II.     The FY23 NDAA Does Not Moot the Case.

Regardless of the President's reluctance to "roll back" the vaccine mandate and his political motives for signing the massive spending bill with Section 525, there is nothing in the FY23 NDAA that prevents the President (or any of his defense secretaries) from reissuing a COVID-19

vaccine mandate.  There is nothing in the FY23 NDAA that protects servicemembers, including Plaintiffs, from punishment for violating the mandate (and thus violating a "lawful" order) that was in effect in November 2021.  There is nothing in the FY23 NDAA that expunges all adverse entries from Plaintiffs' service records.[6]  There is nothing in the FY23 NDAA that allows Plaintiffs to recoup the lost pay, travel, training, promotions, and other benefits they were denied and continue to be denied for exercising their religion.  There is nothing in the FY23 NDAA that ends the discriminatory treatment of Plaintiffs on account of their COVID-19 vaccination status.  There is nothing in the FY23 NDAA that declares the vaccine mandate unlawful.  There is nothing in the FY23 NDAA that restores Plaintiffs' reputations as Navy SEALs.  At all times, Plaintiffs served their country honorably and are being punished simply because they have a religious objection to the mandate.  And there is nothing in the FY23 NDAA that restores Plaintiffs to full standing as Navy SEALs.

Indeed, a *judicial* determination that the vaccine mandate violates the U.S. Constitution and RFRA would redress the stigma and reputational injury of which Plaintiffs complain in ways in which the FY23 NDAA does not remedy,[7] and it will provide protection from future harm by declaring the mandate unlawful and enjoining its enforcement.  (*See* First Am. Compl. ¶ 81).  In sum, the FY23 NDAA does not fully redress the harm caused by the vaccine mandate.  The case is not moot.

---

[6] *Smith v. Nixon*, 807 F.2d 197, 204 (D.C. Cir. 1986) (stating that "a court may order expungement of records in an action brought . . . directly under the Constitution, without violating the intricate statutory provisions that purport to be the 'exclusive' means by which [government records] may . . . be alienated or destroyed").

[7] *See Foretich v. United States*, 351 F.3d 1198, 1214 (D.C. Cir. 2003) (acknowledging that "reputational injury" may derive "directly from government action" and that this injury may be redressed by equitable relief).

### III.    The Voluntary Cessation of Illegal Conduct Does Not Moot the Case.

When a party seeks to escape liability by claiming that it has voluntarily ceased the offending conduct, "the *heavy burden* of persuading the court that the challenged conduct cannot reasonably be expected to start up again *lies with the party*" seeking to avoid liability. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (internal quotations and citation omitted) (emphasis added).

As the Supreme Court noted, not only is a defendant "free to return to his old ways," *but also the public has an interest "in having the legality of the practices settled." United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (emphasis added); *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, n.10 (1982).

Consequently, "[a]long with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *W. T. Grant Co.*, 345 U.S. at 633. Thus, a claim for injunctive relief may be improper only "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The [defendant's] burden is a heavy one." *Id*. (citation omitted) (emphasis added).

As the Court concluded, denying a plaintiff prospective relief "would be justified only if it were *absolutely clear* that the litigant no longer had *any* need of the judicial protection that it sought." *Adarand Constructors, Inc.*, 528 U.S. at 224 (emphasis added); *see also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767-70 (6th Cir. 2019) (finding the challenge to a university's speech restriction not moot and stating that "[i]f the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim").

Regardless of the FY23 NDAA, the President and his defense secretaries retain the authority to reissue the COVID-19 vaccine mandate whenever they please. The President and his defense secretaries plainly believe that the mandate was necessary, and while the President signed the FY23 NDAA, he remains opposed to rescinding the mandate.

In short, Section 525 does not moot this case. The Government is free to return to its old ways, and the public has a very strong interest in having the legality of the vaccine mandate settled.

## IV.    The Vaccine Mandate Is Capable of Repetition, Yet Evades Review.

As noted, the President signed the FY23 NDAA, but he did so while opposing the "rollback" of the vaccine mandate. And there is nothing in the FY23 NDAA that prevents him or his defense secretaries from ordering another similar vaccine mandate. Consequently, Plaintiffs' claims come within the "capable of repetition, yet evading review" exception to the mootness doctrine. This exception applies to situations where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a *reasonable* expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975) (emphasis added).

The Supreme Court has found periods of up to two years to be too short to be fully litigated. *See, e.g., Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (holding that a procurement contract that expires in two years does not permit judicial review). Plaintiffs satisfy the first requirement.

Plaintiffs also satisfy the second requirement of the "capable of repetition, yet evading review" exception because this standard is a forgiving one. That is, "*reasonable*" in this context is not an exacting bar. Indeed, the Supreme Court has indicated that it is somewhat *less* than probable:

> [W]e have found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable . . .  Our concern in these cases . . . was whether the controversy was *capable* of repetition and not . . . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not.

*Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (emphasis in original) (internal citations omitted).

In other words, recurrence of the issue need not be more probable than not; instead, the controversy must be *capable* of repetition.  This standard provides that the chain of potential events does not have to be certain or even probable to support the court's finding of non-mootness.

The Supreme Court has repeatedly found restrictions issued during the COVID-19 pandemic capable of repetition.  In *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Court found that a church's challenge to New York's pandemic restrictions was not moot where "[t]he Governor regularly change[d] the classification of particular areas without prior notice" and retained the authority to continue doing so.  141 S. Ct. 63, 68 (2020) (per curiam).  And while the Court did not identify which mootness exception applied, it cited to *Wisconsin Right to Life*'s discussion of the "capable of repetition, yet evading review" exception.  *Id.* (citing *Wis. Right to Life*, 551 U.S. 449, 462 (2007)).

The Court applied *Roman Catholic Diocese* in *Tandon v. Newsom* and held that a challenge to California's restrictions on religious gatherings was not moot because California officials "retain[ed] authority to reinstate" the challenged restrictions "at any time."  141 S. Ct. 1294, 1297 (2021) (per curiam) (citing *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 720, 209 (2021) (Gorsuch, J.) (explaining that the case was not moot because California officials have a record of "moving the goalposts")).

Because Defendants "retain the authority to reinstate" the challenged mandate at any time, this case is not moot.

- 9 -

**V.      The FY23 NDAA Shows that the Government Lacks a Compelling Interest.**

The FY23 NDAA does not moot this case.  Rather, it shows that the Government lacks a compelling interest.

Under RFRA, the Government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb-1(a). RFRA protects "any exercise of religion."  *Id*. at §§ 2000bb-2(4), 2000cc-5(7)(A).  To justify a substantial burden on the free exercise of religion under RFRA, the Government must demonstrate that the challenged action is "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  *Id*. at § 2000bb-1(b).  In other words, the Government must satisfy strict scrutiny.  *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 429 (2006) (stating that the "burden is placed squarely on the Government" to satisfy strict scrutiny).

The Government does not challenge the fact that Plaintiffs' religious beliefs are sincerely held, nor does it challenge the fact that the vaccine mandate substantially burdens Plaintiffs' religious exercise.  (*See* Pl.'s Reply in Supp. of Mot. for Prelim. Inj. at 3 [Doc. No. 25]). Consequently, at issue here is whether the Government can satisfy strict scrutiny, the "most demanding test known to constitutional law."  *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). "That standard 'is not watered down'; it 'really means what it says.'"  *Tandon*, 141 S. Ct. at 1297 (internal citation omitted).

Now that the Government is rescinding the mandate for political reasons, there is no non-frivolous basis for claiming that the Government has (or had) a compelling interest for this mandate.  Consequently, there is no basis for claiming that the Government can satisfy strict

scrutiny.  The mandate was issued and remained in effect for over a year for political reasons (*i.e.*, the mandate was not supported by science),[8] and now it is being rescinded for political reasons.

In sum, far from mooting or complicating this case, the President's signing of the FY23 NDAA simplifies the Court's task.  The application of strict scrutiny is now straightforward such that the Court can (and should) expedite resolution of the case on its merits.

## CONCLUSION

The Court should decide the case on its merits; it is not moot.

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
rmuise@americanfreedomlawcenter.org

/s/ *David Yerushalmi*
David Yerushalmi, Esq. (DC Bar No. 978179)
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20001
dyerushalmi@americanfreedomlawcenter.org
(646) 262-0500

*Counsel for Plaintiffs*

---

[8] The mandate remained in effect long after the pandemic was over and when the evidence was clear that the vaccines were ineffective.  In fact, the evidence shows that the vaccines are harmful, particularly to Plaintiffs' demographic.  (*See* First Am. Compl. ¶¶ 88-131).

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system.  Parties may access this filing through the court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: None.

AMERICAN FREEDOM LAW CENTER

/s/*Robert J. Muise*
Robert J. Muise, Esq.