IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAVY SEAL 1, NAVY SEAL 2, NAVY
SEAL 3, and NAVY SEAL 4,

        Plaintiffs,

    v.

LLOYD AUSTIN, in his official capacity as
Secretary of the United States Department of
Defense; CARLOS DEL TORO, in his
official capacity as Secretary of the United
States Navy; and ADMIRAL MICHAEL M.
GILDAY, individually and in his official
capacity as Chief of Naval Operations,

        Defendants.

Case No. 1:22-cv-00688 (CKK)

Hon. Colleen Kollar-Kotelly

**PLAINTIFFS' REPLY IN SUPPORT OF RESPONSE TO ORDER
TO SHOW CAUSE REGARDING MOOTNESS**

In a Minute Order of December 23, 2022, the Court directed the parties to "SHOW CAUSE

on or before January 6, 2023 why this matter should not be dismissed as moot." (Minute Order of

Dec. 23, 2022). The parties responded; Plaintiffs filed a substantive response (Doc. No. 52). In a

Minute Order of January 7, 2023, the Court directed Defendants to "file a substantive response"

to Plaintiffs' response, which Defendants filed on January 17, 2023. (Doc. No. 55). The Court

also stated that "Plaintiffs may file a reply to Defendants' response no later than seven days after

Defendants' filing." (Minute Order of Jan. 7, 2023). This reply follows.

## BACKGROUND

On December 23, 2022, the President signed the James M. Inhofe National Defense

Authorization Act for Fiscal Year 2023 (FY23 NDAA). Section 525 of the FY23 NDAA required

the Secretary of Defense to rescind the mandate that members of the Armed Forces be vaccinated

against COVID-19, issued in the Secretary's August 24, 2021 memorandum, "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service members."  Pub. L. No. 117-263, § 525 (Dec. 23, 2022), 136 Stat. 2395.

On January 10, 2023, the Secretary of Defense issued a memorandum rescinding his August 24, 2021 memorandum mandating the COVID-19 vaccine.  In his recission memorandum, the Secretary stated, *inter alia*:

> No individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds.  The Military Departments will update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand.  The Secretaries of the Military Departments will further cease any ongoing reviews of current Service member religious, administrative, or medical accommodation requests solely for exemption from the COVID-19 vaccine or appeals of denials of such requests.

(Sec'y Def. Memo. at 1, Doc. No. 55-1).  The Secretary's recission memorandum further states:

> Other standing Departmental policies, procedures, and processes regarding immunizations *remain in effect*.  These include the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation.

(Sec'y Def. Memo. at 2, Doc. No. 55-1) (emphasis added).

The Secretary's memorandum does essentially five things: (1) it affirms that the vaccine mandate set forth in the Secretary's August 24, 2021 memorandum is rescinded; (2) it provides that no currently serving member of the Armed Forces will be "*separated* solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious" or other grounds; (3) it directs the services to "update the records" of members of the Armed Services who requested religious exemptions by "remov[ing] any adverse actions solely associated with denials of such requests, including letters of reprimand"; (4) it directs the Secretaries of the

Military Departments to cease any ongoing review of requests for religious exemptions to the mandate; (5) and it ensures that existing "policies, procedures, and processes regarding immunizations remain in effect." (Sec'y Def. Mem. at 1, 2, Doc. No. 55-1).

As set forth below and in Plaintiffs' previously filed response to the Court's show cause order, the President's signing of FY23 NDAA and the Secretary of Defense's memorandum implementing § 525 do not moot this case. Rather, their actions make it clear that Defendants cannot satisfy strict scrutiny as there is no compelling interest for the ongoing harm to Plaintiffs as a result of their religious objections to the vaccine mandate.[1]

In the final analysis, the rescission of the vaccine mandate does not restore the *status quo ante*. Accordingly, it does not remedy the harm Plaintiffs continue to suffer as a result of their religious objections to the mandate. In fact, the Secretary's memorandum expressly permits the continuation of "policies, procedures, and processes" that substantially burden Plaintiffs' religious exercise. The case is not moot.

## ARGUMENT

### I.      This Case Is Not Moot.

Defendants assert that the FY23 NDAA and the Secretary's memorandum implementing § 525 of the FY23 NDAA moot this case. (Defs.' Resp., Doc. No. 55). They are wrong.

### A.      Plaintiffs Have an Ongoing, Concrete Interest in the Outcome of this Case.

Article III of the Constitution confines the federal courts to adjudicating actual "cases" or "controversies." U.S. Const. art. III, § 2. In an effort to give meaning to Article III's "case" or "controversy" requirement, the courts have developed several justiciability doctrines, including

---

[1] Defendants failed to respond to Plaintiffs' argument that the President's signing of FY23 NDAA demonstrates that Defendants cannot satisfy strict scrutiny in this case. (*See* Pls.' Resp. to Order to Show Cause on Mootness at 10-11, Doc. No. 52).

mootness.  Mootness is often described as "the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000) (internal quotation marks omitted).  Accordingly, "[t]he inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy."  *De Funis v. Odegaard*, 416 U.S. 312, 316 (1974) (internal quotations and citation omitted).

"The burden of demonstrating mootness is a heavy one."  *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks omitted).  "A case becomes moot *only* when it is *impossible* for a court to grant *any* effectual relief whatever to the prevailing party."  *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013) (internal quotations and citation omitted) (emphasis added).  As explained by the Supreme Court,

> [J]urisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said _with assurance_ that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have _completely and irrevocably eradicated the effects_ of the alleged violation.  When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

*Cty. of L.A. v. Davis*, 440 U.S. at 631 (internal punctuation and citations omitted) (emphasis added).

Thus, "[a] case becomes moot only when it is *impossible* for a court to grant *any* effectual relief whatever to the prevailing party. . . .  As long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot."  *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307-08 (2012) (internal punctuation and citations omitted) (emphasis added).

In *Knox*, for example, the Supreme Court found that the case was not moot, observing as follows:

> The District Court ordered the SEIU to send out a "proper" notice giving employees an adequate opportunity to receive a full refund. . . . Petitioners argue that the notice that the SEIU sent was improper because it includes a host of "conditions, caveats, and confusions as unnecessary complications aimed at reducing the number of class members who claim a refund." . . . In particular, petitioners allege that the union has refused to accept refund requests by fax or e-mail and has made refunds conditional upon the provision of an original signature and a Social Security number. . . . As this dispute illustrates, the nature of the notice may affect how many employees who object to the union's special assessment will be able to get their money back. The union is not entitled to dictate unilaterally the manner in which it advertises the availability of the refund.
>
> For this reason, we conclude that a live controversy remains, and we proceed to the merits.

*Knox*, 567 U.S. at 308. Thus, *any* concrete interest, however small, in the outcome of the litigation prevents the case from becoming moot.

Here, neither the FY23 NDAA nor the Secretary's memorandum restores the status *quo ante*. Neither restores Plaintiffs to their full status as Navy SEALs. (*See* First Am. Compl., Prayer for Relief, ¶ E [requesting an "order that Plaintiffs' status as U.S. Navy SEALs be restored to the status Plaintiffs enjoyed prior to the enforcement of the Vaccine Mandate, including the restoration of any and all pay, promotions, . . ."], Doc. No. 43). Neither acknowledges that the vaccine mandate was unlawful or prevents another similar mandate.[2] Neither remedies the stigma and reputational harm Plaintiffs are suffering for being accused of committing an offense under the UCMJ (violation of a lawful order) and being denied the opportunity to fully serve as a Navy SEAL. Refusing to adjudicate Plaintiffs' claims is affirmation that Defendants did nothing wrong

---

[2] Defendants are wrong when they claim that "[t]he NDAA 'specifically forbids the kind of [action] challenge in this suit.'" (Defs.' Resp. at 10). The NDAA does no such thing, nor does the Secretary of Defense's memorandum.

and that Plaintiffs violated a lawful order.  This reputational harm will remain with Plaintiffs while on active duty and in retirement.  They have been branded as disobedient and recalcitrant lawbreakers by Defendants for following their sincerely held religious beliefs, and they are being denied their full status as Navy SEALs because of their religious objections to the mandate.

Defendants dismiss this ongoing reputational harm and stigma, claiming that there is "no 'tangible' or 'concrete' reputational consequence that would be 'susceptible to judicial correction.'" (Defs.' Resp. at 6, Doc. No. 55).  Defendants are wrong, as noted above.  The harm is tangible, concrete, and susceptible to judicial correction.  As stated in the First Amended Complaint:

> A judicial determination that the enforcement of the Vaccine Mandate against Plaintiffs violates the U.S. Constitution and RFRA would redress the stigma and reputational injury of which Plaintiffs complain in ways in which no administrative procedure could remedy, and it will provide protection from future harm by declaring such mandates unlawful.  Neither administrative procedures nor administrative remedies can fully redress the harm caused by the Vaccine Mandate and its enforcement against Plaintiffs.

(First Am. Compl. ¶ 81, Doc. No. 43); *see Singh v. Berger*, No. 22-5234, 2022 U.S. App. LEXIS 35562, at *49-50 (D.C. Cir. Dec. 23, 2022) (granting a preliminary injunction and noting that "[e]ach day that the Marine Corps refuses to let them take the oath of enlistment unless they surrender their faith inflicts an irreversible and irreparable harm" as "[t]hey are forced daily to choose between their religion" and "the performance of [the] supreme and noble duty of contributing to the defense of the rights and honor of the nation," and are thus "subjected to the 'indignity' of being unable to serve") (internal citation omitted); *Elzie v. Aspin*, 841 F. Supp. 439, 443 (D.D.C. 1993) (holding that the plaintiff would suffer irreparable injury in the absence of preliminary injunctive relief because he "faces the stigma of being removed from active duty as a sergeant in the Marine Corps—a position which he has performed in a sterling fashion for eleven

years—and labeled as unfit for service solely on the basis of his sexual orientation"); *see also*

*NCAA v. Governor of N.J.*, 730 F.3d 208, 220 (3d Cir. 2013) ("As a matter of law, reputational

harm is a cognizable injury in fact."); *Gully v. NCUA Bd.*, 341 F.3d 155, 161-62 (2d Cir. 2003)

(stating that "[t]he Supreme Court has long recognized that an injury to reputation" is an injury in

fact); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 542-43 (3d Cir. 2007)

(finding standing to challenge a sanction that "affect[s] [the plaintiff's] reputation").

As a direct result of Plaintiffs' religious objections to the vaccine mandate, they are

suffering the reputational harm and stigma of not being able to return to their full status as Navy

SEALS—positions which they performed in sterling fashion for many years, including during the

peak of the COVID-19 pandemic when the vaccines were unavailable—and the reputational harm

and stigma caused by being labeled unfit to continue such service solely on the basis of their

religious objections to getting an ineffective vaccine.[3]

Additionally, neither § 525 nor the Secretary's memorandum prevents punishment such as

nonjudicial punishment under Article 15 of the UCMJ.[4]  They only prevent separation and require

the removal of adverse paperwork.  Neither ends the discriminatory treatment of Plaintiffs on

account of their religious objections to the vaccine mandate.  In fact, the Secretary of Defense

intends to maintain pressure on those who remain unvaccinated (Sec'y Def. Mem. at 1 ["The

Department will continue to promote and encourage COVID-19 vaccination for _all_ Service

members." (emphasis added)], Doc. No. 55-1), and this pressure is particularly problematic in the

---

[3] This is particularly troubling in light of the fact that Plaintiffs have natural immunity, a widely recognized exception by virologists and immunologists to vaccination and an exception recognized by the Navy as well.  (*See* First Am. Compl. ¶¶ 88-112, Doc. No. 43; *see also* BUMEDINST 62330.15B).

[4] Article 15 of the Uniform Code of Military Justice provides for a broad range of punishments, including loss of pay, reduction in rank, correctional custody, extra duties, and increased restrictions.  *See* Unif. Code Mil. Justice art. 15.

military context given the nature of miliary service, obedience to the chain of command, and the demand for compliance.  Moreover, neither the FY23 NDAA nor the Secretary's memorandum prevents Plaintiffs from losing operational, training, and travel opportunities, which also adversely affects their eligibility for promotion, pay, and other related benefits, particularly those benefits associated with being a Navy SEAL in good standing (*e.g.*, special duty pay, including jump, dive, hazard duty, and Advanced Inceptive Pay).[5]

In sum, neither the FY23 NDAA nor the Secretary's memorandum does anything to remedy these ongoing harms.  In fact, the Secretary's memorandum expressly exempts such remediation by leaving in place these "policies, procedures, and processes."  (Sec'y Def. Mem. at 2).  Consequently, Plaintiffs have an ongoing, concrete interest in the outcome of this case.

### B.    The Voluntary Cessation Exemption to Mootness Applies.

In *Knox*, the Supreme Court noted that

> [t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.  *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  *And here, since the union continues to defend the legality of the Political Fight-Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future*.

*Knox*, 567 U.S. at 307 (emphasis added).

---

[5] Defendants state that "Plaintiffs allege no actual lost benefits or career opportunities up to this point."  (Defs.' Resp. at 6, Doc. No. 55).  This is demonstrably false.  (*See* First Am. Compl. ¶¶ 62, 74, 75, 82, 84 [setting forth lost pay, benefits, and opportunities] Doc. No. 43; *see also id.* ¶ 32 [stating that refusal to abide by the vaccine mandate "will affect deployment and special pays"]), ¶ 74 [stating that the vaccine mandate has resulted in the "loss of special duty pay"]).  And Supreme Court precedent makes clear that the denial of benefits (*Thomas v. Review Board*, 450 U.S. 707, 717-18 (1981) (denial of unemployment benefits)), and adverse economic incentives (*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 722 (2014)), are sufficient to find a substantial burden on religious exercise.

When a party seeks to escape liability by claiming that it has voluntarily ceased the offending conduct, "the *heavy burden* of persuading the court that the challenged conduct cannot reasonably be expected to start up again *lies with the party*" seeking to avoid liability.  *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (internal quotations and citation omitted) (emphasis added).  In their response, Defendants fail carry their heavy burden.  *See United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (stating that a claim for injunctive relief may be improper only "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated'" and describing the defendant's burden as "a heavy one.") (citation omitted).  Here, Defendants are "free to return to [their] old ways," and the public has an exceedingly strong interest "in having the legality of the practices settled."  *W. T. Grant Co.*, 345 U.S. at 632 (emphasis added); *see also City of Mesquite*, 455 U.S. at 289, n.10 (1982).

As stated by the Supreme Court, denying a plaintiff prospective relief "would be justified only if it were *absolutely clear* that the litigant no longer had *any* need of the judicial protection that it sought."  *Adarand Constructors, Inc.*, 528 U.S. at 224 (emphasis added).

In his memorandum, the Secretary of Defense continues to defend his decision to order the vaccine mandate.  (Sec'y Def. Mem. at 1, Doc. No. 55-1).  In his memorandum, the Secretary states that he was "deeply proud of the Department's work to combat the coronavirus disease of 2019," that [t]he Department has helped ensure the vaccination of many Americans," that "[t]he Department *will continue to promote and encourage* COVID-19 vaccination for all Service members," that "[v]accination enhances operational readiness and protects the Force," and that "[a]ll commands have the responsibility and *authority* to preserve the Department's compelling interests in mission accomplishment."  (Sec'y Def. Mem. at 1, Doc. No. 55-1) (emphasis added).  And, as noted, the memorandum expressly does *not* rescind "standing Departmental policies,

procedures, and processes regarding immunization," (Sec'y Def. Mem. at 2, Doc. No. 55-1), which continue to harm Plaintiffs due to their religious objection to the vaccine mandate. In addition, the FY23 NDAA was signed by the President for political reasons as he opposed "rolling back" the mandate.[6]

Since Defendants continue to defend the legality of the vaccine mandate, it is not clear why Defendants would necessarily refrain from imposing a similar mandate in the future. *See Knox*, 567 U.S. at 307. And contrary to Defendants' argument, this is not a case where new legislation repealed earlier legislation that was the basis for the legal challenge or where new legislation materially changed the authority for issuing a challenged policy or where new legislation "specifically forbids the kind of [action] challenged here." (*See* Defs.' Resp. at 4-5, 9-1, Doc. No. 55) (citing cases). Moreover, § 525 did not "*completely and irrevocably eradicate[] the effects*" caused by the challenged mandate. *See Cty. of L.A. v. Davis*, 440 U.S. at 631; *see also* Defs.' Resp. at 9 [citing *Pinson v. U.S. Dep't of Justice*, 514 F. Supp. 3d 232, 245 (D.D.C. 2021) [noting that the voluntary cessation of challenged conduct moots a case only when "interim relief or events have *completely* and *irrevocably eradicated* the *effects* of the alleged violation"] [emphasis added], Doc. No. 55). Section 525 merely directed the repeal of the Secretary's August 24, 2021 memorandum, "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service members." *See* Pub. L. No. 117-263, § 525 (Dec. 23, 2022), 136 Stat. 2395. Section 525 did not outlaw COVID-19 vaccine mandates nor did it withdraw the authority of the Secretary of

---

[6] Washington Times, "Biden will sign NDAA despite repeal of the military vaccine mandate," https://www.washingtontimes.com/news/2022/dec/19/biden-will-sign-ndaa-despite-its-repeal-military-v/ (last visited Dec. 26, 2022) ("Clearly the president was opposed to rolling back the vaccine mandate . . . ."); CNN, "House passes defense bill that rescinds military Covid vaccine mandate," https://www.cnn.com/2022/12/08/politics/house-vote-ndaa-military-vaccine-mandate/index.html, (last visited Dec. 30, 2022) ("We continue to believe that repealing the vaccine mandate is a mistake.").

Defense to issue another COVID-19 vaccine mandate.  The Secretary can issue a new and similar mandate *unilaterally*—that is, he has the "unilateral legal authority" to do so; he need not seek congressional authority nor approval before acting.  Defendants get no favorable presumption in this case.  *See, e.g.*, *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767-70 (6th Cir. 2019) (finding that the plaintiff's challenge to a university's speech restriction was not moot, noting that "*ad hoc*, discretionary, and easily reversible actions" are not granted much solicitude and stating that "[i]f the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim").

In sum, the Secretary of Defense strongly defends the vaccine mandate.  And he "continue[s] to promote and encourage COVID-19 vaccination for all Service members" (Sec'y Def. Mem. at 1, Doc. No. 55-1), even though the vaccines are ineffective and dangerous and natural immunity provides superior protection (*see* First Am. Compl. ¶¶ 88-112, Doc. No. 43).  Couple these facts with the fact that the Biden administration has just recently extended the COVID-19 public health emergency,[7] and Plaintiffs' evidence that this case is not moot under the voluntary cessation exception is not just "clear," it is compelling.  Defendants' arguments to the contrary are wrong.  In short, neither the FY23 NDAA nor the Secretary's memorandum has "*completely* and *irrevocably eradicated* the *effects*" of the unlawful vaccine mandate—the substantial burden on Plaintiffs' religious exercise continues.

---

[7] Fox News, "Biden administration extends COVID-19 public health emergency yet again," (Jan. 11, 2023) (available at https://www.foxnews.com/politics/biden-administration-extends-covid-19-public-health-emergency-again) (last visited Jan. 11, 2023).

C.     **The Capable of Repetition, yet Evading Review Exception to Mootness Applies.**[8]

Defendants argue that the capable of repetition, yet evading review exception does not apply.  They are mistaken.

To satisfy this exception, the recurrence of the COVID-19 vaccine mandate need not be more probable than not; instead, the controversy must be "*capable* of repetition."  *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988).  To this day, the President and his Secretary of Defense retain the authority to reissue a COVID-19 vaccine mandate.  Nothing in § 525 prevents them from doing so.  And the Biden administration continues to view COVID-19 as a serious threat to public health.  (*See supra*).

Additionally, the very nature of the COVID-19 threat is such that mandates and restrictions designed to address this threat are typically short in duration.  Here, the mandate was for vaccines that were produced to address the wild and Delta variants, but those variants were short lived.  (*See* First Am. Compl. ¶¶ 34-36, 89-90, 131, Doc. No. 43).  COVID-19 mandates, by their very nature, are short in duration.  *See, e.g., Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020); *Tandon v. Newsom*, 141 S. Ct. 1294 (2021).  Indeed, the challenged mandate lasted less than two years.  *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162 (2016) (holding that a procurement contract that expires in two years does not permit judicial review).  If there was actual evidence to show that the mandate had *ongoing* and salutary effects (*i.e.*, not short in duration), there is no way that § 525 would have been introduced by Congress nor signed by the President.  The mandate was addressing a short-lived problem.  The exception applies.

_____

[8] This exception applies to situations where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

## CONCLUSION

Plaintiffs have an ongoing, concrete interest in the outcome of this litigation. They continue to suffer adverse effects because of their religious objections to the vaccine mandate. The recission of the mandate does not completely and irrevocably eradicate these effects. The case is not moot.

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
rmuise@americanfreedomlawcenter.org

/s/ *David Yerushalmi*
David Yerushalmi, Esq. (DC Bar No. 978179)
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20001
dyerushalmi@americanfreedomlawcenter.org
(646) 262-0500

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties for whom counsel has entered an appearance by

operation of the court's electronic filing system.  Parties may access this filing through the court's

system.  I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon

all parties for whom counsel has not yet entered an appearance electronically: None.

AMERICAN FREEDOM LAW CENTER

/s/*Robert J. Muise*
Robert J. Muise, Esq.