IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NAVY SEAL 1, NAVY SEAL 2, NAVY SEAL 3, and NAVY SEAL 4,<br><br>      Plaintiffs,<br><br>    v.<br><br>LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense; CARLOS DEL TORO, in his official capacity as Secretary of the United States Navy; and ADMIRAL MICHAEL M. GILDAY, individually and in his official capacity as Chief of Naval Operations,<br><br>      Defendants. | Case No. 1:22-cv-00688<br><br>Hon. Colleen Kollar-Kotelly |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND, ALTER, CLARIFY AND/OR RECONSIDER ORDER DISMISSING CASE ON MOOTNESS GROUNDS**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

SUMMARY OF FACTS RELEVANT TO MOOTNESS ......................................................1

RELEVANT PROCEDURAL BACKGROUND ...................................................................4

STANDARD............................................................................................................................4

ARGUMENT ..........................................................................................................................5

I.    It Was Inappropriate for the Court to Dismiss the Entire Case at the Preliminary-Injunction Stage .........................................................................................................5

II.    Plaintiffs' Damage Claim Prevents a Finding of Mootness..................................6

III.    Plaintiffs' Claim for Declaratory Relief Prevents a Finding of Mootness..........7

IV.    The Voluntary Cessation Exception to Mootness Applies in this Case...............8

V.    The Capable of Repetition, Yet Evading Review Exception to Mootness Applies.............9

VI.    This Case Is Not Moot as the Recission of the Vaccine Mandate Has Not Completely and Irrevocably Eradicated Its Adverse Effects .......................................................10

CONCLUSION.....................................................................................................................12

CERTIFICATE OF SERVICE .............................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page**

*Ammond v. McGahn*,
532 F.2d 325 (3d Cir. 1976)......................................................................................................5

*\*Anyanwutaku v. Moore*,
151 F.3d 1053 (D.C. Cir. 1998)................................................................................................4

*Austin v. United States Navy SEALs 1-26*,
142 S. Ct. 1301 (2022)..............................................................................................................3

*Bernhardt v. County of Los Angeles*,
279 F.3d 862 (9th Cir. 2002) ....................................................................................................7

*Bowers v. NCAA*,
475 F.3d 524 (3d Cir. 2007) .....................................................................................................8

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014)................................................................................................................11

*Cent. Radio Co. v. City of Norfolk*,
811 F.3d 625 (4th Cir. 2016) ....................................................................................................7

*City of Angoon v. Hodel,*
803 F.2d 1016 (9th Cir. 1986) ..................................................................................................6

*City of Mesquite v. Aladdin's Castle*,
455 U.S. 283 (1982)..................................................................................................................8

*Comm. for First Amend. v. Campbell*,
962 F.2d 1517 (10th Cir. 1992) ................................................................................................7

*\*Cnty. of L.A. v. Davis*,
440 U.S. 625 (1979)..........................................................................................................10, 11

*Doe v. Shanahan*,
755 F. App'x 19 (D.C. Cir. 2019).............................................................................................5

*Elec. Privacy Info. Cntr. v. United States Dept. of Homeland Sec.*,
811 F. Supp. 2d 216 (D.D.C. 2011).........................................................................................4

*\*Foretich v. United States*,
351 F.3d 1198 (D.C. Cir. 2003)................................................................................................8

*Gully v. NCUA Bd.*,
341 F.3d 155 (2d Cir. 2003)..................................................................................................8

*Henson v. Honor Comm. of U. Va.*,
719 F.2d 69 (4th Cir. 1983) ..................................................................................................7

**Honig v. Doe*,
484 U.S. 305 (1988)............................................................................................................10

*Kingdomware Techs., Inc. v. United States*,
136 S. Ct. 1969 (2016)..........................................................................................................9

**Knox v. SEIU, Local 1000*,
567 U.S. 298 (2012)........................................................................................................8, 11

*Lance v. UMW 1974 Pension Trust*,
400 F. Supp. 2d 29 (D.D.C. 2005)........................................................................................4

*Marbury v. Madison*,
5 U.S. 137 (1803)..................................................................................................................1

*Morgan v. Plano Indep. Sch. Dist.*,
589 F.3d 740 (5th Cir. 2009) ................................................................................................7

*N.J. Hosp. Ass'n v. Waldman*,
73 F.3d 509 (3d Cir. 1995)....................................................................................................6

*NCAA v. Governor of N.J.*,
730 F.3d 208 (3d Cir. 2013)..................................................................................................8

*NLRB v. Canning*,
573 U.S. 513 (2014)..............................................................................................................1

**Piper v. United States DOJ*,
312 F. Supp. 2d 17 (D.D.C. 2004)........................................................................................5

*Rann v. Chao*,
209 F. Supp. 2d 75 (D.D.C. 2002)........................................................................................4

*Roane v. Gonzales*,
832 F. Supp. 2d 61 (D.D.C. 2011)........................................................................................4

*Scott v. Conley*,
937 F. Supp. 2d 60 (D.D.C. 2013).......................................................................................7

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) ..........................................................................................................10

\**Tanzin v. Tanvir*,
141 S. Ct. 486 (2020) ............................................................................................................6

*Tech. Publ'g Co. v. Lebhar-Friedman, Inc.*,
729 F.2d 1136 (7th Cir. 1984) ..............................................................................................6

*Thomas v. Rev. Bd.*,
450 U.S. 707 (1981) ............................................................................................................11

\**United States v. W. T. Grant Co.*,
345 U.S. 629 (1953) ..............................................................................................................9

\**Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ..............................................................................................................5

\**Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021) ............................................................................................................7

*Weinstein v. Bradford*,
423 U.S. 147 (1975) ..............................................................................................................9

*Wilcox v. United States*,
888 F.2d 1111 (6th Cir. 1989) ..............................................................................................6

**Statutes**

Fed. R. Civ. P. 59(e) ...................................................................................................................4

Fed. R. Civ. P. 60 .......................................................................................................................4

**Other**

13C C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3533.3 (3d ed. Supp. 2019) ........................................................................................................................................7

https://www.cnn.com/2022/12/08/politics/house-vote-ndaa-military-vaccine-mandate/index.html ........................................................................................................................2

https://www.washingtontimes.com/news/2022/dec/19/biden-will-sign-ndaa-despite-its-repeal-military-v/ ................................................................................................................................2

https://www.whitehouse.gov/briefing-room/statements-releases/2022/12/23/statement-by-the-president-on-h-r-7776-the-james-m-inhofe-national-defense-authorization-act-for-fiscal-year-2023/ ..................................................................................................................................2

## INTRODUCTION

For many decades, Plaintiffs have endured much sacrifice and risked their lives fighting the enemies of freedom in foreign lands around the globe. They took a solemn oath to support and defend the Constitution of the United States against all enemies, foreign and domestic. And they remain willing to make the ultimate sacrifice in defense of those freedoms enshrined in our nation's founding document. In short, Plaintiffs have fulfilled (and will continue to fulfill) their solemn duty and obligations under the Constitution.

Here, Plaintiffs are simply asking this Court to fulfill its fundamental duty and obligation under Article III to "say what the law is." *NLRB v. Canning*, 573 U.S. 513, 525 (2014) ("[I]t is the 'duty of the judicial department . . . to say what the law is.'") (quoting *Marbury v. Madison*, 5 U.S. 137 (1803)). With all due respect, this Court's order of March 10, 2023, dismissing this entire case as moot in essentially one sentence, falls far short of what Plaintiffs should reasonably expect from this Court. Accordingly, Plaintiffs request that this Court issue a legal opinion explaining "what the law is" in light of the facts of this case. More specifically and for the reasons set forth below, Plaintiffs respectfully ask this Court to amend, alter, clarify, and/or reconsider its order dismissing this case, finding that the case is not moot and thus allowing it to proceed to the merits.

## SUMMARY OF FACTS RELEVANT TO MOOTNESS

On December 23, 2022, the President signed the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (FY23 NDAA). Section 525 required the Secretary of Defense to rescind "[n]ot later than 30 days after the date of the enactment of this Act" the mandate that members of the Armed Forces be vaccinated against COVID-19 as issued in the Secretary's August 24, 2021 memorandum, "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service members." Pub. L. No. 117-263, § 525 (Dec. 23, 2022), 136 Stat.

2395.

In a press statement issued following the signing of this legislation, the President did not mention Section 525.[1] Why? Because the President "*was opposed to rolling back the vaccine mandate*" and signed the legislation with this provision simply as a political compromise to ensure passage of the massive spending bill.[2]

In the Secretary of Defense's January 10, 2023 "recission" memo issued following the passage of § 525, the Secretary states that he was "deeply proud of the Department's work to combat the coronavirus disease of 2019," that "[t]he Department has helped ensure the vaccination of many Americans," that "[t]he Department *will continue to promote and encourage* COVID-19 vaccination for all Service members," that "[v]accination enhances operational readiness and protects the Force," and that "[a]ll commands have the responsibility and *authority* to preserve the Department's compelling interests in mission accomplishment." As noted, the memorandum expressly does <u>not</u> rescind (nor alter) "standing Departmental policies, procedures, and processes regarding immunization." (DOD Recission Mem. of Jan. 10, 2023) (emphasis added).

---

[1] "Statement by the President on H.R. 7776, the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023," https://www.whitehouse.gov/briefing-room/statements-releases/2022/12/23/statement-by-the-president-on-h-r-7776-the-james-m-inhofe-national-defense-authorization-act-for-fiscal-year-2023/ (last visited Mar. 23, 2023).

[2] "Biden will sign NDAA despite repeal of the military vaccine mandate," https://www.washingtontimes.com/news/2022/dec/19/biden-will-sign-ndaa-despite-its-repeal-military-v/ (last visited Mar. 23, 2023) ("'Clearly the president was opposed to rolling back the vaccine mandate but we saw Republicans in Congress would rather fight against the health and well-being of the troops,' Ms. Jean-Pierre said."); "House passes defense bill that rescinds military Covid vaccine mandate," https://www.cnn.com/2022/12/08/politics/house-vote-ndaa-military-vaccine-mandate/index.html, (last visited Mar. 23, 2023) ("'We continue to believe that repealing the vaccine mandate is a mistake. Making sure our troops are ready to defend this country and prepared to do so that remains the President's priority and the vaccine requirement for Covid does just that," National Security Council coordinator for strategic communications John Kirby told reporters Wednesday when pressed specifically on whether Biden would sign the NDAA if the mandate stayed in the final legislation.").

In subsequent guidance issued by the Department of Defense on February 24, 2023 and referenced by the D.C. Circuit panel, the DOD purportedly rendered inoperative "any COVID-19 vaccination requirements or related theater entry requirements" in the military "and any limitations on deployability of Service members who are not vaccinated against COVID-19," further emphasizing, with a foreign nations' entry requirement exception, that military commanders can neither "require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions,[3] *absent establishment of a new immunization requirement*" under a prescribed process ensuring that any new requirements must be "justified by compelling operational needs . . . as narrowly tailored as possible." (Deputy Sec'y Def. Mem. of Feb. 24, 2023) (emphasis added).

On the same day that the DOD issued its guidance, the Secretaries of the Navy and the Airforce issued guidance mandating the removal of "any adverse information related to . . . COVID-19 vaccine refusal . . . from the service record." (*See* Sec'y Navy Mem. of Feb. 24, 2023). This gesture—which was undoubtedly a litigation ploy in a transparent attempt to render this case moot and to avoid a judicial determination that the mandate is unlawful—is far too little and too late as the harm to Plaintiffs persists. (*See generally* First Am. Compl., Doc. No. 43).

---

[3] Recently, the Government told the U.S. Supreme Court that mandating the COVID-19 vaccine was *crucial* for "deployment, assignment, and other operational decisions." *See Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, 1302 (2022). Apparently, all it takes is a President who wants to pass a huge spending bill to make such "compelling" interests evaporate overnight. Additionally, as this case demonstrates, the Government has zero credibility when it comes to justifying a COVID-19 vaccination mandate with a compelling interest or narrowly tailoring it to advance its alleged interests.

## RELEVANT PROCEDURAL BACKGROUND

On March 10, 2023, and in a two-page, *per curiam* order that was void of any legal analysis, the D.C. Circuit dismissed Plaintiff Navy SEAL 4's preliminary injunction appeal as moot.[4] (D.C. Cir. Order of March 10, 2023). Shortly following the D.C. Circuit's order, this Court issued a one-page order dismissing this entire case on mootness grounds. The extent of this Court's analysis/decision was as follows: "In light of the United States Court of Appeals for the District of Columbia Circuit's March 10, 2023 Order finding this matter moot, it is hereby **ORDERED**, that this case is **DISMISSED AS MOOT**." (Order, Doc. No.58). This motion follows.

## STANDARD

The Federal Rules of Civil Procedure do not expressly address motions for reconsideration. *See Lance v. United Mine Workers for Am. 1974 Pension Trust*, 400 F. Supp. 2d 29, 31 (D.D.C. 2005); *Rann v. Chao*, 209 F. Supp. 2d 75, 77 n.1 (D.D.C. 2002) (stating that "the Federal Rules of Civil Procedure do not contain anything known as a 'Motion for Reconsideration'"). A motion to reconsider a final order/judgment is generally treated as a Rule 59(e) or Rule 60(b) motion.[5] *See Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998); *Roane v. Gonzales*, 832 F. Supp. 2d 61, 64 (D.D.C. 2011). A similar analysis applies under either rule. *See Elec. Privacy Info. Cntr. v. U.S. Dept. of Homeland Sec.*, 811 F. Supp. 2d 216, 224 (D.D.C. 2011).

When deciding this motion, the Court has considerable discretion and may properly invoke its discretion to grant the motion "if it finds there is (1) an intervening change in controlling law,

---

[4] On March 24, 2023, Plaintiff Navy SEAL 4 filed a petition for rehearing *en banc*, seeking full court review of the panel's order.

[5] Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time.").

(2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." *Piper v. U.S. Dep't of Justice*, 312 F. Supp. 2d 17, 20-21 (D.D.C. 2004).

Here, the Court based its ruling on the order from the D.C. Circuit. However, the D.C. Circuit was only presented with the evidence necessary for ruling on the motion for a preliminary injunction. Consequently, the Court should grant this motion based on "(2) the availability of new evidence." Additionally, the Court should grant this motion based on "(3) the need to correct clear error or prevent manifest injustice."

## ARGUMENT

**I.     It Was Inappropriate for the Court to Dismiss the Entire Case at the Preliminary-Injunction Stage.**

As stated by the U.S. Supreme Court:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, . . . and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits . . . . In light of these considerations, *it is generally inappropriate* for a federal court at the preliminary-injunction stage to give a final judgment on the merits.

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also id*. at 394 ("This, then, is simply another instance in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot. . . . In *Ammond v. McGahn*, 532 F.2d 325 (3d Cir. 1976), for instance, the issue of preliminary injunctive relief became moot, but an issue of damages remained."); *Doe v. Shanahan*, 755 F. App'x 19, 23 n.1 (D.C. Cir. 2019) ("The propriety of preliminary relief and resolution of the merits are of course 'significantly different' issues, because the purpose of such interim equitable relief is not to conclusively

determine the rights of the parties, but to balance the equities as the litigation moves forward.") (internal quotations and citations omitted); *N.J. Hosp. Ass'n v. Waldman*, 73 F.3d 509, 519 (3d Cir. 1995) ("Pending the district court's final decision on the merits, the findings of fact and conclusions of law made in conjunction with the preliminary injunction are indeed preliminary. As such, they do not foreclose any findings or conclusions to the contrary based on the record as developed at final hearing."); *Wilcox v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989) (holding that the trial court's denial of a preliminary injunction did not establish the law of the case with respect to the court's subsequent summary judgment determination); *Tech. Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984) ("A factual finding made in connection with a preliminary injunction is not binding" on the merits); *City of Angoon v. Hodel*, 803 F.2d 1016, 1024 n.4 (9th Cir. 1986) (determinations corresponding to a preliminary injunction do not constitute law of the case).

In sum, it was error for this Court to conclusively resolve this entire case in a single sentence based on the D.C. Circuit's scant order dismissing Plaintiff Navy SEAL 4's preliminary injunction appeal.

**II.     Plaintiffs' Damage Claim Prevents a Finding of Mootness.**

Plaintiffs have advanced a claim for damages. (*See* First Am. Compl. ¶ 5, Prayer for Relief, Doc. No. 43). An award of damages is authorized by RFRA. *Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020) ("[I]t would be odd to construe RFRA in a manner that prevents courts from awarding [damages]."). And there is no statutory exemption for military officials, high-ranking or otherwise.

- 6 -

That is, there is no textual path to conclude that RFRA does not apply in full, including RFRA's provision for damages, in this case.[6]

Accordingly, Plaintiffs' claim for damages, including nominal damages (awarded when compensatory damages cannot be proven), precludes a finding of mootness. *Scott v. Conley*, 937 F. Supp. 2d 60, 64 (D.D.C. 2013) (holding that a claim for damages prevents a finding of mootness); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) (finding case justiciable and holding that an award of nominal damages by itself can redress a past injury); 13C C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3533.3, n. 47 (3d ed. Supp. 2019) (collecting cases); *Cent. Radio Co. v. Norfolk*, 811 F.3d 625, 631-32 (4th Cir. 2016); *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 n.32 (5th Cir. 2009); *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 872 (9th Cir. 2002); *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1526-27 (10th Cir. 1992); *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 72 n.5 (4th Cir. 1983). In sum, the case is not moot.

### III. Plaintiffs' Claim for Declaratory Relief Prevents a Finding of Mootness.

As stated in the First Amended Complaint:

> A judicial determination that the enforcement of the Vaccine Mandate against Plaintiffs violates the U.S. Constitution and RFRA would redress the stigma and reputational injury of which Plaintiffs complain in ways in which no administrative procedure could remedy, and it will provide protection from future harm by declaring such mandates unlawful. Neither administrative procedures nor administrative remedies can fully redress the harm caused by the Vaccine Mandate and its enforcement against Plaintiffs.

(First Am. Compl. ¶ 81, Doc. No. 43).

---

[6] Obviously, the D.C. Circuit did not address the issue of damages when deciding Plaintiff Navy SEAL 4's preliminary injunction appeal.

None of the memoranda cited by the panel in its per curiam order remedy the stigma and reputational harm Plaintiffs are suffering as a result of their refusal to comply with the mandate based on their sincerely held religious beliefs. This harm will continue to adversely affect Plaintiffs and their careers. Refusing to adjudicate Plaintiffs' claims is affirmation that Defendants did nothing wrong and that Plaintiffs violated a lawful order, thus allowing this reputational harm and stigma to continue.

As this Circuit and others acknowledge, reputational harm constitutes a tangible and concrete injury that can be redressed by equitable relief. *See, e.g., Foretich v. United States*, 351 F.3d 1198, 1214 (D.C. Cir. 2003) (acknowledging that "reputational injury" may derive "directly from government action" and that this injury may be redressed by equitable relief); *Gully v. NCUA Bd.*, 341 F.3d 155, 161-62 (2d Cir. 2003) (stating that "[t]he Supreme Court has long recognized that an injury to reputation" is an injury in fact); *NCAA v. Governor of N.J.*, 730 F.3d 208, 220 (3d Cir. 2013) ("As a matter of law, reputational harm is a cognizable injury in fact."); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 542-43 (3d Cir. 2007) (finding standing to challenge a sanction that "affect[s] [the plaintiff's] reputation").

The failure to address this request for declaratory relief is clear error.

**IV.   The Voluntary Cessation Exception to Mootness Applies in this Case.**

The voluntary cessation exception to mootness applies in this case. As stated by the Supreme Court in *Knox v. SEIU, Local 1000*:

> [t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). *And here, since the union continues to defend the legality of the Political Fight-Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future.*

*Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012) (emphasis added).

Here, the Government continues to defend the legality of the vaccine mandate. In fact, the Government has expressly stated that it would *not refrain* from issuing a similar mandate in the future. (*See supra*).

Accordingly, the voluntary cessation exception to mootness applies here because not only is the Government "free to return to [its] old ways," but also the public has an interest "in having the legality of the practices settled." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). Thus, "[a]long with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *Id.* at 633. The case is not moot.

**V.     The Capable of Repetition, Yet Evading Review Exception to Mootness Applies.**

The "capable of repetition, yet evading review" exception to the mootness doctrine applies to situations where: "(1) the *challenged action* was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a *reasonable* expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975) (emphasis added).

The Supreme Court has found periods of up to two years to be too short to be fully litigated. *See, e.g., Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (holding that a procurement contract that expires in two years does not permit judicial review). The first requirement is satisfied here.

Plaintiffs also satisfy the second requirement because the standard is a forgiving one. That is, "*reasonable*" in this context is not an exacting bar. It is *less* than probable. As stated by the Supreme Court:

> [W]e have found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable . . . Our concern in these cases . . . was whether the controversy was *capable* of repetition and not . . . whether

>   the claimant had demonstrated that a recurrence of the dispute was more probable than not.

*Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (emphasis in original) (internal citations omitted). Consequently, recurrence of the issue need not be more probable than not; instead, the controversy must be *capable* of repetition, as in this case. Indeed, the Supreme Court has recently found that restrictions issued during the COVID-19 pandemic are capable of repetition and thus not moot, particularly when the government retains the authority to reinstate the challenged restriction at any time, as in this case. *See Roman Catholic Diocese* in *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) (holding that a challenge to California's restrictions on religious gatherings was not moot because California officials "retain[ed] authority to reinstate" the challenged restrictions "at any time"). This case is not moot.

## VI. This Case Is Not Moot as the Recission of the Vaccine Mandate Has Not Completely and Irrevocably Eradicated Its Adverse Effects.

In their Prayer for Relief, Plaintiffs request:

> That this Court order that Plaintiffs' status as U.S. Navy SEALs be restored to the status Plaintiffs enjoyed prior to the enforcement of the Vaccine Mandate, including the restoration of any and all pay, promotions, awards, decorations, insignias, specifically including the Special Warfare / SEAL Trident insignia, and other benefits lost as a result of Defendants' enforcement of the Vaccine Mandate as set forth in this First Amended Complaint.

(First Am. Compl., Prayer for Relief, ¶ E, Doc. No. 43). Plaintiffs have lost special duty pay, education opportunities, and other benefits as a result of the vaccine mandate. (*See* First Am. Compl. ¶¶ 30, 62, 74, 75, 79, 84, 151). The memoranda rescinding the mandate do not completely eradicate this harm.

"The burden of demonstrating mootness is a heavy one." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks omitted). "A case becomes moot only when it is *impossible* for a court to grant *any* effectual relief whatever to the prevailing party. . . . As long as

the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot." *Knox*, 567 U.S. at 307-08 (internal punctuation and citations omitted) (emphasis added). As explained by the Supreme Court,

> [J]urisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said *with assurance* that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have *completely and irrevocably eradicated the effects* of the alleged violation. When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

*Cnty. of L.A. v. Davis*, 440 U.S. at 631 (internal punctuation and citations omitted) (emphasis added). Here, it cannot be said "with assurance that there is no reasonable expectation" that a similar vaccine mandate will issue. In fact, the opposite is true. (*See supra*). Throughout, the Government defends the mandate and tells us clearly that it retains the absolute authority to establish "a new immunization requirement." Additionally, the recission of the mandate has not "completely and irrevocably eradicated [its] effects" on servicemembers, specifically including Plaintiffs, who have suffered and continue to suffer because they objected to the mandate on religious grounds.

More specifically and at a minimum, Plaintiffs continue to suffer financial harm and harm to their careers and reputations. As noted, Plaintiffs were deprived of special duty pay and other benefits that they would have received but for their religious objection to the vaccine mandate. Supreme Court precedent makes clear that the denial of benefits (*Thomas v. Review Board*, 450 U.S. 707, 717-18 (1981) (denial of unemployment benefits)), and adverse economic incentives (*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 722 (2014)), are cognizable harms that are sufficient to find a substantial burden on religious exercise. And these harms have not been completely and irrevocably eradicated. This case is not moot.

## CONCLUSION

The Court should grant this motion and amend, alter, clarify, and/or reconsider its order dismissing this case, finding that the case is not moot and thus allowing it to proceed to the merits.

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
rmuise@americanfreedomlawcenter.org

/s/ *David Yerushalmi*
David Yerushalmi, Esq. (DC Bar No. 978179)
2020 Pennsylvania Avenue NW, Suite 189
Washington, D.C. 20001
dyerushalmi@americanfreedomlawcenter.org
(646) 262-0500

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system. Parties may access this filing through the court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: None.

AMERICAN FREEDOM LAW CENTER

/s/*Robert J. Muise*
Robert J. Muise, Esq.